**EXHIBIT 5**

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TROUT UNLIMITED, et al.,

    Plaintiffs,

  and

BUILDING INDUSTRY ASSOCIATION OF WASHINGTON,

    Intervenor-Plaintiffs,

  v.

D. ROBERT LOHN, in his official capacity as Regional Administrator of NMFS Northwest Regional Office, and NATIONAL MARINE FISHERIES SERVICE,

    Defendants.

CASE NO. C05-1128C

ORDER

I.    INTRODUCTION

    This matter has come before the Court on the parties' additional briefing on the subject of the deliberative process privilege and whether the Federal Defendants may assert it in this case.

ORDER – 1

II. BACKGROUND

On May 4, 2006, the Court entered an order granting in part Plaintiffs' motion to compel completion of the administrative record. One of the components of the Court's order directed the parties to submit more briefing as to the application of the deliberative process privilege to this case. The administrative record produced so far includes over 150 documents as to which the Federal Defendants assert the deliberative process privilege. Plaintiffs contested the applicability of this privilege in a case they characterize as involving purely scientific rather than policy-oriented determinations.

Both parties agree that "[t]he deliberative process privilege shields from disclosure intra-governmental communications relating to matters of law or policy." *Greenpeace v. NMFS*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116–17 (9th Cir. 1988)). The parties also agree that the privilege does not protect documents pertaining to determinations of science or fact. *Id.* at 543–44.

The analysis developed by the Ninth Circuit in *National Wildlife Federation* inquires into the functional purpose of the document in question. Thus, simple assessments of whether a document contains "factual" rather than "deliberative" material are neither sufficient nor apposite. *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 (stating "the scope of the deliberative process privilege should not turn on whether we label the contents of a document 'factual' as opposed to 'deliberative'"). Rather, a court must determine whether disclosure of the document would impermissibly "reveal the mental processes of decisionmakers." *Id*.

The parties disagree, however, as to the impact of *Greenpeace*, in which the district court stated that "the deliberative process privilege is limited to protecting only those agency processes by which *policy* is formulated." 198 F.R.D. at 544. The Federal Defendants contend that *Greenpeace* was

wrongly decided, while Plaintiffs embrace *Greenpeace* and submit a District of Hawaii decision doing the same. As the following discussion will show, the Court need not determine whether *Greenpeace* was correctly decided. In addition, as *Greenpeace* does not bind this Court, the Court need not apply the rule set forth therein.

The fundamental difficulty in determining whether the deliberative process privilege should apply in a record review case brought under the judicial review provisions of the Administrative Procedure Act ("APA") boils down to the conflict between the court's mandate, on the one hand, to review the whole administrative record before the decisionmaker at the time the decision was made, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), and on the other hand, the administrative interest in "promot[ing] frank and independent discussion among those responsible for making governmental decisions" and to "protect against premature disclosure of proposed agency policies or decisions," *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "The ultimate purpose of the privilege is to protect the quality of agency decisions." *Id.*

In the end, the purposes of both the judicial review provisions of the APA and the deliberative process privilege are the same — to ensure that agency decisions are made in a deliberate and thoughtful manner. While the deliberative process privilege protects agencies in the process of making decisions from fearing that preliminary positions and opinions still being developed will be challenged, the APA provides a mechanism by which arbitrary and capricious agency decisions can be corrected after they are made. Thus, although deliberative materials will generally be protected by the deliberative process privilege, in cases where it is necessary to examine such materials, a court may decline to permit the government to withhold them. *See FTC v. Warner*, 742 F.2d at 1161 (explaining that the deliberative process privilege is not absolute even if properly asserted).

ORDER - 3

The analysis of whether the deliberative process privilege should operate to protect material from discovery in any given matter covers a lot of ground.  First, the Court must inquire into whether the privilege has properly been invoked.  This inquiry is primarily a procedural inquiry.  Second, the Court must determine whether the materials claimed to be protected by the privilege are proper objects for the deliberative process privilege.  This step is where the Court conducts its analysis of the nature of the materials sought to be withheld.  Finally, the Court must determine whether it will permit the government to use the privilege to withhold materials under the specific circumstances of the case before it.

Here, Plaintiffs do not challenge the mechanics of the Federal Defendants' invocation of the privilege.  To the extent that Plaintiffs posed such a challenge in the briefing on their motion to compel completion of the administrative record, the Court finds that the Federal Defendants' invocation of the privilege in response to that motion was proper.  In addition, the Court finds that the privilege log supplied by the Federal Defendants setting forth the "'precise and certain' reasons for preserving the confidentiality of the information" is adequately detailed.  *Greenpeace*, 198 F.R.D. at 544.  Accordingly, the Court finds that the Federal Defendants have properly invoked the privilege.

The next issue is whether the materials sought to be protected are proper objects of the privilege.  The only real disagreement between the parties here is not whether the documents contain reflections, opinions, recommendations, and other such material, but whether they are part of a policy-making process or a "scientific" process.[1]  Plaintiffs argue that though the agency process here resulted in the promulgation of something titled "Hatchery Listing Policy," the type of decision-making involved in

---

[1] Plaintiffs do argue that the redacted information appears to be scientific in nature (Pls.' Supplem. Br. 7).  However, based on its *in camera* review of the withheld documents, the Court agrees with the Federal Defendants that most of the redactions are not scientific in that they are primarily concerned with the wording of the final policy.  In other words, the redactions do not contain material reflecting on the Federal Defendants' consideration of scientific data.  The Court does not rule out the possibility, however, that some material concerning the definition or interpretation of key terms may still be pertinent in Plaintiffs' § 4 challenge of the Hatchery Listing Policy.

ORDER – 4

this process was required under § 4 of the ESA to be a determination made "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). The Federal Defendants, of course, counter that the Hatchery Listing Policy is just that, a "policy" and that the process leading up to it was a policy-making process.

Having reviewed the HLP and the administrative record, the Court finds that the decision-making process leading up to the agency's decision to promulgate the HLP in its current form was a hybrid scientific and policy-making process. On the one hand, to determine what an appropriate HLP would be, the agency is legally obligated to consider scientific evidence regarding the impact of the criteria developed "to determine that a given hatchery population is sufficiently closely related to natural fish for the hatchery fish to be considered part of a single [distinct population segment]". (Pl.'s Supplem. Br. 6.) However, this obligation does not remove all discretion from the agency. *See, e.g.*, *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 956 (9th Cir. 2003) (explaining that the defendant agency had satisfied its legal duty if it had "conducted a reasonable evaluation of the relevant information and reached a conclusion that, although disputable, was not 'arbitrary and capricious'").

If, for example, all of the scientific evidence presented to and considered by the Federal Defendants (including evidence that *should* have been considered by the Federal Defendants) strongly suggested that the criteria developed would result in near-automatic inclusion of hatchery fish in DPSs and that this in turn would lead to near-certain extinction of the majority of fish, then a court could find that the Federal Defendants had chosen their criteria in violation of § 4. Or, in another example, if the scientific evidence showed that genetic diversity is a minor factor out of many other significant factors regarding whether a hatchery fish is properly considered "the same" as a natural fish, a decision to consider only genetic diversity in making this determination could be in violation of § 4. On the other hand, if the science did not clearly point out the way, the Federal Defendants would have had to

ORDER – 5

1  exercise their discretion as to how to determine the rules by which hatchery fish would be considered.

2  In the absence of a clear scientific mandate, this decision necessarily involves balancing different policy

3  interests and their attendant options.

4  Because the Court concludes that the particular process in this case was a hybrid process, the

5  parties' process-type-based arguments cannot decide the question of whether the deliberative process

6  privilege is available for the materials in this case. Rather, the Court must engage in the more granular

7  analysis set forth by the Ninth Circuit which inquires into the function of the document in question.

8  *Nat'l Wildlife Fed'n*, 861 F.2d at 1119. The *National Wildlife Federation* Court explained

> Under this . . . 'functional' test that we adopt, documents containing nonbinding recommendations on law or policy would continue to remain exempt from disclosure. Factual materials, however, would likewise be exempt from disclosure to the extent that they reveal the mental processes of decisionmakers. In other words, whenever the unveiling of factual materials would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency, the deliberative process privilege applies.

13  *Id.* (citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974)).

14  Under this test, it appears that as a preliminary matter, the deliberative process redactions made

15  by Defendants are properly made. Thus, the Court finds that the Federal Defendants have sustained

16  their initial burden of showing that the privilege applies to their proposed redactions. *Greenpeace*, 198

17  F.R.D. at 543 (citing *Redland Soccer Club v. Dep't of Army of the U.S.*, 55 F.3d 827, 854 (3rd. Cir.

18  1995)). However, whether the deliberative process privilege will ultimately shield the redacted

19  documents depends on whether Plaintiffs' "need for the materials and the need for accurate fact-finding

20  override the government's interest in non-disclosure." *FTC v. Warner*, 742 F.2d at 1161.

21  Whether Plaintiffs need the proposed redacted material depends on what has been redacted.

22  Here, the proposed redactions fall (or could fall, in the case of redactions yet to be made) into the

23  following categories: (1) factual material revealing or tending to reveal the agencies' evaluation of the

24

ORDER - 6

1   data before them; (2) exchanges between agency personnel containing opinions, feedback and other

2   comments on the wording of the policy; (3) redlined versions of the policy itself; and (4) agency

3   personnel comments on the status of the draft, (*i.e.*, "ready to go", etc.).

4   In the case at bar, Plaintiffs challenge the Federal Defendants' promulgation of the Hatchery

5   Listing Policy pursuant to § 4. In effect, Plaintiffs' position is that the Federal Defendants adopted the

6   Hatchery Listing Policy and the way in which it proposes to consider hatchery fish in making

7   endangered species listing decisions in spite of knowledge, actual or constructive, of the best available

8   scientific and commercial data. At its most basic level, Plaintiffs' challenge is a process-based

9   challenge. As such, access to factual materials that reveal the agency's evaluation and analysis of the

10  "multitudinous facts" before it is absolutely critical to Plaintiffs' efforts. In contrast, although the

11  government may deeply wish to shield such material, the Court cannot protect this interest in the

12  context of this type of process-based challenge. Permitting the government to hide its internal

13  deliberations about whether to accept or reject scientific and commercial evidence and data in

14  promulgating this policy and others like it would eviscerate the public's ability to bring § 4 challenges

15  and to ensure that such policies are only adopted "solely on the basis of the best scientific and

16  commercial data available." For these reasons, the Court finds that Plaintiffs' need for documents

17  shedding light on the agencies' evaluation (or lack thereof) of the data available to the Federal

18  Defendants outweighs the Federal Defendants' interest in withholding such documents and thus that the

19  deliberative process privilege may not be asserted with respect to such documents.

20  The Court's review of the redacted documents already submitted for *in camera* review did not

21  reveal any redactions subject to the above finding.

22  Other types of redacted documents, however, mostly documenting agency personnel debate and

23  discussion as to how the policy should be worded, and reflecting different opinions as to how the policy

24

ORDER - 7

should be shaped, are largely immaterial to Plaintiffs' challenge. Intermediate discussions and comments about policy wording generally shed little light on how and whether the Federal Defendants improperly disregarded the best available scientific and commercial data. Intermediate discussions and comments about how the policy should be shaped and what it should accomplish generally shed even less light on the specific issues raised by Plaintiffs' lawsuit. The exception to these general principles would be if a wording decision concerned a scientifically significant word, for example, choosing to re-define for the purposes of the policy a word or concept already possessing a certain meaning in the respective scientific community.

After reviewing the redactions suggested by the Federal Defendants over which assertion of the deliberative process privilege is explained by the defendants as proposals regarding wordings and definitions, the Court finds that they fall into three categories: (1) text not implicating the deliberative process privilege;[2] (2) text subject to the privilege and for which Plaintiffs have no overriding need; and (3) text subject to the privilege but for which, given the specific context of this case, Plaintiffs have an overriding need. This last category is constituted of material reflecting internal debate and discussion regarding key terms which may be of scientific import and which may have significant impact on the effect of the Hatchery Listing Policy. As such, Plaintiffs' need to review such material in their effort to challenge the Federal Defendants' decision-making process overrides the Federal Defendants' interest in shielding the material from discovery. Plaintiffs' suit depends on their ability to prove their allegations that the decision-making process by which the Hatchery Listing Policy was adopted was faulty, and this in turn requires access to materials reflecting the way in which that decision was made. For these reasons, the Court declines to permit the Federal Defendants to shield material falling into this latter category.

---

[2] The Court declines to apply the deliberative process privilege over text substantially similar or identical to text in the final Hatchery Listing Policy.

ORDER - 8

Finally, the last type of redaction proposed by Federal Defendants consists of agency personnel comments about their agencies' positions on the draft, their perceptions of the status or completeness of the draft, and other comments not relevant to the substance of the policy or the decision-making process. This material is irrelevant to Plaintiffs' challenge. Accordingly, the Court finds that the Federal Defendants may redact this material under the deliberative process privilege.

## IV. CONCLUSION

In accordance with the foregoing, the Court finds that as a procedural matter, the Federal Defendants have correctly invoked the deliberative process privilege. As a substantive matter, the Court finds that given the specific context of Plaintiffs' challenge to the Hatchery Listing Policy, the Federal Defendants' right to assert the deliberative process privilege is overridden by Plaintiffs' need to access (1) factual material that reveals the agency's evaluation and analysis of the scientific and commercial data before it and (2) material reflecting internal debate and discussion regarding key terms which may be of scientific import and which may have significant impact on the effect of the Hatchery Listing Policy.

The Court has annotated the Federal Defendants' proposed redactions accordingly. The Clerk is directed to mail a copy of the Court's annotated version to the Federal Defendants so that they may prepare copies for delivery to the necessary parties, with a copy to the Court.

In preparing redactions of the supplemental material, the Federal Defendants are instructed to follow the guidelines set forth in the body of this order and to follow the examples provided in the Court's annotated materials. Once the Federal Defendants have completed the redaction of the supplemental materials, the Federal Defendants are instructed to submit to the Court for *in camera*

\\

\\

ORDER – 9

1  review and approval a detailed table or list including precise and certain reasons for the invocation of
2  the privilege and explaining what text was redacted.

5  SO ORDERED this 28th day of June, 2006.

*[signature: John C. Coughenour]*

UNITED STATES DISTRICT JUDGE

ORDER - 10