

Not Reported in F.Supp.2d                                                                                                      Page 1

Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
Briefs and Other Related Documents

United States District Court,S.D. West Virginia.
OHIO VALLEY ENVIRONMENTAL
COALITION, et al., Plaintiffs,
v.
Christie WHITMAN, Administrator, United States Environmental Protection Agency, Defendant.
No. Civ.A. 3:02-0059.

Jan. 6, 2003.

MEMORANDUM OPINION AND ORDER

GOODWIN, J.
*1 Pending is a motion by the plaintiffs, the Ohio Valley Environmental Coalition *et al.,* to supplement the administrative record submitted by the defendant, Christine Todd Whitman, Administrator of the Environmental Protection Agency (EPA) [Docket 49]. For the following reasons, this motion is GRANTED in part and DENIED in part. Also pending is a motion by the EPA to file the administrative record out of time [Docket 40]. This motion is GRANTED.

I. Background

The plaintiffs, a number of environmental interest groups and individuals, brought suit against Christine Todd Whitman, Administrator of the EPA, seeking review of the EPA's November 26, 2001 approval of West Virginia's anti-degradation implementation procedures under the requirements of the Clean Water Act. The EPA submitted an administrative record which, it claims, contains all of the documents considered by the EPA in its decision approving the West Virginia plan. The plaintiffs moved to supplement this record with thirty-three documents that they obtained through a Freedom of Information Act request. The plaintiffs claim that these documents are necessary for this court's review of the EPA's November 26, 2001 decision. Specifically, the plaintiffs argue, these documents are part of the complete administrative record, as they were considered by the EPA when it decided to approve West Virginia's final anti-degradation proposal. The EPA opposes the motion, claiming that it has submitted the complete administrative record. In the alternative, the EPA states that if the plaintiffs' additional thirty-three documents are added to the record, the court should also supplement the record with an additional 117 related documents. In response, the plaintiffs welcome the inclusion of the 117 documents in addition to the thirty-three documents they have identified.

II. Discussion

In reviewing a challenged action by an administrative agency, "the court shall review the whole record." 5 U.S.C. § 706 (West 2002). More specifically, judicial review of a challenged agency action "is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971). A reviewing court cannot consider matters not before the agency. If the agency failed to review relevant information, the proper course for the court is to remand to the agency for reconsideration, not to conduct an independent review of that information. *See Thompson v. U.S. Dept. of Labor,* 885 F.2d 551, 555 (9th Cir.1989). " '[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." ' *Virginia Agr. Growers Ass'n v. Donovan,* 774 F.2d 89, 92 (4th Cir.1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 143 (1973)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

That said, the whole administrative record "consists of all documents and materials directly or indirectly considered by the agency" in making the decision in question. *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993). *See also Ad Hoc Metals Coalition v. Whitman,* 227 F.Supp.2d 134, 139 (D.D.C.2002); 1 Charles H. Koch, Jr., *Administrative Law & Practice* § 4 .44 ("[T]he rulemaking record is all the information which the agency used to make the rule.") (2d ed.1997). This definition is functional-it depends on what the agency actually considered in making the decision. Thus "[t]he whole administrative record ... is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson,* 885 F.2d at 555 (internal citations and quotation omitted). *See* Gordon G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status of* Overton Park's *Requirement of Judicial Review "On the Record,"* 10 Admin. L.J. Am. U. 179, 222 (1996) ( "Cases ... make clear that the record in an *Overton Park* sense is what was before the agency at the time of its decision and not simply what the agency chooses to proffer as supporting its decision."). Restricting judicial review to whatever documents the agency decided to submit would permit an agency to omit items that undermined its position. *See Walter O. Boswell Mem'l Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir.1984). Therefore, as stated above, the complete administrative record is simply all " materials directly or indirectly considered by the agency" in making the decision in question. *Bar MK Ranches,* 994 F.2d at 739.

*2 Nonetheless, "the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity. The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Id.* at 740. While courts sometimes allow supplementation of the administrative record beyond those materials submitted by the agency, " the practice decidedly is the exception not the rule." *Motor & Equip. Mfrs. Ass'n v. EPA,* 627 F.2d 1095, 1105 n. 18 (D.C.Cir.1979). Accordingly, the court assumes that the administrative record submitted by the EPA is the complete record unless the plaintiffs can prove to the contrary. If the plaintiffs prove that the EPA has not included information in the administrative record that was considered by the EPA in making its decision, the court will supplement the record with those materials. *See, e.g., Walter O. Boswell Mem'l Hosp.,* 749 F.2d at 792-94 (vacating and remanding to permit supplementation of the record with materials that were considered by the agency but not submitted to the district court); *Ad Hoc Metals Coalition,* 227 F.Supp.2d 134.

The EPA contends that a court may admit documents other than those submitted by the administrative agency only in the rarest of circumstances, such as when there is a showing of bad faith or improper behavior by the administrative agency. The court rejects this contention. The plaintiffs do not seek to supplement the administrative record in the sense of adding documents to the record that were neither before the agency nor considered in the decision-making process. If they did, then a showing of bad faith or improper purpose might be necessary. *See Citizens to Preserve Overton Park,* 401 U.S. at 420. Instead, the plaintiffs contend that the EPA has not submitted to the court all of the materials that properly constitute the complete administrative record. In this circumstance, no showing of bad faith or improper purpose is necessary. *See Ad Hoc Metals Coalition,* 227 F.Supp.2d at 140 n .5.

With this discussion in mind, the court now turns to the specific items that the plaintiffs seek to have included in the administrative record. For ease of analysis, the court will group the various documents submitted by the plaintiffs into three categories. First, the plaintiffs have submitted a number of documents that consist of comments and communications between and among the EPA, the West Virginia Environmental Quality Board, the West Virginia Department of Environmental Protection, and various environmental groups (including some of the plaintiffs). These documents were created during West Virginia's formulation of its anti-degradation implementation procedures. This category includes documents 1, 7-9, 12-15, 17-19, 22, 24, and 26-28. FN1 The second category

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

consists of internal EPA e-mails, reports, and memoranda that form a part of EPA's internal evaluations of the various preliminary West Virginia proposals. This category includes documents 2-6, 10-11, 16, 20-21, 23, 25, and 29. The third category consists of two guidance documents prepared by regional EPA offices regarding anti-degradation procedures, one draft anti-degradation guidance document prepared by the central EPA office, and an EPA document explaining its rejection of Virginia's anti-degradation implementation procedures. This category includes documents 32-34 and 36. FN2 The court will discuss these categories of documents in turn.

> FN1. These documents can be further categorized as follows: documents 1, 7, 12, 13, 15, 17, 19, 24, 27, and 28 are comments by the EPA to the West Virginia EQB or the West Virginia DEP on preliminary West Virginia anti-degradation proposals; documents 22 and 26 are responses by the West Virginia DEP to the EPA; documents 8, 9, and 18 are comments on preliminary proposals by environmental groups to the EPA; and document 14 is a response by the EPA to environmental groups.

> FN2. The plaintiffs have moved to include thirty-three documents in all, numbered as 1-29, 32-34, and 36. The plaintiffs previously submitted interrogatories to the EPA regarding all thirty-six documents. In response, the EPA stated that documents 30 and 31 were already in the record and acknowledged that document 35 had been inadvertently omitted from the record. *See* Pl.'s Exh. A. In their motion to supplement the record, the plaintiffs mistakenly refer to the last document as document 35, but it is numbered 36 in their appendix. *See* Pl.'s Exh. C, Document # 36. (Indeed, there is no Document # 35 included in Exhibit C.) The court has treated the plaintiffs' references to document 35 as references to document 36.

1. Public Comments

*3 As stated above, the first category of documents consists of correspondence between and among the various parties involved in the formation of West Virginia's anti-degradation implementation procedures. All of this correspondence predates July 5, 2001, the date that West Virginia submitted its actual anti-degradation implementation procedures for EPA approval. The EPA argues that while it participated in the process of formulating West Virginia's anti-degradation proposal and was aware of these documents, it did not consider them in deciding whether West Virginia's final submission satisfied the requirements of the Clean Water Act. According to the EPA, its only statutory duty-and the only action subject to challenge here-was to evaluate and approve or disapprove West Virginia's actual submission. Thus, the EPA argues, comments submitted during the state process of formulating the anti-degradation proposal are not relevant. Rather, it argues, only comments submitted to the EPA after the July 5, 2001 submission of the West Virginia anti-degradation proposal are relevant.

To determine the proper scope of the administrative record in the context of the EPA's approval of state water quality standards, a brief description of the administrative process for the development and approval of such standards is necessary. By statute, states must review and, if appropriate, revise their water quality standards not less than every three years. 33 U.S.C. § 1313(c)(1) (West 2002). New or revised standards must be submitted to the EPA for approval. *Id.* § 1313(c)(2). West Virginia's proposed anti-degradation implementation procedures were formulated and submitted in accordance with this statutory scheme. The statute also provides for public participation in this process. *Id.* § 1251(e). EPA regulations provide that:
  EPA, State, interstate, and substate agencies carrying out [rulemaking under the Clean Water Act] shall provide for, encourage, and assist the participation of the public.... In addition to private citizens, the public may include, among others, representatives of consumer, environmental, and minority associations; trade, industrial, agricultural, and labor organizations;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 4

Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

public health, scientific, and professional societies; civic associations; public officials; and governmental and educational associations.... Public participation includes providing access to the decision-making process, seeking input from and conducting dialogue with the public, assimilating public viewpoints and preferences, and demonstrating that those viewpoints and preferences have been considered by the decision-making official.

40 C.F.R. § 25.3(a) & (b). Thus, when conducting rulemaking under the Clean Water Act, both the EPA and the state are required to permit public participation, which includes notice and comment periods and public hearing and meetings. *See id.* §§ 25.5-25.10. Materials complied during public participation, such as written comments and transcripts of hearings, become part of the administrative record used by the agency to render its decision.

**\*4** In some cases, interested parties have brought suit against the EPA for failing to conduct an independent notice and comment period, in addition to the state's notice and comment period, prior to the EPA's approval or disapproval of proposed state standards. In these cases courts have concluded that the public participation requirements of the Act are satisfied by public participation in the state process of formulating revised water quality standards. That is to say, the EPA need not conduct a separate notice and comment period to allow public participation in its decision whether to approve a submitted state plan. As one court explained:

> [P]ublic participation in the establishment of water quality standards occurs when states and tribes review or revise water quality standards. *See* 33 U.S.C. § 1313(c)(1) (requiring states to hold public hearings when reviewing or revising water quality standards). All comments submitted to a state or tribe during the comment period become part of the administrative record and are reviewed by the EPA in determining whether to approve the state's or tribe's proposed standards. Consequently, the purpose of public notice and comment under the APA is satisfied under the Clean Water Act without requiring the EPA to receive additional comments.

*City of Albuquerque v. Browner,* 97 F.3d 415, 425 (10th Cir.1996). *See also Sierra Club v. EPA,* 162 F.Supp.2d 406, 419-20 (D.Md.2001) ("The Court agrees with the EPA and finds that approval or disapproval of state submissions under the Clean Water Act is not rule making; it is only the actual development of the list or load that is rule making. Therefore, as to the initial submission to the EPA, it is the state, not EPA, which is required to meet the notice and comment requirements."). This approach harmonizes various provisions of the Act. For example, in addition to requiring states to review their water quality standards every three years, the Clean Water Act provides that "[r]esults of such review shall be made available to the [EPA] Administrator." 33 U.S.C. § 1313(c)(1). Accordingly, the EPA must be provided with the results of the public participation in the state process. The statute further requires the EPA to either approve or disapprove state proposals within sixty to ninety days of their submission. *Id.* § 1313(c)(3). As explained by the Tenth Circuit, " Congress could not reasonably expect the EPA to conduct APA notice and comment rulemaking proceedings within sixty or ninety days." *City of Albuquerque,* 97 F.3d at 425.

Thus, in the context of the approval or disapproval of state standards under the Clean Water Act, the Clean Water Act (as interpreted by the courts) relieves the EPA of the burden of conducting an independent notice and comment process. Instead, the EPA may rely on the comments generated during the public participation in the state process of formulating the proposed state standards. As a consequence, however, "[a]ll comments submitted to a state or tribe during the comment period *become part of the administrative record* and are reviewed by the EPA in determining whether to approve the state's or tribe's proposed standards." *City of Albuquerque,* 97 F.3d at 425 (emphasis added).

**\*5** In this case, contrary to the process described above, it appears that the EPA did conduct some sort of independent notice and comment period after the submission of the West Virginia proposal and prior to EPA approval that proposal. For example, the administrative record submitted by the EPA includes, among other things, comments from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 5

Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

the West Virginia Rivers Coalition, the Fish and Wildlife Service, and the West Virginia Manufacturer's Association, all of which were submitted to the EPA after West Virginia submitted its final proposal on July 5, 2001. This court does not mean to fault the EPA for accepting further comments in addition to those submitted to West Virginia-more public participation is probably, on balance, a good thing. But the cases cited above suggest that the EPA was not required by the Act to afford the opportunity for further public comment. The court also notes that the EPA did not approve West Virginia's anti-degradation proposal until November 26, 2001, over twenty weeks after West Virginia's July 5, 2001 submission, well beyond the sixty days permitted by the statute for the EPA to approve of a state submission. The extra two and a half months beyond the sixty-day period that it took the EPA to approve West Virginia's submission may be attributable in part to the fact that it received and considered numerous comments after West Virginia's submission of its final proposal. As the Tenth Circuit pointed out in *City of Albuquerque,* the short sixty-day timeframe for approval does not appear to contemplate a comment period following the submission of the state proposal.

In any case, while the EPA was certainly free to permit further comment on West Virginia's submission, FN3 the statutorily-required period of public participation was that which occurred before the state of West Virginia while it was formulating its proposal. The EPA argues that comments (by the EPA or others) on earlier proposals that differed from the final submission are not relevant-only comments on the final submission are relevant. But the administrative rulemaking process is precisely one of initial proposals, comments, compromise, revisions, and final drafts, and the materials produced in this process are typically part of the administrative record. *See, e.g., Connecticut v. Daley,* 53 F.Supp.2d 147, 159 (D.Conn.1999) (noting that the administrative record filed by the agency included meeting transcripts, correspondence, public comments, and various drafts of the agency's decision).

FN3. Although the EPA should have acted within the mandated sixty-day period in any case.

The plaintiffs' position that documents from the West Virginia notice and comment process should be included in the administrative record is further buttressed by statements from the EPA itself. For example, in an August 2001 letter to the West Virginia Manufacturer's Association, Donald Welsh, the Regional Administrator for Region 3 of the EPA, stated that "EPA's involvement in the discussion about antidegradation policies in West Virginia has enabled us to become very familiar with the state-adopted procedures as they were being drafted. This has enabled us to expedite our review [of West Virginia's submission]." (Administrative Record 84). This statement illustrates the EPA's reliance, as contemplated by the statute, on the state process of formulating the final standards, which includes the state notice and comment period, in making its decision to approve the final submission.

*6 For all these reasons, the materials in the first category of the plaintiff's proposed additions to the record, which were produced in the course of West Virginia's formulation of its final anti-degradation proposal that it submitted July 5, 2001, are properly part of the administrative record in this case. As to these documents-documents 1, 7-9, 12-15, 17-19, 22, 24, and 26-28-the plaintiffs' motion to supplement the administrative record is GRANTED.

2. Internal EPA Deliberations

The next category of documents submitted by the plaintiffs for inclusion in the administrative record are internal reports, memoranda, and e-mails created by EPA staff for the use of other EPA staff. In seeking to have these items included in the administrative record, the plaintiffs are attempting to inject internal EPA deliberations into this court's review of the agency's final approval of the West Virginia program. But judicial review of a decision by an administrative agency is based on the reasons given by the agency and the information considered by the agency in the course of making the decision,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

not on the agency's internal decision-making process. *PLMRS Narrowband Corp. v. F.C.C.,* 182 F.3d 995, 1001 (D.C.Cir.1999). Inclusion of these documents in the administrative record would also threaten to hamper the administrative process. As stated by the Federal District Court for the District of Columbia, "[t]o require the inclusion in an agency record of documents reflecting internal agency deliberations could hinder candid and creative exchanges regarding proposed decisions and alternatives, which might, because of the chilling effect on open discussion within agencies, lead to an overall decrease in the quality of decisions." *Ad Hoc Metals,* 227 F.Supp.2d at 143. Accordingly, the court concludes that it is not appropriate to include internal EPA documents as part of the administrative record in this case. The plaintiff's motion to supplement the record with these internal documents-documents 2-6, 10-11, 16, 20-21, 23, 25, and 29-is therefore DENIED.

### 3. Guidance Documents

The plaintiffs also seek to supplement the record with four additional documents related to anti-degradation: a 1994 anti-degradation guidance document from EPA Region 8, a 1986 anti-degradation guidance document from EPA Region 5, a draft EPA anti-degradation guidance document, and EPA Region 3's August 2000 decision disapproving certain aspects of Virginia's anti-degradation implementation procedures. The plaintiffs argue that these documents demonstrate that various EPA offices have taken inconsistent positions on EPA's anti-degradation regulations and will therefore help demonstrate that the EPA's actions in this case were arbitrary and capricious.

The court need not consider whether these document are properly part of the administrative record. As the D.C. Circuit has explained, documents such as these "are judicially cognizable apart from the record as authorities marshaled in support of a legal argument." *Military Toxics Project v. E.P.A.,* 146 F.3d 948, 954 (D.C.Cir.1998). The court in *Military Toxics* was presented with "a policy document from the EPA and two reports from the General Accounting Office." *Id.* Similarly, in this case the plaintiffs seek to supplement the record with three EPA guidance documents and a document articulating EPA's August 2000 decision to disapprove certain aspects of Virginia's proposed anti-degradation implementation procedures.

*7 Because these documents are not part of the administrative record, the plaintiff's motion to supplement the administrative record as to these documents-documents 32-34 and 36-is DENIED. Nonetheless, the plaintiffs are free to cite to these documents, like other authorities in support of legal arguments, in their memoranda in support of motions. The plaintiffs should include copies of any documents so cited in an appendix to the memorandum.

### 4. Other Documents

As noted above, the EPA argues in its opposition memorandum that if the court grants the plaintiffs' motion to supplement the record, the court should likewise supplement the record with 117 additional documents. The plaintiffs have no objection to the inclusion of these documents. The EPA has not included these documents in its opposition memorandum, nor has it filed a motion to supplement the record with these documents. The EPA did include an appendix that lists the documents and gives a brief description of the nature of each. From this court's cursory review of this list, it appears that these documents are additional comments and correspondence between and among the various entities involved in West Virginia's formulation of its anti-degradation proposal. Accordingly, it appears that these documents may also properly be included as part of the administrative record. The court will consider supplementing the record with these documents if and when the EPA so moves.

The plaintiffs also request an adjustment in the briefing schedule to permit them time to review these 117 documents and include them in future briefs to this court. In the event that the EPA moves to add these 117 documents, the court will consider any motion to alter the briefing schedule that might be filed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 7
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156
**(Cite as: Not Reported in F.Supp.2d)**

### III. Conclusion

For the foregoing reasons, the plaintiffs' motion to supplement the administrative record is GRANTED as to Documents 1, 7-9, 12-15, 17-19, 22, 24, and 26-28 and DENIED as to Documents 2-6, 10-11, 16, 20-21, 23, 25, 29, 32-34, and 36. The EPA's motion to file the administrative record out of time is GRANTED.

The court DIRECTS the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

S.D.W.Va.,2003.
Ohio Valley Environmental Coalition v. Whitman
Not Reported in F.Supp.2d, 2003 WL 43377 (S.D.W.Va.), 33 Envtl. L. Rep. 20,156

Briefs and Other Related Documents (Back to top)

• 3:02CV00059 (Docket) (Jan. 24, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.