PATTI GOLDMAN (WSB #24426), Admitted *Pro Hac Vice*    HON. JEREMY FOGEL
JOSHUA OSBORNE-KLEIN (WSB #36736), Admitted *Pro Hac Vice*
KRISTEN L. BOYLES (CSB #158450)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340
(206) 343-1526 *[FAX]*
pgoldman@earthjustice.org
josborne-klein@earthjustice.org
kboyles@earthjustice.org

SHELLEY DAVIS (DCB #41331)
VIRGINIA RUIZ (CSB #194986)
Farmworker Justice
1126 – 16th Street, N.W., Suite 270
Washington, D.C. 20036
(202) 293-5420
(202) 293-5427 *[FAX]*
sdavis@nclr.org
vruiz@nclr.org

AARON COLANGELO (DCB #468448), Admitted *Pro Hac Vice*
Natural Resources Defense Council
1200 New York Avenue, N.W.
Washington, D.C. 20005
(202) 289-6868
(202) 289-1060 *[FAX]*
acolangelo@nrdc.org

*Attorneys for Plaintiffs United Farm Workers;*
*Sea Mar Community Health Center; Pineros Y Campesinos Unidos*
*Del Noroeste; Beyond Pesticides; Frente Indigena de Organizaciones*
*Binacionales; Farm Labor Organizing Committee, AFL-CIO;*
*Teamsters Local 890 and Pesticide Action Network North America*

MICHAEL MEUTER (CSB #161554)
JONATHAN GETTLEMAN (CSB #243560)
California Rural Legal Assistance, Inc.
3 Williams Road
Salinas, CA 93905
(831) 757-5221
(831) 757-6212
mmeuter@crla.org
jgettleman@crla.org
*Attorney for Plaintiffs Martha Rodriguez and Silvina Canez*

| | |
|---|---|
| UFW'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF A COMPLETE ADMINISTRATIVE RECORD (C07-3950 JF) | *Earthjustice*<br>*705 Second Ave., Suite 203*<br>*Seattle, WA 98104*<br>*(206) 343-7340* |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FARM WORKERS; SEA MAR COMMUNITY HEALTH CENTER; PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE; BEYOND PESTICIDES; FRENTE INDIGENA de ORGANIZACIONES BINACIONALES; FARM LABOR ORGANIZING COMMITTEE, AFL-CIO; TEAMSTERS LOCAL 890; PESTICIDE ACTION NETWORK NORTH AMERICA; MARTHA RODRIGUEZ; and SILVINA CANEZ, <br><br> Plaintiffs, <br><br> v. <br><br> ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br> Defendant. | Civ. No. C07-3950 JF <br><br> UFW'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF A COMPLETE ADMINISTRATIVE RECORD |

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

Plaintiffs United Farm Workers et al. (collectively "UFW") ask the Court to compel defendant Environmental Protection Agency ("EPA") to produce a whole administrative record that includes all materials that were before the agency at the time it made its decisions to reregister chlorpyrifos. EPA stipulated that it will exclude "drafts and deliberative documents" because it believes such evidence is "not properly part of the records for judicial review." Docket 25 at 4 ("Joint Case Management Statement").

EPA has now retreated somewhat from its initial position. In its opposition, EPA concedes that "relevant factual materials" and "proposals that were made public" are subject to the Court's review. See EPA Opposition at 1 ("EPA intends to include all relevant factual material in the record . . . ."); id. at 6 ("EPA agrees with plaintiffs that all factual material before the Agency at the time it made is decision should be included in the record."); id. at 12 ("[P]roposals that were made public in order to receive a response . . . should be part of the administrative record.").

While EPA's agreement to provide relevant factual materials and public proposals is an important concession, it does not go far enough for two reasons. First, agency deliberations are often critical in cases, like this one, concerning an agency's failure to consider relevant factors or evidence, conduct a complete investigation to support its decision, or rationally connect its decision with the evidence before it. Second, the "facts" of a case cannot be easily separated from analysis and consideration of such facts by agency staff.

ARGUMENT

I. DELIBERATIVE MATERIALS ARE PART OF THE ADMINISTRATIVE RECORD SUBJECT TO THE COURT'S REVIEW

UFW's claims, brought under the Federal Insecticide, Fungicide, and Rodenticide Act

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)   -1-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  ("FIFRA"), are reviewed pursuant to the standards of section 706(2)(A) of the Administrative
2  Procedure Act ("APA"). The Ninth Circuit has long established that section 706 of the APA
3  requires a court to base its review on the "whole record" that "includes *everything* that was
4  before the agency pertaining to the merits of its decision." Portland Audubon Soc'y v.
5  Endangered Species Comm'n, 984 F.2d 1534, 1548 (9th Cir. 1993) (emphasis added); see also
6  Walter O. Boswell Mem. Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to
7  review an agency's action fairly, it should have before it neither more nor less information than
8  did the agency when it made its decision."). All evidence, analysis of evidence, and
9  deliberations that were "before" EPA at the time it made its chlorpyrifos reregistration decisions
10 are part of the record subject to review.

11     EPA's suggestion that it will include "relevant factual" material in the record but not
12 records that "embody the Agency's consideration of the facts in the record," EPA Opposition at
13 6, would turn APA review upside-down. The APA requires the Court review all data, records,
14 and dissenting opinions before the agency, and determine whether EPA properly considered such
15 evidence and articulated a rational connection between the data and its decision. See Pac. Coast
16 Fed'n of Fishermen's Ass'ns v. NMFS, 265 F.3d 1028, 1034 (9th Cir. 2001) (central question in
17 APA review is whether agency "'considered the relevant factors and articulated a rational
18 connection between the facts found and the choice made'") (citations omitted); Miami Nation of
19 Indians v. Babbitt, 979 F. Supp. 771, 775 (N.D. Ind. 1996) ("[H]aving the 'whole record' before
20 it is crucial to the court's review under the APA [because] . . . 'the court cannot determine
21 whether the final agency decision reflects the rational outcome of the agency's consideration of
22 all relevant factors when the court has no idea what factors or data were in fact considered by the
23 agency.'") (citation omitted). In this case, UFW alleges that EPA's reregistration is based on an

24

25 UFW'S REPLY IN SUPPORT OF ITS MOTION TO
   COMPEL PRODUCTION OF A COMPLETE
26 ADMINISTRATIVE RECORD (C07-3950 JF)   -2-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  inadequate investigation and fails to integrate and address critical evidence of risks from
2  chlorpyrifos.  Cf. Love v. Thomas, 858 F.2d 1347, 1362-63 (9th Cir. 1988) (finding a pesticide
3  emergency suspension order arbitrary and capricious because EPA failed to adequately evaluate
4  the risks and benefits of the pesticide); Trout Unlimited v. Lohn, No. C05-1128C, at 5 (W.D.
5  Wash. May 4, 2006) ("TU I") (Mot. Exh. 1) ("[D]ocuments that were *not* relied upon by a
6  decisionmaker, or evidence relating to such documents and their non-consideration, have been
7  held to be necessary elements of an administrative record.").  EPA has not explained how the
8  Court can determine whether EPA considered relevant evidence and rationally connected such
9  evidence to its final decisions if the Court does not access to all the evidence as well as EPA's
10 full consideration of such evidence, beyond that contained in publicly released documents or the
11 agency's final decisions.

12     Furthermore, EPA's proposed distinction between "facts" and "deliberations" is
13 unworkable.  The Ninth Circuit has expressly rejected "fact" versus "deliberation" labels for
14 determining the applicability of the deliberative process privilege.  Nat'l Wildlife Fed'n v. Forest
15 Serv., 861 F.2d 1114, 1116-17 (9th Cir. 1988) ("[T]he scope of the deliberative process privilege
16 should not turn on whether we label the contents of a document 'factual' as opposed to
17 'deliberative'."); see also Trout Unlimited v. Lohn, No. C05-1128C, at 2 (W.D. Wash. June 28
18 2006) ("TU II") (Mot. Exh. 5) ("[S]imple assessments of whether a document contains 'factual'
19 rather than 'deliberative' material are neither sufficient nor apposite.  Rather, a court must
20 determine whether disclosure of the document would impermissibly 'reveal the mental process
21 of decisionmakers.'") (citations omitted).  In the context of EPA's complex scheme for
22 reregistering pesticides, it is entirely unclear how EPA would draw the line between facts and
23 deliberations: Is a draft analysis of scientific evidence of risk that credits studies ignored by EPA
24
25 UFW'S REPLY IN SUPPORT OF ITS MOTION TO
   COMPEL PRODUCTION OF A COMPLETE
26 ADMINISTRATIVE RECORD (C07-3950 JF)   -3-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

in its final risk assessment "fact" or "deliberation"? What about a staff recommendation that EPA require greater protections like buffer zones around schools to protect children from drift that is never addressed in the final decisions? Would EPA designate as fact emails showing that it selectively collected anecdotal statements regarding grower impacts and failed to verify or collect hard data on such impacts?

EPA may not unilaterally withhold materials that were before the agency at the time it made its decisions. Only by requiring EPA to supply the whole record from the outset will the Court ensure its decision is based on an accurate and complete picture of agency decision-making and not a one-sided record complied by the agency in anticipation for litigation. See Portland Audubon Soc'y, 984 F.2d at 1548 (An incomplete record must be viewed as a "fictional account of the actual decision-making process."); Asarco, Inc. v. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980) ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters.") (citation omitted); Walter O. Boswell Mem. Hosp., 749 F.2d at 792 ("To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'"); id. at 793 (finding that an "asymmetry in information" available to parties "undermines the reliability of a court's review upon those portions of the record cited by one party or the other [because] there would be no check upon the failure of the agency to disclose information adverse to it . . . .").

II. COURTS ROUTINELY CONSIDER DELIBERATIVE MATERIALS IN REVIEWING AGENCY ACTIONS

The courts regularly rely non-public drafts, internal communications, and other deliberations to find agency action unlawful. See UFW Motion at 4-6. For example, in TU II, the court determined that "material reflecting internal debate and discussion regarding key terms

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)   -4-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

which may be of scientific import and which may have significant impact on the effect of the Hatchery Listing Policy" were part of the record subject to the court's review. Slip op. at 8. In Greenpeace v. NMFS, 198 F.R.D. 540 (W.D. Wash. 2000), the court compelled the government to produce documents prepared by NMFS scientists and staff that contained criticisms of NMFS's proposed "reasonable and prudent alternatives" to reduce the effect of groundfish fisheries on Steller sea lions despite NMFS's objection that these materials were deliberative. Id. at 542. Most recently, in Western Watersheds Project v. Forest Service, No. CV-06-277-E-BLW (D. Idaho Dec. 4, 2007) (Exhibit 1 to Second Declaration of Joshua Osborne-Klein), the court considered emails, handwritten notes, and recollections of agency experts, managers, and officials in determining that the agency's denial of an ESA listing petition was arbitrary and capricious because it ran counter to the credible scientific evidence in the administrative record. E.g., slip op. at 32-34.

EPA mistakenly interprets the holding in Washington Toxics Coalition v. Dep't of Interior, No. C04-1998C (W.D. Wash. June 14, 2005) (Mot. Exh. 2), as being "based on a finding that relevant factual information had not been included in the administrative record." EPA Opposition at 9 (emphasis in original).[1] On the contrary, the WTC court required NMFS

---

[1] EPA also argues that WTC is distinguishable because "the Court found specific evidence that the documents plaintiffs sought to add contained factual information" and "Plaintiffs have made no showing here." EPA Opposition at 13. UFW agrees that WTC is inapplicable to the extent it is interpreted as requiring "evidence" of an incomplete administrative record to rebut a "presumption of regularity" regarding the Services' construction of the administrative record. See Blue Ocean Inst. v. Gutierrez, 503 F. Supp. 2d 336, 371 (D.D.C. 2007); Ohio Valley Envtl. Coalition v. Whitman, No. Civ. A. 3:02-0059, 2003 WL 43377 (S.D.W. Va. Jan. 6, 2003). However, in the present case, EPA is not entitled to a "presumption of regularity" regarding its *legal* interpretation of the scope of judicial review under the APA.

Furthermore, even if the presumption of regularity were applicable, it would work against EPA. UFW asks the Court to presume that EPA will act in accordance with an erroneous legal position that will cause it to unilaterally cleanse the administrative records of materials that were before

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)   -5-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  and FWS to produce "evidence . . . pertaining to internal agency deliberations," "documents

2  relating to 'past criticisms' of EPA pesticide actions," and "documents pertaining to

3  communications with other agencies and industry groups . . . ." Id., slip op. at 3-4.  The WTC

4  court ultimately relied on these deliberations in finding that NMFS and FWS had failed to

5  conform their decision to the scientific evidence and critiques from agency staff that were before

6  the agency.  457 F. Supp. 2d 1158, 1182-93 (W.D. Wash. 2006).  EPA has not denied that

7  similar evidence exists in the present case but argues it may cleanse the record of such evidence.

8      EPA's attempt to distinguish Southwest Center for Biological Diversity v. Bureau of

9  Reclamation, 143 F.3d 515 (9th Cir. 1998), and Greenpeace v. NMFS, 106 F. Supp. 1066 (W.D.

10  Wash. 2000), is also unconvincing.  While EPA asserts that the draft RPAs at issue in those cases

11  were made public, neither the Endangered Species Act ("ESA") nor its implementing regulations

12  require the Services to publicly release draft biological opinions.  The scope of review cannot

13  turn on the happenstance of whether drafts or other deliberative materials are voluntarily

14  disclosed or leaked.

15      In sum, courts regularly rely on drafts, internal communications, and other deliberative

16  materials in reviewing the lawfulness of agency actions.  Indeed, review of such materials is

17  often essential in cases involving allegations that an agency acted arbitrarily and capriciously in

18  how it gathered or considered pertinent evidence.

19  III.    EPA MAY NOT UNILATERALLY CLEANSE THE RECORD OF DELIBERATIVE
       MATERIALS
20

    The law in this jurisdiction is clear—EPA is required to submit a "whole record" that
21

22  includes "everything" before the agency at the time it made its decisions to reregister

---

23  the agency at the time it made its decision.  Cf. Gifford Pinchot Task Force v. FWS, 378 F.3d
    1059, 1071-72 (9th Cir. 2004) (applying the presumption of regularity to find agency action
24  unlawful that was presumed to be consistent with unlawful regulation).

25  UFW'S REPLY IN SUPPORT OF ITS MOTION TO
    COMPLETE PRODUCTION OF A COMPLETE
26  ADMINISTRATIVE RECORD (C07-3950 JF)   -6-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

chlorpyrifos.  See Portland Audubon Soc'y, 984 F.2d at 1548.  When EPA seeks to shield deliberative materials from disclosure, EPA must demonstrate the applicability of the deliberative process privilege.  FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).  EPA's position that it may unilaterally exclude deliberative materials from the record without demonstrating that the particular materials are privileged defies the long line of cases prescribing the process for asserting such privileges.

        A.      EPA's position would eviscerate the deliberative process privilege

The procedure for invoking the deliberative process privilege is well established.[2]  There must be "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."  United States v. Reynolds, 345 U.S. 1, 7-8 (1953); see also United States v. Rozet, 183 F.R.D. 662, 665 (N.D. Cal. 1998).  "[T]he government must comply with the formal procedures" to invoke the privilege and "[b]lanket assertions of the privilege are insufficient."  Greenpeace, 198 F.R.D. at 543 (citing Exxon Corp. v. Dept. of Energy, 91 F.R.D. 26, 43-44 (N.D. Tex. 1981); Mobil Oil Corp. v. Dept. of Energy, 520 F. Supp. 414, 416 (N.D.N.Y. 1981)).  The information for which the privilege is claimed must be specified and the government must give "precise and certain reasons" for asserting confidentiality.  United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980); see also Miami Nation, 979 F. Supp. at 778 ("The United States is expected to specify which materials it contends the deliberative process privilege protects with specificity, in the spirit of Fed. R. Civ. P. 26(b)(5)"); cf. Fed. R. Civ. P. 26(b)(5) ("When a party withholds information otherwise

---

[2] While the deliberative process privilege is rooted in the common law, the courts in this jurisdiction "have freely relied on case law deriving from disputes concerning FOIA Exemption 5" in defining the requirements and scope of the common law privilege.  W.R. Grace, 455 F. Supp. 2d at 1143; see also Modesto Irrigation Dist. v. Gutierrez, No. 1:06-cv-00453 OWW DLB, 2007 WL 763370, at *5 (E.D. Cal. Mar. 9, 2007) (quoting Maricopa Audubon Soc'y v. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997)).

UFW'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF A COMPLETE ADMINISTRATIVE RECORD (C07-3950 JF)   -7-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  discoverable . . . by claiming that it is privileged . . . the party shall make the claim expressly and
2  shall describe the nature of the documents, communications, or things not produced or disclosed
3  in a manner that . . . will enable other parties to assess the applicability of the privilege or
4  protection."). Based on the government's substantiation of its privilege claims, "[t]he court itself
5  must determine whether the circumstances are appropriate for the claim of privilege . . . ."
6  Reynolds, 345 U.S. at 8.

7  Once the privilege is properly invoked, the Court has two important functions in
8  determining its applicability. First, the Court must confirm that the records are both
9  "predecisional" and "deliberative" in nature. United States v. Fernandez, 231 F.3d 1240, 1246
10  (9th Cir. 2000); Nat'l Wildlife Fed'n, 861 F.2d at 1117; Warner Commc'ns, 742 F.2d at 1161;
11  United States v. W.R. Grace, 455 F. Supp. 2d 1140, 1143 (D. Mont. 2006); Greenpeace, 198
12  F.R.D. at 543. Second, because the deliberative process privilege is a qualified privilege, the
13  Court must determine whether it is overcome by necessity. Warner Commc'ns, 742 F.2d at
14  1161; W.R. Grace, 455 F. Supp. 2d at 1144; Modesto, 2007 WL 763370, at *6. In order to
15  determine whether the privilege is overcome by need, courts consider: (1) the relevance of the
16  evidence sought in the litigation; (2) the availability of comparable evidence from other sources;
17  (3) the government's role in the litigation; (4) the extent to which disclosure would hinder frank
18  and independent discussion regarding contemplated policies and decisions; (5) the interest of the
19  litigant, and society, in accurate judicial fact finding; and (6) the seriousness of the litigation and
20  the issues involved. Warner Commc'ns, 742 F.2d at 1161; N. Pacifica, LLC v. City of Pacifica,
21  274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003); United States v. Irvin, 127 F.R.D. 169, 173 (C.D.
22  Cal. 1989).

23  EPA's position that it may withhold materials from review without invoking the
24
25  UFW'S REPLY IN SUPPORT OF ITS MOTION TO
    COMPEL PRODUCTION OF A COMPLETE
26  ADMINISTRATIVE RECORD (C07-3950 JF)    -8-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

evidentiary privilege is irreconcilable with this precedent. EPA must identify the documents and provide evidence supporting its claim of privilege. Only then can the parties litigate the propriety of the privilege claim. Only then can the Court decide whether the privilege applies to the particular records for which it is asserted. Strict adherence to the procedures for invoking the deliberative process privilege is necessary to provide a judicial check on what may be self-serving or inappropriate assertion of the privilege.

> B.   <u>EPA has not substantiated its position that it may unilaterally determine whether materials are subject to the deliberative process privilege</u>

EPA has cited no case that supports its position that it may unilaterally withhold evidence that was before the agency at the time it made its decisions. Most of the cases cited by EPA considered whether evidence could be obtained through extra-record discovery. For example, the only Ninth Circuit authority EPA offers, <u>Hall v. Norton</u>, 266 F.3d 969 (9th Cir. 2001) (EPA Opposition at 13), affirmed the denial of "discovery outside the administrative record" on the ground that the plaintiffs had not made the "'strong showing of improper behavior'" that would justify discovery of extra-record evidence. <u>Id.</u> at 977-78. Likewise, in <u>Checkosky v. SEC</u>, 23 F.3d 452 (D.C. Cir. 1994) (EPA Opposition at 4), the D.C. Circuit considered whether the plaintiffs had made the requisite showing of "bad faith" to justify discovery against agency decisionmakers. <u>Id.</u> at 489-90. In <u>McCulloch Gas Processing Corp. v. Department of Energy</u>, 650 F.2d 1216 (Temp. Emer. Ct. App. 1981) (EPA Opposition at 4), the court held that it was improper to review *depositions* of agency officials that went "behind the record to probe the metal processes of the decisionmakers." <u>Id.</u> at 1229. UFW does not seek to create new evidence through discovery; it merely seeks access to all the evidence EPA had before it when it made its reregistration decisions.

Other cases cited by EPA concerned the propriety of using transcripts of meetings

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)   -9-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1  between FCC decisionmakers to contradict the reasoning in FCC's final opinions.  See <u>PLMRS</u>

2  <u>Narrowband Corp. v. FCC</u>, 182 F.3d 995 (D.C. Cir. 1999) (EPA Opposition at 5); <u>Kansas State</u>

3  <u>Network, Inc. v. FCC</u>, 720 F.2d 185 (D.C. Cir. 1983) (EPA Opposition at 4).  These cases are

4  distinguishable because, unlike FCC, EPA is not a multi-headed agency and UFW does not seek

5  to discover the internal thought processes of the ultimate agency decisionmakers.  Instead, UFW

6  seeks to compel EPA to submit the entire body of evidence it compiled and the analysis it

7  conducted leading up to the challenged decisions.

8       EPA has not provided a single example where a court approved of an agency's decision

9  to unilaterally withhold drafts, records of internal communications between agency staff, or other

10  evidence before the agency at the time it made its decision.  EPA's position that it may

11  unilaterally withhold evidence it deems deliberative is unsupportable.

## CONCLUSION

13       UFW asks the Court to compel EPA to produce a complete administrative record that

14  includes drafts, internal communications, and all materials before EPA when it made its

15  chlorpyrifos reregistration decisions.

16       Respectfully submitted this 7th day of December, 2007.

                      /s/ Joshua Osborne-Klein
PATTI GOLDMAN (WSB #24426)
JOSHUA OSBORNE-KLEIN (WSB #36736)
KRISTEN L. BOYLES (CSB #158450)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
(206) 343-1526 *[FAX]*
pgoldman@earthjustice.org
josborne-klein@earthjustice.org
kboyles@earthjustice.org

UFW'S REPLY IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF A COMPLETE
ADMINISTRATIVE RECORD (C07-3950 JF)   -10-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

SHELLEY DAVIS (DCB #41331)
VIRGINIA RUIZ (CSB #194986)
Farmworker Justice
1126 – 16th Street, N.W., Suite 270
Washington, D.C.  20036
(202) 293-5420
(202) 293-5427 *[FAX]*
sdavis@nclr.org
vruiz@nclr.org

AARON COLANGELO (DCB #468448)
Natural Resources Defense Council
1200 New York Avenue, N.W.
Washington, D.C.  20005
(202) 289-6868
(202) 289-1060 *[FAX]*
acolangelo@nrdc.org

*Attorneys for Plaintiffs United Farm Workers; Sea Mar Community Health Center; Pineros Y Campesinos Unidos Del Noroeste; Beyond Pesticides; Frente Indigena de Organizaciones Binacionales; Farm Labor Organizing Committee, AFL-CIO;Teamsters Local 890; and Pesticide Action Network North America.*

MICHAEL MEUTER (CSB #161554)
JONATHAN GETTLEMAN (CSB #243560)
California Rural Legal Assistance, Inc.
3 Williams Road
Salinas, CA  93905
(831) 757-5221
(831) 757-6212
mmeuter@crla.org
jgettleman@crla.org

*Attorney for Plaintiffs Martha Rodriguez and Silvina Canez*

UFW'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF A COMPLETE ADMINISTRATIVE RECORD (C07-3950 JF)   -11-

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

CERTIFICATE OF SERVICE

I am a citizen of the United States and a resident of the State of Washington. I am over 18 years of age and not a party to this action. My business address is 705 Second Avenue, Suite 203, Seattle, Washington.

On December 7, 2007, I served a true and correct copy of the following documents on the parties listed below:

1. UFW's Reply in Support of Its Motion to Compel Production of a Complete Administrative Record;
2. Second Declaration of Joshua Osborne-Klein; and
3. Notice of Scheduling Re: Motion to Compel.

Norman L. Rave, Jr.
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 23986
Washington, D.C. 20026-3986
(202) 616-7568
(20) 514-8865 *[FAX]*
norman.rave@usdoj.gov
*Attorney for Defendant*

☐ via facsimile
☐ via overnight courier
☐ via certified mail
☐ via first-class U.S. mail
☐ via hand delivery
☒ via electronic service by Clerk

I, Cheryl McEvoy, declare under penalty of perjury that the foregoing is true and correct. Executed on this 7th day of December, 2007, at Seattle, Washington.

_____
Cheryl McEvoy

CERTIFICATE OF SERVICE (C07-3950 JF) - 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*