# EXHIBIT A

United States District Court<br>For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARLOS GUTIERREZ, et al.,<br><br>    Defendants.<br>_____/ | No. C 01-0421 JL<br><br>**ORDER TO COMPLETE RECORD**<br>**(Granting Docket # 204)** |

### I. Introduction

Plaintiffs' motion to compel completion of the Administrative Record in this case came on for hearing. Aaron Colangelo (by telephone from Washington, D.C.), Laura Pagano, and Selena Kyle, San Francisco, California, appeared for the Natural Resources Defense Council ("Plaintiffs"). Kristen Byrnes Floom, United States Department of Justice, (by telephone from Washington, D.C.) appeared for Secretary of Commerce Carlos Gutierrez and the National Marine Fisheries Service ("Defendants"), and Marc Slonim, Ziontz Chestnut Varnell Berley & Slonim, Seattle, Washington, appeared for the Makah Indian Tribe, an *amicus* in this case.

The Court considered the moving and opposing papers and the arguments of counsel and the record in this case, and hereby grants the motion.

## II. The Court's Order

The Court orders Defendants within twenty days of this order to produce to Plaintiffs all non-privileged documents which were before the Agency when it made its decision, whether those documents are reflected in the decision or are contrary to it, or were even considered by the Agency. Even for documents for which Defendants claim privilege, such as the deliberative process privilege, Defendants shall produce any factual material which may be segregated from deliberative material.

The Court also orders Defendants within twenty days of this order to produce at the same time to Plaintiffs and file with the Court a privilege log listing all documents in the categories that Plaintiffs have requested for which Defendants claim the deliberative process privilege. Defendants contend they did not assert the deliberative process privilege, since the Court had not yet ordered them to produce documents, so the Court will permit further briefing on this issue. The Court directs the parties, if they wish to brief this issue further, to agree to a mutually agreeable briefing schedule that will accommodate simultaneous cross-briefing of no more than seven pages each and simultaneous cross-replies of no more than five pages each. The parties are to notify the Court within five judicial days of the date of this Order of their agreed-upon schedule.

## III. Plaintiffs' motion

Plaintiffs ask the Court to reject NMFS's contentions that the record it submitted to this Court in March 2007 either is or should be presumed to be the whole record. Plaintiffs object that the version of the record Defendants offer categorically excludes entire classes of documents—including virtually all emails, internal notes, meeting minutes, analyses and drafts—that the agency must have considered or had before it over the course of the complex, multi-year administrative rulemaking challenged in this case. Plaintiffs also contend that the March 2005 Guidelines NMFS used to prepare the record are a facially illegal application of this Circuit's law on the scope of "whole record" review. Plaintiffs refer this Court to two courts which have already addressed this exact issue in other fisheries

litigation, including one in this Circuit. Both have rejected NMFS's reliance on these Guidelines to assert that it has produced a presumptively complete record and ordered the agency to further review the records in those cases and complete them with any improperly excluded documents. Plaintiffs ask the Court to be skeptical of NMFS's assertion that it applied those Guidelines only in part as contradicted by its prior submissions and—even if true—would not establish that the March 2007 record is complete. Finally, Plaintiffs ask the Court to find that the supplementation and privilege doctrines NOAA invokes are inapposite and would not justify the broad categorical exclusions NMFS urges this Court to endorse.

### IV.   Defendants' opposition

Defendants claim to have followed the Appendix to the guidelines ("Appendix") that specifically applies to actions under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), and that they did not strictly adhere to the general provisions of the Guidelines in compiling the March 2007 administrative record. Rather, NMFS prepared the supplemental record in the same manner as the four previous administrative record filings in this action, to which Plaintiffs raised no objection. Defendants argue that they properly excluded deliberative documents, including informal correspondence and draft documents reflecting the opinions of individual agency employees, as outside the scope of the administrative record. As far as they are concerned, the existing record is more than adequate to allow judicial review of Plaintiffs' claims. In fact, they say, the Court previously reviewed similar claims on the basis of a record prepared in the same manner. They ask this Court to deny Plaintiffs' motion.

### V.   ANALYSIS

#### A.   What law applies?

The Magnuson-Stevens Act provides that one of the polices of the MSA is:

"to assure that the national fishery conservation and management program utilizes, and is based upon, the best scientific information available;"

1  16 U.S.C. §1801 (c)(3)

Plaintiffs in the case at bar contend that politics has trumped science more than once in cases involving the National Marine Fisheries Service ("NMFS") and its implementation of the MSA. In particular, Plaintiffs allege that Defendants have rejected the best scientific information available, even when provided by their own staff, in favor of the politically expedient solution to the problem of a depleted fishery.

### B.  What Comprises the Administrative Record in this Case?

Under the Administrative Procedure Act ("APA"), a court reviewing an agency action must consider "the full administrative record before the [decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). "The 'whole' administrative record ... consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir.1989) (citation omitted). Consequently, although generally it is the agency that compiles and designates the full administrative record, see *Fund for Animals v. Williams*, 245 F.Supp.2d 49, 56-57 (D.D.C. 2003), "[t]he whole administrative record ... is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Id.* Consequently, supplementation of the record produced may still result only in the production of the "whole administrative record," rather than in the production of extrinsic data that could put the Court in the impermissible position of proceeding de novo rather than with the proper deference to agency processes, expertise, and decision-making. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir.2005).

### C.  The most recent supplemental record in this case was compiled using the Administrative Records Guidelines of March 2005

The guidelines set forth in NMFS POLICY DIRECTIVE 30-123, ADMINISTRATIVE RECORDS GUIDELINES (March 2005) ("AR DIRECTIVE"), in pertinent part, state as follows:

> NMFS keeps records for three separate purposes. First, the agency must maintain records to protect the public interest in government documents and materials. Second, the agency for its own business purposes, and occasionally for public viewing, keeps a docket of information relating to a specific decision. Third, when a NMFS decision is challenged in court, the agency must produce a subset of these documents to the court.
>
> ....
>
> The term "administrative record" can be used to mean a compilation of documents that the agency maintains to track its decision-making process, or it can mean the subset of those documents that is compiled and produced to a court to demonstrate the decision-making process and the basis for a final agency decision. The Guidelines will use "administrative record" (AR) to refer to the record produced for litigation, and "docket" to describe the record maintained by the agency to document the development of a specific agency decision.
>
> ....
>
> [T]he agency should present an AR that demonstrates compliance with procedural requirements and the full rationale for the agency's decision.
>
> ....
>
> The AR must ... explain and rationally support the agency's decisions.... Particularly, the AR should document consideration of opposing points of view, and provide a thorough explanation as to why the preferred course of action was adopted.
>
> ....
>
> The following two threshold principles can be used in evaluating whether to exclude a document from an AR: (1) relevance; and (2) significance.
>
> ....
>
> A document is significant if it bears directly on the substantive issues examined by the agency while undertaking its decision-making process relating to the final action. If a document contains information and deliberations relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker), then the document is significant. *Significant documents are a subset of relevant documents.* AR DIRECTIVE, passim. (Emphasis added)

The directive further notes that a proposed AR should be reviewed by a NOAA[1] (National Oceanographic and Aerospace Administration) case attorney, who will review the file to see if additional documents should be included or if irrelevant, insignificant documents should be removed. *Id.* at 9.

Application of the AR DIRECTIVE and those paragraphs to the compilation of the Administrative Record in this case, are sufficient to make the necessary prima facie showing that there is "material in the agency's possession indicative of ... an incomplete record." *Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F.Supp.2d 7, 12 (D.D.C.2001).

However, Defendants contend that they compiled the AR in this case using Appendix 14 to the Guidelines, and that they have used this same method previously in this case, without protest by Plaintiffs. Plaintiffs point out that the previous Administrative Record was compiled before the March 2005 Guidelines went into effect. The Court examines whether the use of Appendix 14 mitigates the deficiencies of the Guidelines.

### D. Defendants claim to have used Appendix 14 in compiling the record, rather than the "relevant" and "significant" analysis in the Guidelines that Plaintiffs object to.

NMFS protests that "in compiling the March 2007 supplemental record, it did not employ the 'relevant' and 'significant' analysis described in the Guidelines (Lockhart Decl. At ¶6). Instead, NMFS compiled the record by including all documents within NMFS' files falling within the categories referenced in Appendix A of the Guidelines, Guidelines at 14, *to the extent such documents were considered by the decisionmaker.*" (Emphasis added)*.* This provision of Appendix 14 runs counter to the case law, as articulated by the U.S. Supreme Court, that if an agency *does not consider* relevant *documents*, its ensuing actions may be termed "arbitrary and capricious."

---

[1] Plaintiffs refer to Defendants throughout their papers as "NOAA" and "NOAA Fisheries", while Defendants refer to themselves as "NMFS." The Court refers to them as they refer to themselves.

An agency's action may be arbitrary and capricious if it can be shown that "the agency ... entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983).

Therefore, documents that were not relied upon by a decisionmaker, or evidence relating to documents not considered, have been held to be necessary elements of an administrative record. Furthermore, even within the universe of documents considered by the decision-maker, the Ninth Circuit has held that a complete record includes all materials directly and indirectly considered by the decisionmaker, *Thompson*, 885 F.2d at 555.

The law is that the Agency must include in the Administrative Record all information that was before it, regardless of whether it is incorporated in the final decision, or by implication, whether the Agency considered it. Some courts define the whole record as documents and materials directly or indirectly considered by agency decision-makers, including evidence that is contrary to the decision-maker's decision. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). The 9th Circuit has even more broadly defined the record as "everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993).

Consequently, Defendants' limitation of documents to those "considered" by a decisionmaker is considerably more narrow than what is permitted by this circuit.

**E.  The Types of Materials the March 2007 Administrative Record and Guidelines exclude have been included in administrative records and cited by reviewing courts in other APA challenges to NMFS actions under NEPA, the MSA, and other environmental statutes.**

The "whole record" in APA challenges necessarily encompasses entire classes of documents that NMFS simply excluded from the March 2007 record in this case, pursuant to its improper Guidelines. *See, e.g., Miami Nation of Indians of Indiana v. Babbitt,* 979

C-01-0421 ORDER TO COMPLETE RECORD                                    Page 7 of 15

F.Supp. 771, at 778 (N.D.Ind., 1996) (ordering agency to "complete the administrative record" with "all materials," including "draft reports," "notes and logs," and "guidelines, directives and manuals," "considered by the agency" in making the challenged decision). NRDC has identified at least one appellate and five district court opinions from APA-based environmental cases against NMFS in the past three years in this Circuit alone, that expressly reference NMFS staff emails, internal memoranda, and other types of documents that have been improperly excluded from the administrative record in this case under the March 2005 Guidelines. *See Earth Island Inst. v. Hogarth*, 484 F.3d 1123, 1134-35 (9th Cir. 2007), (citing NMFS "internal memoranda," including "briefing packet" and "talking points"), affirmed as modified at 494 F.3d 757 (9th Cir. 2007);*Washington Toxics Coalition v. U.S. Dep't of Interior, et al.*, 457 F. Supp. 2d 1158, at 1183-85 & n. 19, 1190-93 & n. 28 (W.D. Wash. 2006) (citing NMFS  staff emails, draft letters, comments and guidance documents, meeting minutes, and notes); *Ctr. for Biological Diversity v. Evans*, No. C 04-04496, 2005 WL 1514102 (N.D. Cal. June 14, 2005) (attached to Pltf Memo as Exhibit G), at *5 (citing agency memos and other "correspondences" and draft rule never released to public). NMFS is improperly excluding from the administrative record here irrelevant documents that courts routinely rely on – and plaintiffs routinely have an opportunity to review and cite in support of their claims – in other cases challenging agency actions.

APA opinions in cases involving other federal agencies, in this and other Circuits, reference similar material. See, e.g., *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 862-63 & n. 4 (9th Cir. 2005) (citing U.S. Army Corps staff emails); *NRDC v. Rodgers*, 381 F. Supp. 2d 1212, 1236 n. 41, 1239-40 & nn. 47, 52, and 1245 (E.D. Cal. 2005) (referencing U.S. Bureau of Reclamation manual, Bureau and U.S. Fish and Wildlife Service staff emails, and similar "internal correspondences"); *NRDC v. Kempthorne*, 506 F.Supp.2d 322 (E.D. Cal. 2007) (attached to Pltf memo as Exhibit H), at 371 et seq. (citing email exchanges between U.S. Fish and Wildlife Service, U.S. Environmental Protection Agency, and California Department of Water Resources staff); *Defenders of Wildlife v. Kempthorne*, No. 04-1230, 2006 WL 2844232 (D.D.C. Sept. 29, 2006) (attached to Pltf memo as Exhibit I), at *11 n. 8 (citing email by U.S. Fish and Wildlife Service employee).

Pertinent material that undermines or otherwise does not support a final agency decision is inherently less likely to appear "logically connect[ed]" to it, let alone to have been "transmitted to" and "relied on by the decision-maker" as the Guidelines require before it may be included in the record. Guidelines, Pltf. Memo at Ex. A at 4.

NRDC has not identified specific documents excluded from the administrative record in this case, because the excluded documents are not public and are most likely in Defendants' sole possession. The broad gaps in the types of documents included in the March 2007 record and the corresponding exclusions in the Guidelines make clear, however, that Defendants have improperly and prejudicially excluded material "before the agency," *Portland Audubon Soc. v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993), during the rulemaking. See also *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir. 1984) (rejecting as "fundamentally unfair," and remanding for review on a revised record, decision on record that excluded certain documents unfavorable to the agency's defense of its challenged rule, of which plaintiffs were then apparently "unaware").

**F. Several courts have Invalidated NMFS' reliance on the March 2005 Guidelines, or their reasoning, to prepare fisheries records for litigation**

At least two district courts, including one in this Circuit, have rejected NMFS' reliance on the March 2005 Guidelines to compile fisheries litigation records, and ordered the agency to complete those records with all material "directly or indirectly considered by" the agency. *See Trout Unlimited*, Pltf memo at Ex. E, at *2-5; *Coastal Conservation Ass'n*, Pltf Memo at Ex. C, at 2-5. That material, as one court emphasized, should include all non-privileged:

> communications (including emails) among and between [NMFS] staff, the staff of the Council and other parties relating to the development of [the challenged Fishery Management Plan amendment], as well as all non-privileged records related to the EIS process concerning (a) the possible impacts of the proposed rule, (b) assessments of alternatives, (c) the impact of scientific uncertainties on the selection of alternatives, and (d) the alternatives related to how much to reduce bycatch in the [subject] fishery . . .

*Coastal Cons. Ass'n*, Pltf Memo at Ex. C, at 5; see also *id.* at 2 (discussing agency's exclusion of "internal [NMFS] reviews and analyses, evaluations of competing proposals and their possible impacts, [and] disputes in the scientific literature.").

As another court recognized in ordering the record completed with a summary report of particular scientific opinions known to NMFS before it issued a challenged policy – but that the agency claimed were not a "basis" for that policy – even "documents that were not relied on by a decisionmaker, or evidence relating to such documents and their non-consideration have been held to be necessary elements of an administrative record." *Trout Unlimited*, Pltf Memo at Ex. E, at *3-4 (emphasis in original).

This evidence of material before NMFS during the rulemaking, even if not "relied on" in the challenged policy, was clearly pertinent to the court's inquiry into whether the agency had violated the APA. *Id.* at *3-4; *see also Earth Island Inst. v. Evans*, Ptf memo at Ex. F, at *25 n. 15 (criticizing NMFS' "attempt to dismiss the importance of" an internal document, and explaining that "[t]he point is not that this document reflects the reasoning of the decision-maker – clearly it does not; rather, it is compelling evidence that the decision-maker rejected the conclusions of the agency's own scientists" in reaching the decision). After appeal, the Ninth Circuit affirmed the decision as modified, against the agency. *Earth Island Institute v Hogarth,* 494 F.3d 757 (9th Cir. 2007).

A third court, also in this Circuit, has rejected NMFS' assertion – made shortly before it issued its March 2005 Guidelines – that it may exclude from administrative records all materials "which do not form the basis for the determinations in" its final decision documents. *Nat'l Wildlife Fed'n*, Pltf memo at Ex. D, at *6-7 (citing declaration of NMFS Northwest Regional Administrator Robert Lohn). The court concluded that NMFS' application of these statements had rendered its record "incomplete" under the law of this Circuit and ordered the agency to promptly complete it. Id. at *7-11 (citing in part *Thompson*, 885 F.2d at 555.

However, the ruling did acknowledge that an agency "generally may exclude material that reflects internal deliberations." *Id.* at 5, citing *Fund for Animals v. Williams*, 245 F.Supp. 2d 49, 55 (D.D.C. 2003), judgment vacated on other grounds at *Fund For Animals,*

*Inc. v. Hogan*, 428 F.3d 1059 (D.C. Cir. 2005). The court also acknowledged that defendants had claimed attorney-client privilege for some documents and ordered them to provide all documents for which they claimed privilege on their privilege log, to the court.

### G. Pre-Guidelines Proceedings in the case at bar have included internal agency documents which Defendants now seek to exclude from the record.

Even assuming *arguendo* that NMFS in fact used only the Guidelines' Appendix to prepare the March 2007 record, that Appendix merely reinforces—by reference to a "typical" list of documents to be included in a record—the unlawful categorical exclusions presaged in the earlier discussion NMFS now disavows. See Guidelines, Ex. A to Pltf memo, at A-6 to A-11 and A-17 to A-18). Those exclusions also undermine NMFS's retrospective assertions that the March 2007 record excludes nothing more than the records the agency prepared for earlier phases of this litigation, and in any event includes everything "directly or indirectly considered" by NMFS during the challenged rulemaking.

Both the March 2007 record and March 2005 Guidelines appear to exclude certain documents, like internal agency memoranda, that NOAA included in its record for the only prior round of merits briefing in this case. Compare NRDC Br. at 3 and Ex. A at A-6 to A-11 (describing NOAA's categorical omissions of internal staff memoranda and analyses) with 4 AR E.2-E.8 (internal agency counsel memoranda submitted with Administrative Record to Amendment 12). Such documents, even where they may "reflect the opinions of individual agency employees," Lockhart Decl. at 3 ¶ 5, plainly constitute materials NMFS "directly or indirectly considered" during its rulemaking. To the extent this portion of the Lockhart Declaration, id. at 3 ¶ 5, is meant to suggest that only those documents that reached NMFS most senior administrators were in fact "considered," courts have rejected that view as contrary to the Ninth and other Circuits' pronouncements that the record includes all documents "directly or indirectly" considered, *Thompson*, 885 F.2d at 555; *Bar MK Ranches v. Yuetter*, 994 F.2d at 735, 739 (10th Cir. 1993), and as such naturally encompasses the underlying "work and recommendations of [agency] subordinates," *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d. 7, 12 (D.D.C. 2001).

NRDC cited some internal agency memoranda in its prior merits briefing in this case, and this Court referred to one of the memoranda when it ruled in August 2001, that NMFS's Amendment 12 to the Groundfish FMP violated the APA, MSA, and NEPA. *See* Plaintiffs' May 17, 2001 Opening Memorandum in Support of Summary Judgment at 36 & n. 14 (discussing and quoting 4 AR E.7 and 4 AR E.8); *Natural Resources Defense Council, Inc. v. Evans*, 168 F. Supp. 2d 1149, 1160 (N.D. Cal. 2001) (quoting 4 AR E.6), affirmed in part and vacated in part on other grounds at *Natural Resources Defense Council, Inc. v. Evans*, 316 F.3d 904 (9th Cir. 2003).

Because documents including internal agency memoranda were indisputably created and considered during NMFS's Amendment 12 rulemaking, it is simply implausible that equivalent documents missing from the March 2007 record were never "considered" by or were otherwise "before" NMFS during the subsequent rulemaking on Amendment 16-4 challenged here. On the contrary, it is likely not only that NMFS has unlawfully excluded such documents from the March record, but that those exclusions have left NRDC and this Court with a materially incomplete and "fictional account of the actual decisionmaking process" the Court must review in this case. *Portland Audubon*, 984 F.2d at 1548 (citation omitted). NOAA's bid to "withhold" from judicial scrutiny entire categories of material potentially "unfavorable to its case," *Heckler*, 749 F.2d at 792, on the basis of unsupported assertions that this material was not "directly or indirectly considered," should be rejected.

Therefore, relevant documents which were before the agency, but which the agency did not consider, shall be part of the AR, to enable this Court to decide whether disregarding them renders the agency's decision arbitrary and capricious.

**VI.    To assure proper judicial review, this Court orders the Administrative Record completed**

To compensate for the "asymmetry of information" between NRDC and Defendants as to what NMFS had before it during the rulemaking, *Heckler,* 749 F.2d at 793, and to assure that judicial review proceeds on the "whole [rulemaking] record" the APA mandates, 5 U.S.C. § 706, this Court orders Defendants to complete the Administrative Record.

**VII.   Are some documents subject to the deliberative process privilege?**

### A. Defendants deny asserting the privilege.

Defendants contend that even if the documents Plaintiffs seek were properly part of the AR, they should be excluded as reflecting internal agency deliberations and therefore subject to the deliberative process privilege.

After arguing the privilege for several pages of their Opposition, Defendants rather coyly in a footnote backtrack and say, "Because Defendants have not asserted the deliberative process privilege, they have not produced a privilege log. *See* Pl. Mem. At 6, n. 6. Rather, as explained *supra*, deliberative documents are not part of the record in the first instance. If, however, the Court determines that deliberative documents should be included in the record, such that Federal Defendants must invoke the deliberative process privilege, Federal Defendants will provide a declaration explaining the nature of any documents withheld and the agency's rationale for withholding the documents." (Opp. at 13)

### B. What determines whether documents are subject to the deliberative process privilege?

The initial burden of establishing the applicability of the privilege is on the government. *Redland Soccer Club v. Dept. of Army of the U.S.*, 55 F.3d 827, 854 (3rd Cir.1995); *Mobil Oil Corp. v. Dept. of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981) ("*Mobil Oil I*" ). In addition to showing that withheld documents fall within the claim of privilege, the government must comply with formal procedures necessary to invoke the privilege. *Exxon Corp. v. Dept. of Energy*, 91 F.R.D. 26, 43-44 (N.D.Texas 1981); *Mobil Oil I*, 520 F.Supp. at 416. Blanket assertions of the privilege are insufficient. *Exxon Corp.*, 91 F.R.D. at 43. Rather, the agency must provide "precise and certain" reasons for preserving the confidentiality of designated material. *Mobil Oil I*, 520 F.Supp. at 416.

Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed. *Redland Soccer Club,* 55 F.3d at 856; *Mobil Oil Corp. v. Dept. of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y.1983) (*"Mobil Oil II*" ). In order to qualify for the privilege, a document must be both "predecisional" and "deliberative," meaning it must actually be related to the process

by which policies are formulated. *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988). Because the privilege "is centrally concerned with protecting the process by which policy is formulated," only those materials that bear on the formulation or exercise of agency policy-oriented judgment fall within the privilege. *Petroleum Information Corp.*, 976 F.2d 1429, 1435 (D.C. Cir. 1992). Factual material is protected only to the extent it reflects an agency's "preliminary positions or ruminations about how to exercise discretion on some policy matter." *Id.*

"Conversely, when materials could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable." *Id.* (emphasis added). As such, information that does not disclose the deliberative process, communications unrelated to the formulation of law or policy, and routine reports are not shielded by the privilege. See e.g., *National Wildlife Federation*, 861 F.2d at 1117; *Petroleum Information Corp.*, 976 F.2d at 1435; *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D.Ca.1995); *Kelly v. City of San Jose*, 114 F.R.D. 653, 658-59 (N.D.Ca.1987); *Seafirst Corp. v. Jenkins*, 644 F.Supp. 1160, 1163 (W.D.Wash.1986); *Mobil Oil II*, 102 F.R.D. at 5-6.

Finally, even where the privilege is properly asserted, it is not absolute and the court must determine whether the need for the evidence overrides the government's interest in non-disclosure. See *F.T.C. v. Warner Comm. Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984). For example, the privilege may be inapplicable where the agency's decision-making process is itself at issue. *Greenpeace v. National Marine Fisheries Service* 198 F.R.D. 540, 543 (W.D.Wash., 2000)

**VIII.    Defendants shall produce non-privileged documents and a privilege log; the parties may further brief the issue of privilege.**

The Court orders Defendants to produce to Plaintiffs within twenty days of the filing of this order all non-privileged documents which were before the Agency when it made its decision, whether those documents are reflected in the decision or are contrary to it, or were even considered by the Agency. Even for documents for which Defendants claim

privilege, such as the deliberative process privilege, Defendants shall produce any factual material which may be segregated from deliberative material.

This Court further orders Defendants within twenty days of this order to produce to Plaintiffs and file with the Court a privilege log listing all documents in the categories which Plaintiffs have requested for which Defendants claim the deliberative process privilege. Defendants contend they did not assert the deliberative process privilege, since the Court had not yet ordered them to produce documents, so the Court will permit further briefing on this issue. The Court directs the parties, if they wish to brief this issue further, to agree to a mutually agreeable briefing schedule that will accommodate simultaneous cross-briefing of no more than seven pages each and simultaneous cross-replies of no more than five pages each. The parties are to notify the Court within five judicial days of the date of this Order of their agreed-upon schedule.

IT IS SO ORDERED.
DATED: January 14, 2008

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\01-0421\order-204-final.wpd