1   Laurence A. Weiss (Bar No. 164638)
        Laurence.Weiss@hellerehrman.com
2   HELLER EHRMAN LLP
    275 Middlefield Road
3   Menlo Park, CA  94025-3506
    Telephone:    650.324.7000
4   Facsimile:    650.324.0638

5   David B. Weinberg (D.C. Bar # 186247), Admitted *Pro Hac Vice*
        dweinberg@wileyrein.com
6   Eric Andreas (D.C. Bar # 462777)
        eandreas@wileyrein.com
7   David E. Markert (D.C. Bar #502486)
        dmarkert@wileyrein.com
8   WILEY REIN LLP
    1776 K Street NW
9   Washington, DC  20006
    Telephone:    202.719.7000
10  Facsimile:    202.719.7049

11  Attorneys for Intervenor-Defendant
    Dow AgroSciences LLC

12

13              **UNITED STATES DISTRICT COURT**

14        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                    **SAN JOSE DIVISION**

16

17  UNITED FARM WORKERS, AFL-CIO,    )    Case No. C 07-03950 JF
    et al.,                          )
                                     )
18                Plaintiffs,        )    **NOTICE OF MOTION, MOTION TO**
                                     )    **DISMISS, AND MEMORANDUM**
19                                   )    **OF POINTS AND AUTHORITIES IN**
                                     )    **SUPPORT OF MOTION**
20        v.                         )
                                     )    Date:  Friday, May 9, 2008
21  ADMINISTRATOR,                   )    Time: 9:00 AM
    UNITED STATES ENVIRONMENTAL      )    Courtroom 3, 5th Floor
22  PROTECTION AGENCY,               )
                                     )    The Honorable Jeremy Fogel
23                Defendant,         )
                                     )
24  DOW AGROSCIENCES LLC             )
                                     )
25                Intervenor.        )
    _____)
26

27

28

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C07-03950 JF

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ....................................................................................... ii

3  NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD............v

4  POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ................................1

5  STATEMENT OF THE ISSUES ........................................................................................1

6  BACKGROUND .................................................................................................................2

7    I.    OVERVIEW OF CONTROLLING FIFRA PROVISIONS.................................................2

8    II.   REREGISTRATION OF CHLORPYRIFOS ..................................................................3

9  ARGUMENT......................................................................................................................5

10   I.    THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
           JURISDICTION ..................................................................................................5
11
       A.    FIFRA Section 4(m) Provides for Exclusive Jurisdiction in the Court of Appeals..........5
12
       B.    The Terms for Review in the Circuit Court Under Section 16(b) are Met in this Case ...6
13
       C.    The Plaintiffs' Asserted Bases for District Court Jurisdiction are Inapplicable...............9
14
     II.   PLAINTIFFS HAVE NOT DEMONSTRATED STANDING.........................................11
15
   CONCLUSION..................................................................................................................13
16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3

Air Courier Conference v. American Postal Workers Union,
    498 U.S. 517 (1991)................................................................................................. 11

4

5

Bates v. Dow AgroSciences LLC,
    544 U.S. 431 (2005)................................................................................................... 7

6

Block v. Community Nutrition Institute,
    467 U.S. 340 (1984)................................................................................................... 9

7

City of Portland v. EPA,
    507 F.3d 706 (D.C. Cir. 2007).................................................................................. 9

8

Clarke v. Securities Industry Ass'n,
    479 U.S. 388 (1987)................................................................................................. 12

9

10

Communities Against Runway Expansion, Inc. v. FAA,
    355 F.3d 678 (D.C. Cir. 2004).............................................................................. 12

11

Environmental Defense Fund, Inc. v. Costle,
    631 F.2d 922 (D.C. Cir. 1980)............................................................................ 7, 8

12

Ex parte McCardle,
    74 U.S. (7 Wall.) 506 (1868) .................................................................................. 1

13

Fleck & Associates, Inc. v. City of Phoenix,
    471 F.3d 1100 (9th Cir. 2006).............................................................................. 11

14

15

Florida Power & Light v. Lorion,
    470 U.S. 729 (1985)................................................................................................. 10

16

Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,
    528 U.S. 167 (2000)................................................................................................. 11

17

Herman Family Revocable Trust v. Teddy Bear,
    254 F.3d 802 (9th Cir. 2001) .................................................................................. 6

18

Humane Society of the United States v. EPA,
    790 F.2d 106 (D.C. Cir. 1986)............................................................................ 7, 8

19

20

Individuals for Responsible Government v. Washoe County,
    110 F.3d 699 (9th Cir. 1997) ................................................................................ 11

21

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)................................................................................................. 11

22

Northwest Food Processors Ass'n v. Reilly,
    886 F.2d 1075 (9th Cir. 1989) ................................................................................ 8

23

Nuclear Information & Resource Service v. Nuclear Regulatory Commission,
    457 F.3d 941 (9th Cir. 2006)............................................................................ 1, 11

24

25

Owner-Operators Independent Drivers Ass'n of America, Inc. v. Skinner,
    931 F.2d 582 (9th Cir. 1991) ................................................................................ 10

26

Recreation Vehicle Industry Ass'n v. EPA,
    653 F.2d 562 (D.C. Cir. 1981).................................................................................. 9

27

Safe Extensions, Inc. v. FAA,
    509 F.3d 593 (D.C. Cir. 2007).................................................................................. 7

28

Steel Co. v. Citizens for a Better Environment,
    523 U.S. 83 (1998)............................................................................... 1

UMC Industries, Inc. v. Seaborg,
    439 F.2d 953 (9th Cir. 1971) ............................................................... 6

United States v. Florida East Coast Railway Co.,
    410 U.S. 224 (1973).............................................................................. 7

Valley Forge Christian College v. Americans United for Separation of Church and
    State, Inc.,
    454 U.S. 464 (1982)............................................................................ 11

Warth v. Seldin,
    422 U.S. 490 (U.S. 1975) .................................................................... 11

Welchert v. American Cyanamid,
    59 F.3d 69 (8th Cir. 1995) .................................................................. 13

## REGULATIONS

40 C.F.R. Pt. 152 ...................................................................................... 2

## RULES

Fed. R. Civ. P. 12(b)(1) .......................................................................... iv

Fed. R. Civ. P. 12(h)(3) ............................................................... iv, 1, 6

## STATUTES

5 U.S.C. § 551 ......................................................................................... 7

7 U.S.C. § 136(bb) .................................................................................. 5

7 U.S.C. § 136a .................................................................................... 2, 5

7 U.S.C. § 136a-1 ............................................................................ 1, 3, 5

7 U.S.C. § 136n.................................................................... 1-4, 6, 7, 10

7 U.S.C. §§ 136-136y ............................................................................. 1

15 U.S.C. § 2618 ..................................................................................... 9

16 U.S.C. § 1536 ..................................................................................... 9

28 U.S.C. § 1331 ........................................................................ 4, 7, 9, 10

33 U.S.C. § 1369 ..................................................................................... 9

33 U.S.C. § 2717 ..................................................................................... 9

42 U.S.C. § 300j-7 .................................................................................. 9

42 U.S.C. § 4915 ..................................................................................... 9

42 U.S.C. § 6976 ..................................................................................... 9

42 U.S.C. § 7607 ..................................................................................... 9

42 U.S.C. § 10139................................................................................... 9

# OTHER AUTHORITIES

62 Fed. Reg. 42020 (Aug. 4, 1997) ........................................................................... 3

64 Fed. Reg. 57876 (Oct. 27, 1999) ........................................................................... 3

65 Fed. Reg. 49982 (Aug. 16, 2000) ........................................................................... 3

65 Fed. Reg. 56886 (Sept. 20, 2000) ........................................................................... 3

66 Fed. Reg. 57073 (Nov. 14, 2001) ........................................................................ 3, 4

67 Fed. Reg. 58041 (Sept. 13, 2002) ........................................................................... 3

71 Fed. Reg. 43740 (Aug. 2, 2006) ......................................................................... 4, 7

*Federal Environmental Pesticide Control Act of 1971: Hearing on H.R. 10729
    Before the Subcomm. on Environment of the S. Comm. on Commerce*, 92nd
    Cong. (1972) ......................................................................................................... 8, 9

*Federal Environmental Pesticide Control Act: Hearing on H.R. 10729 Before the
    Subcomm. on Agricultural Research and General Legislation of the S. Comm.
    on Agriculture and Forestry*, 92nd Cong. (1972) ................................................. 8

Pub. L. No. 80-104, 61 Stat. 163 (1947) ..................................................................... 2

Pub. L. No. 88-305, 78 Stat. 190 (1964) ..................................................................... 2

Pub. L. No. 92-516, 86 Stat. 973 (1972) ..................................................................... 2

Pub. L. No. 94-140, 89 Stat. 751 (1975) ..................................................................... 3

Pub. L. No. 95-396, 92 Stat. 819 (1978) ..................................................................... 3

Pub. L. No. 100-532, 102 Stat. 2654 (1988) ............................................................... 3

Pub. L. No. 104-170, 110 Stat. 1489 (1996) ............................................................... 3

Reorganization Plan No. 3 of 1970, 84 Stat. 2086 (1970) .......................................... 2

H. Rep. No. 100-939 (1988) ........................................................................................ 2

S. Rep. No. 92-970 (1972) ........................................................................................... 9

1    **NOTICE TO PLAINTIFFS, DEFENDANT, AND THEIR ATTORNEYS OF RECORD**

2            PLEASE TAKE NOTICE that, on Friday, May 9, 2008, at 9:00 AM, or as soon thereafter

3    as the matter may be heard, before the Honorable Jeremy Fogel, Courtroom 3 of the United States

4    Courthouse located at 280 South 1st Street, Fifth Floor, San Jose, California, Intervenor-

5    Defendant Dow AgroSciences LLC ("DAS") will and does hereby move the Court to dismiss the

6    Plaintiffs' Complaint under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

7    By this Motion, DAS seeks an Order from this Court dismissing the Plaintiffs' Complaint for lack

8    of subject matter jurisdiction and for lack of standing.

9            This motion is based on this Notice of Motion and Motion, the supporting Memorandum

10   of Points and Authorities, the [Proposed] Order, all pleadings and papers filed herein, oral

11   argument of counsel, and any other materials and information that may be presented to the Court

12   at the hearing.

13

14   DATED:   March 13, 2008                    HELLER EHRMAN LLP

15

16   David B. Weinberg (D.C. Bar # 186247)       By:    /s/ Laurence A. Weiss
         dweinberg@wileyrein.com                        Laurence A. Weiss
17   Eric Andreas (D.C. Bar # 462777)                    Laurence.Weiss@hellerehrman.com
         eandreas@wileyrein.com                    HELLER EHRMAN LLP
18   David E. Markert (D.C. Bar #502486)           275 Middlefield Road
         dmarkert@wileyrein.com                    Menlo Park, CA  94025-3506
19   WILEY REIN LLP                                Telephone:   650.324.7000
     1776 K Street NW                              Facsimile:    650.324.0638
20   Washington, DC  20006
     Telephone:    202.719.7000
21   Facsimile:    202.719.7049

22                  Attorneys for Intervenor-Defendant Dow AgroSciences LLC

23

24

25

26

27

28

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - v -

1      **POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

2                          **STATEMENT OF THE ISSUES**

3          Acting pursuant to the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C.

4      §§136-136y ("FIFRA"), the United States Environmental Protection Agency ("EPA") spent more

5      than a decade conducting a "reregistration" review of the safety of the insecticide chlorpyrifos.

6      As a result of that review, EPA imposed strict restrictions on many chlorpyrifos uses and required

7      registrants to cancel numerous other uses.  In this case, the Plaintiffs challenge the adequacy of

8      EPA's review of chlorpyrifos' safety and request that this Court order the Agency to re-evaluate

9      the pesticide and make a new reregistration decision.

10          However, the Plaintiffs have brought their case in the wrong court.  When Congress

11     revised FIFRA's reregistration provisions in 1988, it expressly required that challenges to actions

12     implementing reregistration decisions be brought in a federal court of appeals.  *See* 7 U.S.C.

13     §136a-1(m).  Even absent this directive, the clear terms of FIFRA's pre-existing judicial review

14     provisions dictate that a federal court of appeals is the only forum where this case may be

15     properly heard.  *See* 7 U.S.C. § 136n(b).  Therefore, this Court does not have jurisdiction to

16     consider the Plaintiffs' complaint.

17          Furthermore, the Plaintiffs have failed to allege sufficient facts to establish their standing

18     to bring this case.  For this reason as well, the Court does not have jurisdiction to consider their

19     complaint.

20          Intervenor Dow AgroSciences, LLC ("DAS") thus moves to dismiss the Plaintiffs'

21     complaint.  Fed. R. Civ. P. 12(h)(3).  Pursuant to controlling law, this Court should promptly

22     grant DAS' Motion.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (in

23     the absence of jurisdiction, "the only function remaining to the court is that of announcing the fact

24     and dismissing the cause") (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)); *Nuclear*

25     *Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006).

26

27

28

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

**I.     OVERVIEW OF CONTROLLING FIFRA PROVISIONS**

Since FIFRA's enactment in 1947, "registration" of pesticide products has been required prior to their interstate distribution and sale. *See* Pub. L. No. 80-104, § 16, 61 Stat. 163, 172-73 (1947). Registration identifies the particular uses to which the product may be put, defines the lawful amounts that may be applied, and specifies application methods. 7 U.S.C. § 136a(a). *See generally*, 40 C.F.R. Pt. 152 (EPA registration regulations).

Details of the registration scheme, and mechanisms for judicial review of registration actions, have evolved over the years. Until 1970, FIFRA enforcement was the responsibility of the Secretary of Agriculture. In 1964, for the first time, Congress added a judicial review provision to FIFRA that allowed persons adversely affected by a registration-related order of the Secretary to obtain judicial review of the order in a federal court of appeals. Pub. L. No. 88-305, § 4, 78 Stat. 190, 192-93 (1964).

Pesticide registration authority was transferred from the Department of Agriculture to EPA shortly after the latter agency was created by Executive Order in 1970. *See* Reorganization Plan No. 3 of 1970, § 2(8), 84 Stat. 2086, 2088 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 6322, 6324. In 1972, Congress enacted a major set of amendments to FIFRA: The Federal Environmental Pesticide Control Act of 1972, Pub. L. No. 92-516, 86 Stat. 973 (1972). Among other changes, the 1972 law modified FIFRA's existing judicial review provision, recodified it as FIFRA § 16(b) (7 U.S.C. § 136n(b)), and conferred upon district courts limited jurisdiction over challenges to EPA "refusals to cancel or suspend registrations or change classifications not following a hearing" and certain other final Agency actions. *See* § 2, 86 Stat. at 994. The 1972 amendments also made pesticide registrations renewable on a five-year basis and required EPA to reregister all then-registered products within four years. *See* § 4(c)(2), 86 Stat. at 999.

By 1988, EPA had reregistered only five of the approximately 600 pesticide active ingredients contained in more than 50,000 pesticide products then registered with the Agency. H. Rep. No. 100-939, at 28-29 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3474, 3477-78. Thus, Congress again amended FIFRA and established a detailed, five-phase reregistration process for

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - 2 -

1   older products with specific deadlines for completion of each phase of the process.  Pub. L. No.

2   100-532, § 102, 102 Stat. 2654, 2655-63 (1988) (codified at 7 U.S.C. § 136a-1(b)-(g)).[1]  At the

3   conclusion of the last phase of the process, EPA was directed to either reregister the product or

4   otherwise "take appropriate regulatory action."  7 U.S.C. § 136a-1(g)(2)(D).  Included in this

5   scheme was the express statutory direction that "failure by the [EPA] Administrator to take any

6   action required in this section shall be subject to judicial review under the procedures prescribed

7   by section 16(b)."  *See* § 102, 102 Stat. at 2667 (codified at 7 U.S.C. § 136a-1(m)).  Section

8   16(b), in turn provides for judicial review in the federal courts of appeals.  7 U.S.C. § 136n(b).

9          **II.    REREGISTRATION OF CHLORPYRIFOS**

10         Chlorpyrifos is an organophosphate insecticide, acaricide, and miticide.  It was discovered

11   by The Dow Chemical Company in 1962, and first registered for use in the United States in 1965.

12   DAS, a wholly-owned subsidiary of The Dow Chemical Company, is the world's primary

13   manufacturer, distributor, and seller of pesticide products containing chlorpyrifos.

14         EPA began reregistration review of chlorpyrifos products in 1988.  As with many other

15   products, this review was integrated with analyses required under the Food Quality Protection Act

16   of 1996 ("FQPA"), Pub. L. No. 104-170, 110 Stat. 1489 (1996).  *See* 62 Fed. Reg. 42020 (Aug. 4,

17   1997) (announcing that tolerance reassessments required by the FQPA would occur as part of the

18   reregistration process).[2]  Several years into the review, the Agency reached an agreement with the

19   chlorpyrifos registrants to cancel the registrations of approximately 840 individual products

20   containing the pesticide.  *See* 67 Fed. Reg. 58041, 58046 (Sept. 13, 2002) (discussing product-

21   specific actions taken for chlorpyrifos prior to the issuance of the Agency's reregistration

22   eligibility decision for the pesticide); 65 Fed. Reg. 56886, 56887-88 (Sept. 20, 2000) (discussing

23

24   [1]      FIFRA was amended several times between 1972 and 1988.  In 1975, Congress extended the reregistration
    deadline by one year.  Pub. L. No. 94-140, § 4, 89 Stat. 751, 752 (1975).  The reregistration deadline was dropped

25   from the statute altogether in 1978.  Pub. L. No. 95-396, § 28, 92 Stat. 819, 842 (1978).

26   [2]      EPA reviewed chlorpyrifos' eligibility for reregistration as part of the organophosphate pesticide pilot
    public participation process, which was an effort by the Agency to increase transparency and maximize stakeholder
    involvement in the development of risk assessments and risk management decisions.  *See* 66 Fed. Reg. 57073, 57074

27   (Nov. 14, 2001) (discussing public participation in the development of the chlorpyrifos IRED).  Through this pilot
    process, EPA worked with stakeholders to develop preliminary and revised risk assessments for chlorpyrifos.  *See,*

28   *e.g.,* 65 Fed. Reg. 49982 (Aug. 16, 2000); 64 Fed. Reg. 57876 (Oct. 27, 1999).

1   June 2000 memorandum of agreement between EPA and a number of registrants of pesticide

2   products containing chlorpyrifos).  The following year, EPA released for public comment a

3   document summarizing the Agency's review and analyses of the human health and environmental

4   effects of chlorpyrifos.  *See* 66 Fed. Reg. 57073 (Nov. 14, 2001).  This summary document is

5   commonly referred to as an Interim Reregistration Eligibility Decision ("IRED").[3]  In July 2006,

6   EPA issued a memorandum finalizing the 2001 IRED.[4]

7          Following the publication of the IRED and the issuance of the 2006 memorandum, EPA

8   took regulatory actions it believed was appropriate to either cancel or reregister (albeit, often with

9   additional restrictions) previously-approved uses of chlorpyrifos.  As a result, only a fraction of

10  the chlorpyrifos uses that were allowable before the 2001 IRED are still approved for use today.

11  Hence, the average annual volume of chlorpyrifos sold in the U.S. from 2002-2006 was 46%

12  lower than the average volume sold from 1998-2001.[5]

13         On August 1, 2007, the Plaintiffs brought this action.  In general terms, they allege that

14  EPA's decision to reregister some uses of chlorpyrifos is arbitrary and capricious,

15  notwithstanding the additional restrictions the Agency has imposed on those uses.  The Plaintiffs

16  ask that this Court order EPA to make new determinations of chlorpyrifos' eligibility for

17  reregistration, and contend that this Court has jurisdiction pursuant to FIFRA Section 16(a)

18  (7 U.S.C. § 136n(a)) and 28 U.S.C. § 1331.

19         The Plaintiffs agree that judicial review of EPA's decisions to reregister chlorpyrifos must

20  be based on the record compiled by EPA in its reregistration proceeding.  (Pls.' Mot. to Compel

21  Filing of Complete Admin. R. 11).  They have urged, however, that the record be supplemented

22

23  [3]    The IRED for chlorpyrifos is available on EPA's website.  *See* EPA, Pesticide Reregistration Status, http://www.epa.gov/pesticides/reregistration/status_page_c.htm (last visited Feb. 26, 2008).

24  [4]    Between November 2001 and July 2006, EPA conducted an assessment of the cumulative risks from

25  organophosphate pesticides.  The chlorpyrifos IRED was finalized shortly after that assessment was completed.  *See* 71 Fed. Reg. 43740, 43741 (Aug. 2, 2006) (notice announcing completion of cumulative risk assessment and finalization of IREDs for organophosphate pesticides); *see also* Memorandum from Debra Edwards, Director,

26  Special Review and Reregistration Division, to Jim Jones, Director, Office of Pesticide Programs (July 31, 2006), *available at* http://www.epa.gov/pesticides/reregistration/REDs/chlorpyrifos_red.pdf (last visited Feb. 26, 2008).

27  [5]    Data on the average annual volume of chlorpyrifos sold in the U.S. was obtained from Doane Marketing

28  Research, a private sector supplier of pesticide use data.

1    with certain deliberative materials, which they allege are essential to the Court's review of the

2    lawfulness of EPA's reregistration actions.  (*Id.* 2-8).  The Court has not yet ruled on that motion.

3                                    **ARGUMENT**

4    I.      **THIS CASE SHOULD BE DISMISSED FOR LACK OF SUBJECT**
             **MATTER JURISDICTION**

5

6            A.      **FIFRA Section 4(m) Provides for Exclusive Jurisdiction in the Court**
                     **of Appeals**

7            At the heart of the Plaintiffs' case is the contention that EPA failed to consider relevant

8    data regarding chlorpyrifos and, as a result, failed to conduct a proper risk-benefit analysis.  (First

9    Am. Compl. ¶¶ 52, 58).  The obligation to balance a particular pesticide's risks against its benefits

10   arises during the final phase of the reregistration process ("Phase Five").  In Phase Five, the

11   Agency is required to "conduct a thorough examination of all data submitted" in support of

12   reregistration and determine, based on its analysis, whether the subject "pesticide meets the

13   [registration] requirements of Section 3(c)(5)."  7 U.S.C. § 136a-1(g)(1), 2(C).[6]  If the Agency

14   concludes that an existing use of the pesticide does not qualify for reregistration, it is to take

15   "appropriate regulatory action" to terminate that use.  7 U.S.C. § 136a-1(g)(2)(D).

16           Section 4 of FIFRA further provides that "[a]ny failure of the Administrator to take any

17   action required by this section shall be subject to judicial review under the procedures prescribed

18   by section [16(b)]."  7 U.S.C. § 136a-1(m).  Section 16(b), in turn, provides for review in the

19   pertinent Circuit Court of Appeals:

20                   In the case of actual controversy as to the validity of any order
                     issued by the Administrator following a public hearing, any person
21                   who will be adversely affected by such order and who had been a
                     party to the proceedings may obtain judicial review by filing in the
22                   United States court of appeals for the circuit wherein such person
                     resides or has a place of business, within 60 days after the entry of
23                   such order, a petition praying that the order be set aside in whole or
                     in part.  A copy of the petition shall be forthwith transmitted by the
24                   clerk of the court to the Administrator or any officer designated by
25

26   _____
     [6]      Section 3(c)(5)(C) allows EPA to register a pesticide only if "it will perform its intended function without
27   unreasonable adverse effects on the environment."  7 U.S.C. § 136a(c)(5)(C).  Such "unreasonable adverse effects on
     the environment" are statutorily defined as, *inter alia*, "any unreasonable risk to man or the environment, *taking into*
28   *account the economic, social, and environmental costs and benefits of the use*" of the product.  7 U.S.C. § 136(bb)
     (emphasis added).

1
2
3
4

the Administrator for that purpose, and thereupon the Administrator shall file in the court the record of the proceedings on which the Administrator based the Administrator's order, as provided in section 2112 of title 28. Upon the filing of such petition *the court shall have exclusive jurisdiction* to affirm or set aside the order complained of in whole or in part.

5    7 U.S.C. § 136n(b) (emphasis added).

6    Plaintiffs expressly indicate in their complaint that this case is a challenge to EPA's

7    decision under Section 4 of FIFRA to reregister chlorpyrifos: "EPA acted arbitrarily,

8    capriciously, and contrary to FIFRA in re-registrating [sic] chlorpyrifos uses in the absence of

9    sufficient data to make the unreasonable adverse effects determination mandated by FIFRA as a

10   prerequisite for reregistration." (First Am. Compl. ¶ 58); *see also*, *e.g.*, (First Am. Compl. ¶¶ 44,

11   49-52.) Indeed, the relief the Plaintiffs seek in this case includes a declaration by the Court "that

12   EPA acted arbitrarily, capriciously, and contrary to FIFRA in reregistering chlorpyrifos uses."

13   (First Am. Compl. ¶ 21.)

14   Thus, pursuant to the plain language of FIFRA Sections 4(m) and 16(b), the proper forum

15   for review of the Plaintiffs' allegations is the Ninth Circuit Court of Appeals. *See UMC Indus.,*

16   *Inc. v. Seaborg*, 439 F.2d 953, 955 (9th Cir. 1971) ("It is well settled that if Congress . . .

17   specifically designates a forum for judicial review of administrative action, that forum is

18   exclusive, and the result does not depend upon the use of the word 'exclusive' in the statute

19   providing for a forum for judicial review."). Accordingly, because the Plaintiffs are in the wrong

20   court, the appropriate action for this Court is to dismiss their complaint. Fed. R. Civ. P. 12(h)(3)

21   ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must

22   dismiss the action."); *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 807 (9th Cir.

23   2001) ("Once the district court reached the conclusion that it had no underlying original subject

24   matter jurisdiction, there was nothing left to do but to dismiss the case.").

25
26

**B.    The Terms for Review in the Circuit Court Under Section 16(b) are Met in this Case**

27   Even if FIFRA Section 4(m) did not exist, jurisdiction to hear this case would rest

28   exclusively with the federal courts of appeals under Section 16(b), not the district courts under

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - 6 -

1   Section 16(a) or 28 U.S.C. § 1331, as Plaintiffs allege.  As noted above, Section 16(b) provides,

2   in pertinent part, that "[i]n the case of actual controversy as to the validity of any *order* issued by

3   the Administrator following a *public hearing*, any person who will be adversely affected . . . may

4   obtain judicial review by filing in the United States court of appeals for the circuit wherein such

5   person resides or has a place of business."  7 U.S.C. § 136n(b) (emphasis added).

6        Both prerequisites of Section 16(b) have been met here.  There has been an "order," and

7   the order was followed by a "public hearing."

8        The finalization of the chlorpyrifos IRED in 2006 constituted an "order."[7]  Although the

9   term "order" is not defined in FIFRA, it is well established that the Administrative Procedure

10  Act's ("APA") definition of that term is controlling.  *See Safe Extensions, Inc. v. FAA*, 509 F.3d

11  593, 598-600 (D.C. Cir. 2007) (interpreting the undefined term "order" by reference to the APA);

12  *Envtl. Def. Fund, Inc. v. Costle,* 631 F.2d 922, 928-29 (D.C. Cir. 1980) (same) (citing *United*

13  *States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 240 (1973)).

14       The APA defines an order as "the whole or a part of a final disposition . . . of an agency in

15  a matter other than rule making *but including licensing*."  5 U.S.C. § 551(6) (emphasis added).

16  Licensing, in turn, is defined in the APA as an "agency process respecting the grant, renewal,

17  denial, revocation, suspension, annulment, withdrawal, limitation, amendment, modification, or

18  conditioning of a license," which includes registrations or other forms of permission.  5 U.S.C.

19  § 551(8), (9).  Final EPA pesticide registration decisions, including reregistration eligibility

20  decisions, clearly qualify as licensing decisions under this definition.[8]  Consequently, a pesticide

21  registration decision is an "order" subject to appellate court review under Section 16(b) of

22  FIFRA.  *See Humane Soc'y of the United States v. EPA*, 790 F.2d 106, 110-11 n.30 (D.C. Cir.

23  1986) (concluding that "[t]here is no contention that [the] awards [of experimental use permits for

---

24

25  [7]     The chlorpyrifos IRED was finalized shortly after EPA completed its assessment of the cumulative risks from organophosphate pesticides.  *See* 71 Fed. Reg. 43740, 43741 (Aug. 2, 2006) (notice announcing completion of cumulative risk assessment and finalization of IREDs for organophosphate pesticides).

26

27  [8]     As EPA's website explains, "Federal law requires that before selling or distributing a pesticide in the United States, a person or company must obtain registration, *or license*, [sic] from EPA."  EPA, Pesticides: Regulating Pesticides, Evaluating Potential New Pesticides and Uses, http://www.epa.gov/pesticides/regulating/index.htm (last

28  visited Feb. 26, 2008) (emphasis added), *cited in Bates v. Dow AgroSciences LLC*, 544 U.S. 431, 442 n.14 (2005).

1    a pesticide] are not 'order[s] issued by the Administrator'" for purposes of determining whether a

2    court of appeals has jurisdiction to hear challenges to such decisions under Section 16(b)).

3        Furthermore, the extensive notice and comment procedures that preceded publication of

4    the IRED and EPA's 2006 final decision memorandum constitute a "public hearing" under

5    Section 16(b).  *See Nw. Food Processors Ass'n v. Reilly*, 886 F.2d 1075, 1077 (9th Cir. 1989)

6    ("We conclude that [Section 16(b)'s] public hearing requirement is satisfied when the EPA

7    conducts proceedings in which interested parties are afforded an opportunity to present their

8    positions by written briefs *and a sufficient record is produced to allow judicial review.*")

9    (emphasis added); *Costle,* 631 F.2d at 931 ("The legislative history of the 1972 amendment, then,

10   demonstrates that underlying the restriction of appellate review to orders following public

11   hearings was congressional concern that review be based on an administrative decision with an

12   adequate record.").

13       This record does not have to be established in a quasi-judicial, testimonial proceeding.  As

14   the D.C. Circuit explained in *Costle* after a thorough analysis of the legislative history of Section

15   16(b), the pertinent "jurisdictional touchstone" is "the availability of a record for review and not

16   the holding of a quasi judicial hearing . . . ."  *Costle,* 631 F.2d at 930-31; *Humane Soc'y*, 790 F.2d

17   at 111 (the "crucial inquiry" under Section 16(b) is whether a record is available for review).

18       It is notable that, in the hearings leading up to the enactment of Section 16(b) in 1972,

19   witness after witness expressed a strong preference for appellate court review.  Environmental

20   groups, in particular, took the view that the courts of appeals should review all but the most minor

21   of Agency decisions.[9]  EPA also favored appellate court review of its FIFRA-related decisions,

---

22   [9]    *See, e.g.*, Federal Environmental Pesticide Control Act: Hearing on H.R. 10729 Before the Subcomm. on
     Agricultural Research and General Legislation of the S. Comm. on Agriculture and Forestry, 92nd Cong. 135 (1972)
23   (statement of Paul Brooks, Director, Sierra Club) (stating that review in "[t]he district courts would only be
     appropriate for the limited purposes of enforcing orders of the Environmental Protection Agency as to discovery,"
24   and suggesting that review in the court of appeals "would be more expeditious" because appellate courts have more
     relevant experience on FIFRA-related issues); *id.* at 365 (statement of Joel M. Pickelner, Legislative Information
25   Specialist, National Wildlife Federation) ("[T]he Court of Appeals would be the proper body to adjudicate any
     controversy as to the validity of [FIFRA] order[s] effected by . . . the Environmental Protection Agency."); Federal
26   Environmental Pesticide Control Act of 1971: Hearing on H.R. 10729 Before the Subcomm. on Environment of the
     S. Comm. on Commerce, 92nd Cong. 110-11, 113 (1972) (statement of William Butler, Environmental Defense
27   Fund) (stating that "practical experience has shown that the court of appeals is infinitely preferable to the district
     court" for review of final agency orders, and suggesting that "all judicial review [under FIFRA] be held in the court
28   of appeals" – even of refusals by the Agency to hold suspension or cancellation hearings).

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - 8 -

1    especially where the Agency's application of risk-benefit concepts was concerned. *Federal*

2    *Environmental Pesticide Control Act of 1971: Hearing on H.R. 10729 Before the Subcomm. on*

3    *Environment of the S. Comm. on Commerce*, 92nd Cong. 164 (1972) (statement of Hon. David D.

4    Dominick, Assistant Administrator for Categorical Programs, EPA) ("We feel that it is important

5    that review of such concepts as risk-benefit, a substantial question of safety and other major areas

6    of administrative law should take place in the circuit court of appeals.").  In an April 17, 1972

7    letter to Senator Allen, then-Chairman of the Senate Subcommittee on Agricultural Research and

8    General Legislation, EPA explained:

> 9    We favor all review in the courts of appeals because district court
> 10    proceedings are time-consuming.  District Court review, moreover,
> tends to create some confusion.  Instead of coping with legal
> 11    constructions reached by eleven circuits, and speedily resolved in
> the Supreme Court, we must administer a statute under supervision
> 12    of some one-hundred district courts . . . .  It would not be long
> before the annotated reports on [FIFRA] are equal in length and
> 13    complexity to those following the ICC's legislation.

14    S. Rep. No. 92-970, at 28-29 (1972).[10]

15    **C.    The Plaintiffs' Asserted Bases for District Court Jurisdiction are
16           Inapplicable**

17    Contrary to the Plaintiffs' assertion, neither FIFRA Section 16(a) nor 28 U.S.C. § 1331

18    give this Court jurisdiction.  A court must abide by a statute's grant of exclusive jurisdiction

19    where "congressional intent to preclude judicial review is fairly discernible in the detail of the

20    legislative scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (internal quotation

21    marks omitted).

22    That intention is clear in FIFRA Sections 4(m) and 16(b), as explained above.  Moreover,

23    jurisdiction granted to district courts by Section 16(a) expressly subservient to those provisions:

24    _____

25    [10]    Moreover, requiring Plaintiffs to bring their challenge to the chlorpyrifos reregistration in the Court of
Appeals hardly puts them in an unusual situation.  In the context of environmental laws, appellate court review is the
norm. *See, e.g.*, 15 U.S.C. § 2618(a)(1)(B); 16 U.S.C. § 1536(h), (n); 33 U.S.C. § 1369(b)(1); 33 U.S.C. § 2717(a);
26    42 U.S.C. § 300j-7(a); 42 U.S.C. § 4915; 42 U.S.C. § 6976; 42 U.S.C. § 7607(b); 42 U.S.C. § 10139.  Appellate
court review is even more common where challenges to agency risk-benefit determinations are involved. *See, e.g.,*
27    *City of Portland v. EPA*, 507 F.3d 706 (D.C. Cir. 2007) (challenge to cost-benefit analysis required by the Safe
Drinking Water Act); *Recreation Vehicle Indus. Ass'n v. EPA*, 653 F.2d 562 (D.C. Cir. 1981) (challenge to cost-
28    benefit analysis required by the Noise Control Act).

1  "*Except as otherwise provided in this subchapter*, the refusal of the Administrator to cancel or

2  suspend a registration or to change a classification not following a hearing and other final actions

3  of the Administrator not committed to the discretion of the Administrator by law are judicially

4  reviewable by the district courts of the United States." 7 U.S.C. § 136n(a) (emphasis added).

5          Even absent this introductory restriction, Section 16(a) would be inapplicable because this

6  case does not involve any of the actions to which it applies.  The Plaintiffs do not challenge here a

7  "refusal of the [Agency] to cancel or suspend [chlorpyrifos'] registration or to change [its]

8  classification." *See* 7 U.S.C. § 136n(a).  Nor are the Plaintiffs challenging a final action of the

9  Agency not committed to its discretion by law.  *See id.*  Although EPA was required by law to

10  make a reregistration determination for chlorpyrifos, the determination itself was committed to

11  EPA's discretion and involved numerous judgment calls by EPA, such as whether chlorpyrifos'

12  benefits outweighed its risks.

13          Even if the Court were to find that FIFRA's judicial review provisions are ambiguous as

14  to the appropriate forum for the Plaintiffs' challenge to the chlorpyrifos reregistration decision –

15  which we do not believe to be the case – sound judicial policy would dictate that this case belongs

16  in the Ninth Circuit Court of Appeals.  The Supreme Court has established a presumption in favor

17  of APA review of agency action in the courts of appeals and instructed courts not to depart from

18  this presumption "[a]bsent a firm indication that Congress intended to locate initial APA review

19  of agency action in the district courts." *Florida Power & Light v. Lorion*, 470 U.S. 729, 745

20  (1985).  According to the Supreme Court, initial review in the district court results in a waste of

21  judicial resources by "requiring duplication of the identical task in the district court and in the

22  court of appeals." *Id.* at 744.  Additionally, the fact finding capacity of the district court is

23  "typically unnecessary to judicial review." *Id.*

24          Finally, 28 U.S.C. § 1331 does not create an independent basis for this Court's

25  jurisdiction.  Where Congress has mapped a jurisdiction review path for an agency, general

26  federal question jurisdiction under 28 U.S.C. § 1331 is not available. *Owner-Operators Indep.*

27  *Drivers Ass'n of Am., Inc. v. Skinner*, 931 F.2d 582, 585 (9th Cir. 1991).

28

MOTION TO DISMISS AND
SUPPORTING MEMORANDUM
C 07-03950 JF - 10 -

1          **II.    PLAINTIFFS HAVE NOT DEMONSTRATED STANDING**

2          This Court also lacks jurisdiction over this case if the Plaintiffs did not allege or establish

3   both their Constitutional and prudential standing.  *See, e.g., Fleck & Assocs., Inc. v. City of*

4   *Phoenix*, 471 F.3d 1100 (9th Cir. 2006) (concluding district court lacked subject matter

5   jurisdiction over the plaintiff's complaint and remanding with instructions to dismiss).  Plaintiffs

6   bear the burden of establishing their standing.  *Nuclear Info. & Res. Serv.*, 457 F.3d at 951;

7   *Individuals for Responsible Gov't v. Washoe County by & through the Bd. of County Comm'rs,*

8   110 F.3d 699, 702 (9th Cir. 1997); *see also Air Courier Conference v. Am. Postal Workers Union*,

9   498 U.S. 517, 523-24 (1991).[11]

10          To satisfy Constitutional standing, the Plaintiffs "must have suffered an injury in fact; that

11  there be a causal connection between the injury and the conduct complained of; and that it be

12  likely that the injury will be redressed by a favorable decision."  *Individuals for Responsible*

13  *Gov't*, 110 F.3d at 702; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S.

14  167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Further,

15  "[a]n association has standing to bring suit on behalf of its members when its members would

16  otherwise have standing to sue in their own right, the interests at stake are germane to the

17  organization's purpose, and neither the claim asserted nor the relief requested requires the

18  participation of individual members in the lawsuit."  *Nuclear Info. & Res. Serv.*, 457 F.3d at 951

19  (quoting *Laidlaw*, 528 U.S. at 181).

20          For the Plaintiffs to meet the prudential requirements for standing, they must show that

21  they "fall within the zone of interests to be protected or regulated by the statute or constitutional

22  guarantee in question."  *Individuals for Responsible Gov't*, 110 F.3d at 703 (quoting *Valley Forge*

23  *Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475

24  (1982)).  This test "denies a right of review if the plaintiffs' interests are so marginally related to

---

[11]          On a motion to dismiss alleging lack of standing, the  Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501-502 (U.S. 1975).  It is within the Court's power at this stage "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.  If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed."  *Id.*

1   or inconsistent with the statute that it cannot reasonably be assumed that Congress intended to

2   permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

3           Here, the Plaintiffs have not met their burden to demonstrate standing.  The allegations in

4   their complaint suffer from a common defect:  they merely express general concerns about the

5   effects of chlorpyrifos and fail to allege any injury caused by "the conduct complained of."  (First

6   Am. Compl. ¶¶ 3-11.)

7           The thrust of the Plaintiffs' first cause of action is that EPA was arbitrary and capricious

8   for re-registering chlorpyrifos uses that "it found will pose risks of concern to workers."  (First

9   Am. Compl. ¶ 49.)  In support of this, the Plaintiffs allege that EPA should have required

10  "enclosed cabs" for airblast and groundboom tractor applications."  (*Id.*)  They also allege that

11  EPA did not extend Reentry Intervals (REIs) to eliminate risks associated with re-entering corn

12  fields, and should have required REIs, personal protective equipment ("PPE") or engineering

13  controls for risks identified for greenhouse and nursery workers.  (First Am. Compl. ¶ 51.)  The

14  Plaintiffs' second cause of action alleges that EPA "lacked sufficient data" to accurately asses the

15  risks to children and families of workers from "drift and track-in" and that there was insufficient

16  data to assess application risks to greenhouse and nursery workers."  (First Am. Compl. ¶¶ 50, 56-

17  57.)

18          The complaint fails to link the Plaintiffs' (or their members') alleged injuries to the

19  challenged agency action.  None of the Plaintiffs, for example, allege that they are harmed by

20  EPA's decision not to require closed cabs, extend REIs, or require PPE or engineering controls or

21  that they are harmed by any risk to the environment.  Moreover, risks alleged to children,

22  bystanders, and workers' families do not confer standing.  The required injury-in-fact must be to

23  one of the listed Plaintiffs or their members.  *See Cmtys. Against Runway Expansion, Inc. v. FAA*,

24  355 F.3d 678, 684 (D.C. Cir. 2004) (stating that in order for an association to have

25  representational standing under Article III of the Constitution, the association "must demonstrate

26  that at least one of its members "has suffered an 'injury in fact' that is (a) concrete and

27  particularized and (b) actual or imminent, not conjectural or hypothetical").

28

1    Plaintiff Sea Mar Community Health Center also lacks prudential standing.  Sea Mar

2  alleges injury to the doctor-patient relationship.  This interest, however, is not even marginally

3  related to the objectives and purposes of FIFRA, which "include the strengthening of Federal

4  standards, increasing EPA authority for their enforcement, and providing comprehensive and

5  uniform regulation of the labeling, sale and use of pesticides."  *Welchert v. Am. Cyanamid*, 59

6  F.3d 69, 71 (8th Cir. 1995).

7                                    **CONCLUSION**

8    For the foregoing reasons, DAS respectfully requests that its Motion to Dismiss be

9  granted.

10

11  DATED:   March 13, 2008                    HELLER EHRMAN LLP

12

13  David B. Weinberg (D.C. Bar # 186247)        By:____/s/ Laurence A. Weiss_____
       dweinberg@wileyrein.com                        Laurence A. Weiss
14  Eric Andreas (D.C. Bar # 462777)                   Laurence.Weiss@hellerehrman.com
       eandreas@wileyrein.com                       HELLER EHRMAN LLP
15  David E. Markert (D.C. Bar #502486)            275 Middlefield Road
       dmarkert@wileyrein.com                      Menlo Park, CA  94025-3506
16  WILEY REIN LLP                                  Telephone:   650.324.7000
    1776 K Street NW                                Facsimile: 650.324.0638
17  Washington, DC  20006
    Telephone:    202.719.7000
18  Facsimile:    202.719.7049

19                  Attorneys for Intervenor-Defendant Dow AgroSciences LLC

20

21

22

23

24

25

26

27

28
    MOTION TO DISMISS AND
    SUPPORTING MEMORANDUM
    C 07-03950 JF - 13 -