# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED FARMWORKERS OF AMERICA, et al.,

Plaintiff,

v.

ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

CASE NO. C04-099RSM

ORDER DISMISSING CLAIM ONE

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment as to Claim One Pertaining to Azinphos-Methyl (Dkt. # 154), together with cross-motions by the Defendant (Dkt. # 160) and Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP (Dkt. # 167). The United Farm Workers of America and four other organizations brought an action for injunctive and declaratory relief under the Federal Insecticide, Fungicide and Rodenticide Act, challenging the EPA's Interim Reregistration Eligibility Decisions ("IREDs") for two pesticides, azinphos-methyl ("AZM") and phosmet. After the Plaintiffs moved for summary judgment as to their AZM claim, Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP cross motioned for summary judgment arguing, inter alia, that this court lacks jurisdiction to review the Administrator's action.

For the reasons set forth below, the Court GRANTS the Intervenors' motion to dismiss.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 1

## II. STATUTORY BACKGROUND

The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y, establishes a regulatory scheme to control the sale, use, and labeling of pesticides. Under FIFRA, a pesticide may not be sold or used unless it has been registered by the EPA. Id. § 136a(a). A pesticide cannot be registered until the EPA determines that "it will perform its intended function without unreasonable adverse effects on the environment." Id. § 136a(c)(5)(C). FIFRA defines "unreasonable adverse effects" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits to the use of any pesticide . . . ." Id. § 136(bb).

In 1988, Congress amended FIFRA to require, with some exceptions not here relevant, the reregistration of each "registered pesticide containing any active ingredient contained in any pesticide first registered before November 1, 1984." Id. § 136a-1. The statute sets forth a specific, five-phase process for reregistration determinations. Id. § 136a-1(a)-(g). The last phase requires that the Administrator "conduct a thorough examination of all data submitted" in support of reregistration, determine whether the "pesticide meets the requirements of [7 U.S.C. § 136a(c)(5)(C)]," and then take appropriate regulatory action. Id. §§ 136a-1(b), (g)(1), (g)(2)(C). The agency may either reregister the pesticide by issuing a reregistration eligibility decision ("RED") or, if it determines that the pesticide should not be reregistered, bring an action to cancel or suspend the registration. See id. §§ 136a-1(g)(2)(C), (D).

Pesticides are also regulated by the Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C. §§ 301-394. FFDCA requires the EPA to establish "tolerances" for maximum allowable pesticide residues on agricultural products. See id. § 346a. The tolerance is the maximum permissible level of pesticide residue that has been determined to be "safe" on a particular food. Id. § 346a(b)(2)(A).

In 1996, Congress enacted the Food Quality Protection Act ("FQPA"), which amended both FIFRA and FFDCA. The FQPA added the requirement that the EPA reassess existing tolerances as part of phase 5 of the FIFRA reregistration process. 7 U.S.C. § 136a-1(g)(2)(E). The FQPA also required that, in establishing tolerances, EPA consider "the cumulative effects of . . . substances that have a common mechanism of toxicity." 21 U.S.C. §§ 346a(b)(2)(D)(v).

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 2

Because of the time necessary to complete the FQPA cumulative risk assessments, the EPA has adopted the practice of issuing interim REDs ("IREDs") for pesticides that share a common mechanism of toxicity with a large number of other chemicals. *See* 68 Fed. Reg. 44770-71 (July 30, 2003). Both pesticides at issue in this case, AZM and phosmet, are part of a family of chemicals known as organophosphates, and had been issued IREDs pending assessment of their cumulative risk.

### III. FACTUAL BACKGROUND

In 2001, the EPA issued an IRED for AZM. AR (Administrative Record) 683. The EPA found that all assessed uses were ineligible for reregistration as labeled, but found eight uses that would be eligible for reregistration if certain conditions were met.[1] Id. at 70. Because EPA expected the risk-benefit balance for AZM to change over the next four years, it limited the reregistration to four years, and called for the AZM producers to submit renewal applications in 2004. Id.

In January 2004, the United Farm Workers and four other organizations filed an initial complaint in the United States District Court for the Western District of Washington, arguing that EPA's IRED was arbitrary and capricious. AZM producers Makhteshim Agan of North America, Inc., and Bayer Cropscience LP intervened in the present action, and submitted applications to renew the use of AZM and phosmet. In January 2006, UFW and EPA entered into a settlement agreement in which the EPA agreed to consider new evidence and make determinations on the continued use of AZM and phosmet. Dkt. # 114-2, at 1-2. The Plaintiffs and the EPA jointly moved to stay the present action until September 5, 2006 to allow implementation of the settlement agreement. Dkt. # 115, at 1.

After receiving public comment, the EPA issued a proposed decision on June 9, 2006. AR 1355. The EPA determined that five uses (Brussels sprouts, nursery stock, and three nut crops) should be cancelled in 2007 and that another five uses should be phased out over a four-year period. AR 1355 at 10-11. The EPA published notice of its proposed decision in the Federal Register and requested public comment. AR 1353.

---

[1] EPA also found seven uses that would be phased out over four years; the rest of the uses were cancelled immediately. AR 683 at 68-70.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 3

On November 15, 2006, Bayer submitted an amendment to its AZM applications, agreeing to voluntarily cancel its AZM registration under certain conditions. Bayer agreed to cancel its Brussel sprout and nursery stock uses in 2007, cancel the three nut crop uses in three years, and cancel the remaining five uses in six years. AR 1679 at 1-2. Bayer requested, inter alia, that EPA consider extending these five AZM uses beyond 2012 if EPA "determines for any of [these] uses that the benefits of continued registration outweigh the risks." Id. at 3.

EPA issued a final determination on November 16, 2006. AR 1459. EPA found that Brussels sprouts and nursery stock uses should be cancelled in 2007; the three nut crop uses should be phased out over three years; and the remaining five uses should be phased out over six years. Id. 10-31. EPA also agreed to "continue to assess the need for use of AZM during the phase-out period and to evaluate . . . whether to amend the cancellation order that phases out all AZM use if EPA concludes there remains a demonstrated need for AZM to address key pests." Id. at 7, 9.

On April 27, 2007, the Plaintiffs filed a Third Amended Complaint. Doc. 140. Claim One asserted that the six-year extension of AZM use was arbitrary, capricious, and violated FIFRA. Id. at 25. The Plaintiffs moved for summary judgment on this claim, Doc. 154, and the Intervenors cross motioned for summary judgment arguing, inter alia, that this court lacks jurisdiction to review the Administrator's action.[2]

## IV. ANALYSIS

Judicial review of the Administrator's decisions under FIFRA is governed by 7 U.S.C. § 136n. Section 136n provides:

> (a) District court review – Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.
>
> (b) Review by court of appeals – In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in

---

[2] The EPA does not contest this court's jurisdiction to hear the Plaintiffs' claim. Dkt. # 187, at 14.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM  3 - 4

the United States court of appeals . . . . Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part.

7 U.S.C. § 136n.

An additional jurisdictional provision is included in FIFRA's reregistration section, 7 U.S.C. § 136a-1. Under this section, "[a]ny failure of the Administrator to take any action required by this section shall be subject to judicial review under the procedures prescribed by section 136n(b) of this title." 7 U.S.C. § 136a-1(m)

The Intervenors argue that jurisdiction in this case lies in the court of appeals rather than the district court for two reasons. First, they argue that the Plaintiffs are challenging the Administrator's failure to take an action required by 7 U.S.C. § 136a-1. Thus, pursuant to 7 U.S.C. § 136a-1(m), judicial review is governed by § 136n(b). Doc. 167, at 8-9. Second, they argue that § 136n(b) controls because the Administrator's order followed a "public hearing." Doc. 195, at 2.

A. <u>Administrator's failure to take an action required by 7 U.S.C. § 136a-1</u>.

The Intervenors argue that "[t]he crux of [Plaintiffs'] allegations is that in reaching its Final Decision 'EPA *failed* to take into account the full social and environmental costs' and '*fail[ed]* to consider and incorporate into its assessments' appropriate health and environmental costs." Dkt. # 167, at 4 (citing Dkt. # 140, at ¶¶ 77-78) (emphasis and third alteration in original). The last phase of the reregistration process requires the Administrator to determine whether the "pesticide meets the requirements of [§ 136a(c)(5)(C)]." 7 U.S.C. § 136a-1(g)(2)(C). Section 136a(c)(5)(C) requires the EPA to engage in a risk analysis in which it determines whether the pesticide poses "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits to the use of any pesticide . . . ." <u>Id.</u> § 136(bb). The Intervenors assert that, because phase five directs the Administrator to engage in the risk-benefit analysis under § 136a(c)(5)(C), the Plaintiffs' complaint that the Administrator "failed" to weigh certain evidence is a claim that Administrator failed to take an action required by 7 U.S.C. § 136a-1. Thus, review lies in the court of appeals.

This argument reads § 136a-1(m) too broadly. Section 136a-1(m) governs challenges to the Administrator's failure to take any action required by the reregistration statute, 7 U.S.C. § 136a-1.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 5

Section 136a-1 requires that the Administrator perform the risk-benefit analysis as part of phase 5. The Plaintiffs in this case do not argue that the Administrator failed to perform the risk-benefit analysis under § 136a(c)(5)(C). Instead, they contest the result of this analysis and the method by which the Administrator reached this result.³ Their challenge falls outside the scope of § 136a-1(m).

This result harmonizes with the broader structure of FIFRA's judicial review provisions. The risk-benefit analysis required by § 136a(c)(5)(C) applies to <u>all</u> pesticide registration under FIFRA. Under the Intervenors' reading, challenges to the Administrator's initial risk assessment could lie in either the district courts or the courts of appeals, 7 U.S.C. § 136n, whereas challenges to EPA's risk assessment during the reregistration process would only lie in the courts of appeals. It is unlikely that Congress intended this result.

B. <u>Order following a public hearing</u>.

The Intervenors next argue that jurisdiction lies in the court of appeals rather than the district court because the Plaintiffs are contesting "the validity of any order issued by the Administrator following a public hearing." 7 U.S.C. § 136n(b). The court agrees.

The controlling case on this issue is <u>Northwest Food Processors Association v. Reilly</u>, 886 F.2d 1075 (9th Cir. 1989). In <u>Northwest Food Processors</u>, the EPA administrator issued a notice of intent to cancel all registrations of the pesticide dinoseb. <u>Id.</u> at 1076. Two dinoseb registrants, Cedar Chemical Corp. and Drexel Chemical Co., challenged the cancellation proceedings. While the cancellation proceedings were still pending, Cedar and Drexel entered into a settlement agreement with the EPA providing for, <u>inter alia</u>, the cancellation of dinoseb, but allowing the limited use of existing stocks of the pesticide. <u>Id.</u> at 1076-77. After an ALJ approved the settlement and the EPA Administrator affirmed this decision, interested parties brought a petition for review challenging both (1) the cancellation of the dinoseb registrations and (2) the existing stocks decision. The Ninth Circuit found that it had jurisdiction to hear the challenge to the cancellation order, but not to the existing stocks decision.

---

³ The Intervenors' description mischaracterizes the nature of the Plaintiffs' complaint. While the Plaintiffs argue, in part, that the EPA failed to incorporate appropriate health and environmental costs, they allege a litany of other flaws in the EPA's analysis. Dkt. # 140, at 25-26.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 6

In upholding its jurisdiction to hear the challenge to the cancellation order, the court laid out the test for whether or not a decision is issued following a "public hearing": section "136n(b)'s public hearing requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review." Id. at 1077 (citing Envtl. Def. Fund, Inc. v. Costle, 631 F.3d 922, 926-32 (D.C. Cir. 1980)). The court found that the cancellation proceedings met both prongs. First, the court noted that, in issuing the cancellation order, the Administrator considered the ALJ's decision alongside "various parties' written exceptions to the decision, objections to the settlement, and responses in support of the decision and settlement" and "[t]he proceedings were conducted pursuant to notice." Id. at 1078. Second, the court found that EPA's administrative record was adequate to permit judicial review. Id.

Under Northwest Food Processors, the reregistration decision regarding AZM was made "following a public hearing." First, interested parties had the opportunity to present their positions in writing. When the EPA issued a proposed decision on June 9, 2006, it published notice in the Federal Register and requested public comment.[4] AR 1353. Since the EPA issued its initial 2001 IRED, hundreds of public submissions were made regarding the reregistration of AZM, including comments by Plaintiff EarthJustice. AR 1338-1348, 1389-90. The EPA considered these comments in making its final determination. Dkt. # 160, at 6, 8 (United States' Cross-Motion and Opposition to Plaintiffs' Partial Motion for Summary Judgment). Second, there is a lengthy administrative record, consisting of the EPA's determinations, public comments, and other supporting documentation. Notably, the Plaintiffs challenge the manner in which the EPA performed its risk-benefit calculation as arbitrary, capricious, and contrary to FIFRA. This controversy can be resolved on the administrative record, without the need for further fact finding. See Costle, 631 F.2d at 931 (finding that appellate court review is appropriate where no facts are in issue). Because the reregistration decision was made after a public hearing, proper jurisdiction lies in the court of appeals. Accord Nat'l Grain Sorghum Producers Ass'n, Inc. v. EPA, No.

---

[4] The EPA had previously published draft AZM ecological and benefit assessments for public comment, and considered these comments in drafting the June 9 proposed decision. AR 1254; Dkt. # 160, at 6.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 7

95-1244, 1996 WL 250327, at *6-8 (D.C. Cir. 1996) (unpublished opinion) (court of appeals has jurisdiction to review EPA's denial of a petition to reinstate pesticide use where administrative record is sufficient to allow appellate review).

During oral argument, the Plaintiffs, citing Northwest Food Processors, argued that the Administrator's decision regarding the Intervenors' continued use of AZM was really a decision regarding existing stocks and, thus, it did not follow a public hearing. The court rejects this argument. The administrative record does not indicate that the Administrator's final decision was intended to allow the Intervenors to use their existing stocks of AZM. To the contrary, it indicates that EPA will reevaluate the risks and benefits of using AZM for certain uses in 2012.

In any event, the Plaintiffs' argument misconstrues the reasoning of Northwest Food Processors. In Northwest Food Processors, the EPA administrator had determined that "'[e]xisting stocks can be included in a FIFRA cancellation hearing' only when 'the notice calling the hearing voluntarily identifies and includes existing stocks as an issue for examination.'" 886 F.2d at 1078 (citation omitted). Because the notice did not identify existing stocks as an issue to be resolved in the hearing, the Administrator found that "the existing stocks issues were not legally a part of the cancellation hearing." Id. Relying on this determination, the Ninth Circuit held that, because the existing stocks provisions were not legally part of the cancellation hearing, the provisions could not be considered part of an order "following a public hearing." Id.

Northwest Food Processors' holding was premised on EPA's determination that the existing stock determination was not legally part of the proceeding. EPA has made no such determination in this case. Assuming, arguendo, that EPA's determination in the dinoseb proceeding is binding in the AZM proceeding, Plaintiffs' argument still fails: EPA's notice clearly indicated that the phase-out of AZM was going to be resolved in the hearing. AR 1353.

Lastly, the Plaintiffs argue that jurisdiction lies in the district court, quoting Costle's statement that:

> [t]he pattern [under FIFRA] seems to be that decisions regulating more strictly may be challenged in administrative hearings, those regulating less strictly may not. Thus, persons seeking more

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 8

stringent regulation may sue in the district court without first enduring an administrative hearing; those complaining of regulation as too strict must first exhaust their administrative remedy of a formal hearing before seeking judicial review.

631 F.3d at 937, cited in Dkt. # 196, at 3. Costle does not support the Plaintiffs' argument. The quoted language is Costle was made in the context of determining whether the Costle plaintiffs were required to exhaust their administrative remedies, not in the context of the allocation of jurisdiction under § 136n(b).

### V. CONCLUSION

Having reviewed Plaintiffs', Defendants' and Intervenors' motions, the parties' replies, and the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and orders:

(1) Plaintiffs' Motion for Partial Summary Judgment as to Claim One Pertaining to Azinphos-Methyl (Dkt. # 154) is DENIED;

(2) Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP's Cross-Motion for Partial Summary Judgment (Dkt. # 167) is GRANTED. Count One of Plaintiffs' Third Amended Complaint is DISMISSED with prejudice.

(3) Defendants' Cross-Motion for Summary Judgment (Dkt. # 160) is DENIED as moot.

DATED this 16th day of May, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM 3 - 9