1  Laurence A. Weiss (Bar No. 164638)
       Laurence.Weiss@hellerehrman.com
2  HELLER EHRMAN LLP
   275 Middlefield Road
3  Menlo Park, CA  94025-3506
4  Telephone:  650.324.7000
   Facsimile:  650.324.0638
5
6  David B. Weinberg (D.C. Bar # 186247), admitted *pro hac vice*
       dweinberg@wileyrein.com
7  Eric Andreas (D.C. Bar # 462777)
       eandreas@wileyrein.com
8  David E. Markert (D.C. Bar #502486)
       dmarkert@wileyrein.com
9  WILEY REIN LLP
   1776 K Street NW
10 Washington, DC  20006
11 Telephone:  202.719.7000
   Facsimile:  202.719.7049
12
   Attorneys for Intervenor-Defendant
13 Dow AgroSciences LLC

14
                    **UNITED STATES DISTRICT COURT**
15              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN JOSE DIVISION**
16

17 | UNITED FARM WORKERS OF AMERICA,  )
   | AFL-CIO, et al.,                 )  Case No. C 07-03950 JF
18 |                                  )
   |                     Plaintiffs,  )  **DEFENDANT-INTERVENOR**
19 |                                  )  **DOW AGROSCIENCES LLC'S**
   |                                  )  **MOTION FOR RECONSIDERATION**
20 |     v.                           )
   |                                  )
21 |                                  )
   | ADMINISTRATOR,                   )  Hearing: TBD
22 | UNITED STATES ENVIRONMENTAL      )
   | PROTECTION AGENCY,               )
23 |                                  )
   |                     Defendant,   )
24 |                                  )  Court: The Honorable Jeremy Fogel
   | DOW AGROSCIENCES LLC             )
25 |                                  )
   |                     Intervenor.  )
26 |_____)

27
28

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF

**INTRODUCTION AND SUMMARY**

In its August 26, 2008 Order (Dkt. #66), the Court denied Defendant-Intervenor Dow AgroSciences LLC's ("DAS") initial Motion to Dismiss. In rejecting DAS' Motion, the Court held that FIFRA Section 4(m), 7 U.S.C. § 136a-1(m), did not apply. However, the Court's order did not address two other arguments offered by DAS in its Motion that provide independent and alternative grounds for dismissal of Plaintiffs' complaint for lack of subject matter jurisdiction. The first of these two other grounds is that FIFRA Section 16(b), 7 U.S.C. § 136n(b), dictates review of EPA's chlorpyrifos reregistration decision only by the Federal Courts of Appeals. This ground for dismissal is supported by a recent decision of the Western District of Washington issued after the briefing and hearing on DAS' Motion, *United Farm Workers of America, AFL-CIO v. Administrator, U.S. EPA*, No. CV04-0099-RSM, 2008 WL 2117114 (W.D. Wash. May 19, 2008), *appeal docketed*, No. 08-35528 (9th Cir.) ("*UFW I*"). The second of these independent grounds for dismissal that was not addressed in the Court's order is that Plaintiffs' asserted bases for District Court subject-matter jurisdiction, FIFRA Section 16(a), 7 U.S.C. § 136n(a), are inapplicable. DAS also believes that the Court was incorrect in its rejection of the applicability of Section 4(m).

Thus, DAS respectfully requests that the Court reconsider its prior decision on the subject-matter jurisdiction issue on grounds that it appears the Court did not consider all of the dispositive legal arguments previously presented to it, and to correct clear error and avoid manifest injustice.

**ARGUMENT**

**I.   SUBJECT-MATTER JURISDICTION IS PROPER ONLY IN THE COURTS OF APPEALS UNDER FIFRA SECTION 16(b)**

As DAS argued originally in its Motion to Dismiss and Reply in Support (Dkt. ##50, 56), and which it supplements here, jurisdiction to hear a case such as this one rests exclusively with the Federal Courts of Appeals under FIFRA Section 16(b), not the District Courts under Section 16(a). Section 16(b) provides, in pertinent part, that "[i]n the case of actual controversy as to the validity of *any order* issued by the Administrator following a *public hearing*, any person who will be adversely affected . . . may obtain judicial review by filing in the United States Court of

Appeals for the circuit wherein such person resides or has a place of business." 7 U.S.C. § 136n(b) (emphasis added). Both prerequisites of Section 16(b) have been met here. There has been an "order," and the order followed a "public hearing."[1]

### A.   EPA's Decision Is An Order

EPA made available its interim reregistration eligibility decision ("IRED") for chlorpyrifos in 2001. EPA's final decision, referred to simply as a RED, was used issued in 2006 and incorporates the IRED without change.[2] There is no doubt that the RED constitutes an "order" under Section 16(b). Lacking an express definition of "order" in FIFRA, the Court must apply the rules of statutory construction and interpretation to determine that term's meaning. "Statutory interpretation begins with the plain meaning of the statute's language. Where the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 831 (9th Cir. 2000); *see also United States v. Nader*, 2008 U.S. App. LEXIS 18976 (9th Cir. Sept. 5, 2008) ("In answering this question, we first consider the plain meaning of the statute's text.").

Section 16(b) applies to "any order." 7 U.S.C. § 136n(b). An "order" as defined in Webster's New College Dictionary is "an authoritative indication to be obeyed." As to the chlorpyrifos RED, it is incontrovertible that its terms must be obeyed by all chlorpyrifos registrants. For example, the RED requires the implementation of several risk mitigation measures, including label amendments requiring buffer zones around treated areas to protect fish

---

[1] In determining whether there has been an order and public hearing in this case, the Court is not limited to the pleadings. Instead, on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider extra-pleading material to resolve a challenge to its jurisdiction. *St. Clair v. Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court. The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes."); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (court may consider exhibits, documents, and other evidence outside the pleadings in order to satisfy itself of its power to hear the case).

[2] The IRED and RED are available on EPA's website as the same document. *See* http://www.epa.gov/pesticides/reregistration/REDs/chlorpyrifos_red.pdf ("When EPA concluded the organophosphate (OP) cumulative risk assessment in July 2006, all tolerance reassessment and reregistration eligibility decisions for individual OP pesticides were considered complete. OP Interim Reregistration Eligibility Decisions (IREDs), therefore, are considered completed REDs.").

and water quality, reductions in application rates and the number of applications per season, and increases in the minimum time intervals required before retreatment is allowed.  RED, Chlorpyrifos Facts at 3.  The RED goes on to state that "[i]n order to be eligible for reregistration," registrants are required to obey the risk mitigation measures imposed by the RED, cite or submit any newly required data under the RED, and submit an application for reregistration to EPA.  RED at 93-94.

An analogous situation in the United States Code is instructive here.  49 U.S.C. § 46110 provides that "orders" of Secretary of Transportation or the Administrator of the Federal Aviation Administration dealing with airline commerce and safety are reviewable only in the Federal Courts of Appeals.  As in FIFRA, the term "order" is not defined.  But in reviewing a jurisdictional challenge under this provision, the Ninth Circuit held that when determining whether there was an order, "[f]inality is the key," and that "[f]inality is usually demonstrated by an administrative record and factual findings."  *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006) ("The existence of a reviewable administrative record is the determinative element in defining an FAA decision as an 'order' for purposes of Section [46110].  An adequate record, however, may consist of 'little more' than a letter.") (internal citations omitted).  Here, not only has EPA stated that the RED is its final decision regarding the reregistration of chlorpyrifos,[3] there is also a sizable record of over 1000 documents supporting EPA's decision.  Defendants' Opposition to Plaintiffs' Motion to Compel Filing of a Complete Administrative Record (Dkt. #29) at 15.[4]  Moreover, Plaintiffs concede finality by asserting the existence (albeit incorrectly) of District Court jurisdiction because FIFRA Section 16(a) that Plaintiffs allege controls here applies only to "final actions of the Administrator."  7 U.S.C. § 136n(a).[5]

---

[3] *See supra* note 2.

[4] Plaintiffs and EPA have also explained to the Court that the record is extensive and would take months to compile. Joint Case Management Statement, Docket 25 at 3-4 ("Because the administrative records for the Agency decisions under review are extensive, defendant seeks additional time . . . to compile the record indices and to file agreed-upon extracts of the record.").

[5] While there is substantial question as to whether the Administrative Procedure Act ("APA") provides an appropriate guide to interpreting FIFRA's jurisdictional provisions (*see W. Harlem Envtl. Action v. EPA*, 380 F. Supp. 2d, 289, 293 (S.D.N.Y. 2005)), its general definition of "order" is nonetheless instructive here.  The APA defines "order" as "the whole or *a part* of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making *but including licensing*."  5 U.S.C. § 551(6) (emphasis

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 3 -

### B. There Has Been A Public Hearing

The extensive notice and comment procedures that preceded finalization of the chlorpyrifos RED[6] constitute a "public hearing" under Section 16(b). The legislative history and the case law support this conclusion.

#### 1. Legislative History

The 1972 amendments to FIFRA created the present division of jurisdiction between the District Courts and Courts of Appeals. Their history demonstrates that evaluation of the record of the Agency's proceedings is the key to determining whether a hearing has been provided. Formal, trial-type proceedings are not required.

The Senate Commerce Committee explained that "[w]hile an appellate court review of administrative orders obviously should not be provided for in all statutes, it is felt that past experience under FIFRA and *the reasons cited by EPA above* strongly justify such a provision here. S. Rep. No. 92-970, at 28-29 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4092, 4112) (emphasis added). The "reasons cited by EPA above" to which the Committee referred included a statement by an EPA Assistant Administrator that "it is important that review of such concepts as risk-benefit, a substantial question of safety and other major areas of administrative law should take place in the circuit court of appeals." Federal Environmental Pesticide Control Act of 1971: Hearing on H.R. 10729 Before the Subcomm. on Environment of the S. Comm. on Commerce, 92nd Cong. 164 (1972) (statement of Hon. David D. Dominick, Assistant Administrator for Categorical Programs, EPA).

---

(Continued . . .)
added). The APA defines a "license" to "include[] the whole or a part of an agency permit, certificate, approval, [or] *registration*." 5 U.S.C. § 551(8) (emphasis added); and both the EPA and Courts thus refer interchangeably to FIFRA registrations as licenses. *See, e.g., Bates v. Dow Agrosciences L.L.C.,* 544 U.S. 431, 442 n.14 (2005). ) *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589 (1985); *Wash. Toxics Coal. v. United States DOI*, 457 F. Supp. 2d 1158, 1164 (W.D. Wash. 2006). The APA defines "licensing" as "agency process respecting the grant, renewal, deemed revocation, suspension, annulment, withdrawal, limitation, amendment, modification, or conditioning of a license." 5 U.S.C. § 551(9). The chlorpyrifos RED thus is an order under the APA definition because it is EPA's "final disposition" on whether chlorpyrifos may continue to be registered for use and it amends or modifies the chlorpyrifos registrations (*i.e.* licenses) by requiring label changes to achieve risk mitigation. Indeed, even if the RED is viewed only as a stage in FIFRA's reregistration process, it also independently is "a part" of that disposition.

[6] The history of the notice and comment procedures and filings associated with finalization of the chlorpyrifos RED illustrating its massive size are described in DAS' Motion to Dismiss (Dkt. #50 at 2-4) and in its Reply in Support (Dkt. #56 at 5 n.6).

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 4 -

EPA further explained its preference for appellate court review in an April 17, 1972 letter to Senator Allen, then-Chairman of the Senate Subcommittee on Agricultural Research and General Legislation:

> We favor all review in the courts of appeals because district court proceedings are time-consuming. District Court review, moreover, tends to create some confusion. Instead of coping with legal constructions reached by eleven circuits, and speedily resolved in the Supreme Court, we must administer a statute under supervision of some one-hundred district courts . . . . It would not be long before the annotated reports on [FIFRA] are equal in length and complexity to those following the ICC's legislation.

S. Rep. No. 92-970, at 28-29 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4092, 4112.

Legislative developments following the 1972 amendments confirm that the availability of a record is the touchstone for appellate review.[7] During consideration of the 1975 FIFRA amendments, the National Agricultural Chemicals Association ("NACA") urged that appellate court judicial review jurisdiction be limited to orders issued after a public hearing pursuant to Section 6 of FIFRA. That change was included in the Committee version of the bill, but was deleted in Senate floor debate. 121 Cong. Rec. 36,116 (1975). The Senate instead inserted the phrase "for which there is a reviewable record." This phrase also was deleted during conference, but the Conference Report made it clear that the availability of a reviewable record was the key to appellate court review, not whether "adjudicatory procedures" had been followed:

> It is the intent of the Conferees, however, that an adequate reviewable record be developed by the Environmental Protection Agency in each of its public hearings although such hearings need not necessarily be adjudicatory in nature.

H.R. Rep. No. 94-668, at 6 (1975), *reprinted in* 1975 U.S.C.C.A.N. 1359, 1381. In 1977, NACA again proposed that appellate review of orders be limited to records from formal, quasi-judicial hearing. The Senate again rejected this proposal, concluding "that there was *no compelling reason for changing existing law* and the proposal was not adopted." S. Rep. No. 95-334, at 12 (1977) (emphasis added).

---

[7] Although subsequent legislative history is not as pertinent as statements made contemporaneously with a statute's enactment, it is nonetheless entitled to "significant weight." *Enos v. Marsh*, 769 F.2d 1363, 1369 (9th Cir. 1985).

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 5 -

1    The legislative history thus demonstrates that Congress intended that review of
2 reregistration decisions be based on an administrative decision with an adequate record, but not
3 necessarily one that reflected trial-type proceeding. It also reveals that EPA and Congress
4 intended that review of risk-benefit analyses – the focal point of Plaintiffs' attack in this case –
5 should occur in the Federal Courts of Appeals.

6    Section 16 and this legislative history must also be viewed in the context of the Supreme
7 Court's established presumption that review of agency action in the Courts of Appeals is favored
8 "[a]bsent a firm indication that Congress intended to locate initial . . . review of agency action in
9 the district courts." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 745 (1985). As the
10 Supreme Court has explained, initial review in a District Court results in a waste of judicial
11 resources by "requiring duplication of the identical task in the district court and in the court of
12 appeals" where the fact finding capacity of the District Court is "typically unnecessary." *Id.* at
13 744. Such would be the case here. Plaintiffs do not contend that further factual development is
14 necessary beyond the record.

15    **2.    Supporting Case Law**

16    In a recent decision that is squarely on point, the District Court for the Western District of
17 Washington held that EPA's reregistration decisions are reviewable only in the Federal Courts of
18 Appeals. *United Farm Workers of America, AFL-CIO v. Administrator, U.S. EPA*, No. CV04-
19 0099-RSM, 2008 WL 2117114 (W.D. Wash. May 19, 2008) ("*UFW I*").[8] That case involved a
20 nearly identical challenge to the one presented here, but to EPA's IREDs regarding two different
21 pesticides, azinphos-methyl and phosmet. In that case Judge Martinez held:

> [H]undreds of public submissions were made regarding the
> reregistration of AZM, including comments by Plaintiff
> EarthJustice. AR 1338-1348, 1389-90. The EPA considered these
> comments in making its final determination. Dkt. # 160, at 6, 8
> (United States' Cross-Motion and Opposition to Plaintiffs' Partial
> Motion for Summary Judgment). Second, there is a lengthy

---

[8] *UFW I* is presently on appeal to the Ninth Circuit. *UFW v. EPA*, No. 08-35528 (9th Cir.). While a stipulated stay has been entered by the Court to defer summary judgment briefing in this case until the Ninth Circuit case is decided, it was agreed that the stay would not apply to filing of a motion for reconsideration of this Court's August 28, 2006 Order. Dkt. #69 at 2.

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 6 -

> administrative record, consisting of the EPA's determinations, public comments, and other supporting documentation. Notably, the Plaintiffs challenge the manner in which the EPA performed its risk-benefit calculation as arbitrary, capricious, and contrary to FIFRA. This controversy can be resolved on the administrative record, without the need for further fact finding. See *Costle*, 631 F.2d at 931 (finding that appellate court review is appropriate where no facts are in issue). Because the reregistration decision was made after a public hearing, proper jurisdiction lies in the court of appeals.

*Id*. at *5.

The *UFW I* decision is supported by the relevant case law. For example, in *Northwest Food Processors Ass'n v. Reilly*, 886 F.2d 1075 (9th Cir. 1989), the Ninth Circuit held that "[Section 16(b)'s] public hearing requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs *and a sufficient record is produced to allow judicial review*." *Id*. at 1078 (emphasis added).

Similarly, in an unpublished decision cited by Judge Martinez in *UFW I*, the D.C. Circuit held that it had jurisdiction over a challenge to an EPA decision to deny reinstatement of certain pesticide uses under FIFRA Section 16(b). *Nat'l Grain Sorghum Producers Ass'n, Inc. v. EPA*, No. 95-1244, 1996 WL 250327, at *6-*8 (D.C. Cir. Apr. 22, 1996). The "hearing" in *National Grain* consisted only of notice and the opportunity to comment. The Court reiterated that this was sufficient, and that the crucial test was whether there was an adequate record:

> The EPA contends that because there was no formal hearing in this case, NGSPA must bring its challenge in the District Court. However, in *Humane Society of United States v. E.P.A.*, 790 F.2d 106, 110-11 (D.C. Cir. 1986), we rejected such a strict reading of the "public hearing" requirement for appellate court jurisdiction. Noting in *Humane Society* that we were not writing on a clean slate, and that we had previously determined that Congress had grounded our jurisdiction on a public hearing requirement out of concern that there be "an adequate record for review in a court of appeals," *id*. at 111, we concluded that "the crucial inquiry is whether such a record is available."

*Id*. at *7.[9]

---

[9] The D.C. Circuit decision in *Environmental Defense Fund, Inc. v. Costle*, 631 F.2d 922 (D.C. Cir. 1980), also makes it clear that the record need not be developed in a quasi-judicial administrative hearing. After conducting a

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 7 -

1  This Court should adopt the analysis relied on by these courts.[10]

2  **II.  The Plaintiffs' Asserted Bases For District Court Jurisdiction Are Inapplicable**

Contrary to Plaintiffs' assertion, neither FIFRA Section 16(a) nor 28 U.S.C. § 1331 give this Court jurisdiction. A court must abide by a statute's grant of exclusive jurisdiction where "congressional intent to preclude judicial review is fairly discernible in the detail of the legislative scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (internal quotation marks omitted).

Section 16(a) is inapplicable here because this case does not involve any of the actions to which that section applies. Plaintiffs do not challenge here a "refusal of the [Agency] to cancel or suspend [chlorpyrifos'] registration or to change [its] classification not following a hearing." 7 U.S.C. § 136n(a). As explained above, a hearing was held. Moreover, Plaintiffs do not seek a ruling that cancellation is required, but remand to the Agency to make "new re-registration eligibility decisions." First Am. Compl. (Dkt. #23) at 21.

Nor are Plaintiffs challenging a "final action[] of the Administrator not committed to the discretion of the Administrator by law." 7 U.S.C. § 136n(a). Although EPA was required by law to make a reregistration determination for chlorpyrifos, the determination itself was committed to EPA's discretion and involved numerous judgment calls by EPA, such as whether chlorpyrifos' benefits outweighed its risks.

Finally, 28 U.S.C. § 1331 does not create an independent basis for this Court's

---

(Continued . . .)
thorough analysis of the language and legislative history of FIFRA Section 16(b), the Court there held that the purpose of Section 16(b)'s "public hearing" reference is to indicate that the pertinent "jurisdictional touchstone" is "the availability of a record for review and not the holding of a quasi judicial hearing . . . ." *Id*. at 930-31. The D.C. Circuit reiterated this conclusion six years later in *Humane Society of the United States v. EPA*, 790 F.2d 106 (D.C. Cir. 1986). There it held that "[t]he pivot of our decision [in *Costle*] was the disclosure in the legislative history that Congress was primarily concerned about an adequate record for review in a court of appeals and had imposed the public-hearing requirement simply as a means to that end." *Id*. at 111. (emphasis added); *see also La. v. Train*, 392 F. Supp. 564, 568 (W.D. La. 1975) (holding that the public hearing required by FIFRA Section 16(b) is not an adjudicatory hearing as defined by the APA).

[10] In this case, like in *UFW I*, counsel for EPA was initially in agreement with Plaintiffs' position. *See* May 9, 2008 Transcript of Proceedings (Dkt. #65) at 14. The government's position, however, has changed. As evidenced by the brief EPA filed in the appeal of Judge Martinez's ruling in *UFW I*, EPA is now in agreement with DAS that challenges to EPA's reregistration decisions belong in the Federal Courts of Appeals. A copy of the brief that EPA filed in the Ninth Circuit is attached as Exhibit 1.

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF - 8 -

jurisdiction. Where Congress has mapped a jurisdiction review path for an agency, general federal question jurisdiction under Section 1331 is not available. *Owner-Operators Indep. Drivers Ass'n of Am., Inc. v. Skinner*, 931 F.2d 582, 585 (9th Cir. 1991).

### III. FIFRA Section 4(m) Also Provides For Exclusive Jurisdiction In The Courts Of Appeals

Section 4 of FIFRA provides that "*[a]ny* failure of the Administrator to take *any* action required by this section shall be subject to judicial review under the procedures prescribed by section [16(b)]." 7 U.S.C. § 136a-1(m) (emphasis added). The Court dismissed the applicability of this provision holding that "Plaintiff's claim is not that the agency failed to act at all but that it acted arbitrarily and capriciously by selectively considering some data and disregarding others." Dkt. #66 at 4.

Respectfully, however, the Court misconstrued the nature of Plaintiffs' action and read Section 4(m) too narrowly. For example, Plaintiffs state in the introduction to the Complaint the true nature of their action. They are seeking "an injunction prohibiting EPA from reregistering chlorpyrifos uses *in the absence* of sufficient data to make the unreasonable adverse effect determination that is a *prerequisite* for re-registration under FIFRA." First Am. Compl. (Dkt. #23) ¶ 2. In other words, they are directly alleging that EPA failed to take required action under Section 4. Thus, Section 4(m) applies.

Plaintiffs' and the Court's analogy to Section 706(1) of the APA is also misplaced. Dkt. #66 at 4 n.2. The APA can provide little insight into the meaning of FIFRA's judicial review provisions because Congress specifically overrode the APA's jurisdictional provisions when it enacted FIFRA. *See supra* note 5.

Furthermore, Section 4(m) was enacted long after the APA. Had Congress intended Section 4(m) to be coterminous with Section 706, it would have used the same language as that statute or would have referenced the APA directly. Instead, Congress chose to include the different language of Section 4(m). That choice must be honored by the courts. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'"); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000) (holding

1  that Congress's inclusion of certain terms to the exclusion of others must be presumed
2  intentional).
3       In short, Plaintiffs' claims in this case arise under Section 4 of FIFRA and are subject to
4  judicial review under Section 4(m), which in turn references Section 16(b).  Therefore, Plaintiffs'
5  claims should have been brought in a Court of Appeals.

## CONCLUSION

7       For all of the foregoing reasons, DAS respectfully requests that the Court grant DAS'
8  Motion for Reconsideration and dismiss this case for lack of subject-matter jurisdiction.

10       Respectfully Submitted,

12  DATED:  September 16, 2008     HELLER EHRMAN LLP

14  David B. Weinberg (D.C. Bar # 186247),    By:  /s/ Laurence A. Weiss
    Admitted *Pro Hac Vice*     Laurence A. Weiss
15    dweinberg@wileyrein.com     Laurence.Weiss@hellerehrman.com
16  Eric Andreas (D.C. Bar # 462777)    HELLER EHRMAN LLP
      eandreas@wileyrein.com     275 Middlefield Road
17  David E. Markert (D.C. Bar #502486)   Menlo Park, CA  94025-3506
      dmarkert@wileyrein.com     Telephone:  650.324.7000
18  WILEY REIN LLP     Facsimile:  650.324.0638
    1776 K Street NW
19  Washington, DC  20006
20  Telephone:  202.719.7000
    Facsimile:  202.719.7049

21       Attorneys for Intervenor-Defendant Dow AgroSciences LLC

23  12903408.1

DEFENDANT-INTERVENOR'S MOTION FOR RECONSIDERATION
C 07-03950 JF  - 10 -