No. 08-35528

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED FARM WORKERS, *et al.*

*Plaintiff-Appellants,*

*v.*

ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

*Defendant-Appellee,*

GOWAN COMPANY,
MAKHTESHIM AGAN OF NORTH AMERICA, INC.,
and BAYER CROPSCIENCE LP,

*Intervenors.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON (04-0099-RSM)

## BRIEF FOR DEFENDANT-APPELLEE

RONALD J. TENPAS
*Assistant Attorney General*

SAMBHAV N. SANKAR
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 23795 (L'Enfant Station)
Washington, DC 20026
(202) 514-5442

# TABLE OF CONTENTS

**Page**

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Federal Insecticide, Fungicide, And Rodenticide Act . . 2

    B.   EPA's Interim Reregistration Eligibility Decision For
        AZM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   EPA's Renewal Of The AZM Registrations . . . . . . . . . . . . 7

    D.   The Farmworkers' Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.   District Court's Dismissal Order . . . . . . . . . . . . . . . . . . . . 12

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.   THE DISTRICT COURT DID NOT HAVE JURISDICTION . . . . . . 15

        A.   *Northwest Food Processors* And *EDF v. Costle* Have
            Already Conclusively Interpreted Section 16(b) . . . . 16

i

B.  EPA Gave The Farmworkers An Opportunity To
Present Their Positions In Written Submissions . . . 21

C.  The Record That EPA Compiled During Its AZM
Licensing Proceedings Is More Than Adequate To
Allow Direct Review In The Court Of Appeals . . . . . 24

D.  The Farmworkers Exaggerate The Difficulties Posed
By Section 16(b) Jurisdiction . . . . . . . . . . . . . . . . . . 27

E.  The Farmworkers Are Wrong To Suggest That *Costle*
Supports Their Jurisdictional Argument . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

**Cases:**                                                              *Page*

*AMVAC Chemical Corp. v. EPA,*
    653 F.2d 1260 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Breed v. Hughes Aircraft Co.,*
    253 F.3d 1173 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Davis v. EPA,*
    348 F.3d 772 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Environmental Defense Fund v. Costle,*
    631 F.2d 922 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Humane Society of the United States v. EPA,*
    790 F.2d 106 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . 17,18,23,24

*Investment Co. Inst. v. Board of Governors,*
    551 F.2d 1270 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Love v. Thomas,*
    858 F.2d 1347 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mangano v. United States,*
    529 F.3d 1243 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*National Grain Sorghum Producers Ass'n v. EPA,*
    1996 WL 250327 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 13

*Northwest Food Processors Association v. Reilly,*
    886 F.2d 1075 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Western Radio Services Co. v. Qwest Corp.*,
     530 F.3d 1186 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATUTES

Administrative Procedure Act
     5 U.S.C. § 551(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     5 U.S.C. § 551(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Clean Air Act
     42 U.S.C. § 7607(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Federal Food, Drug and Cosmetic Act
     21 U.S.C. § 346a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Insecticide, Fungicide, and Rodenticide Act
     7 U.S.C. § 136a-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     7 U.S.C. § 136a-1(g)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     7 U.S.C. § 136a-1(g)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     7 U.S.C. § 136a-1(g)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     7 U.S.C. § 136a-1(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     7 U.S.C. § 136a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3
     7 U.S.C. § 136a(c)(5)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4
     7 U.S.C. § 136a(c)(5)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4
     7 U.S.C. § 136d(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     7 U.S.C. § 136j(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     7 U.S.C. § 136j(a)(2)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     7 U.S.C. § 136n(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
     7 U.S.C. § 136n(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Pesticide Act of 1978
     92 Stat. 819 at 164 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULES and REGULATIONS

iv

70 Fed. Reg. 72,827 (Dec. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

71 Fed. Reg. 33,448 (June 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Legislative History

S. Rep. No. 92-838, 92d Cong., 2d. Sess. (1972) . . . . . . . . . . . . . . . 19,20

H.R. Rep. 94-668, 94th Cong., 1st Sess. (1975) . . . . . . . . . . . . . . . . . 20

*Staff of S. Comm. On Agriculture, Nutrition, and Forestry, 95th Cong.,
2d Sess., Federal Pesticide Act of 1978* at 164 (Comm. Print 1979).    . 20

# LIST OF ACRONYMS

| | |
|---|---|
| AZM | Azinphos-methyl (a pesticide) |
| APA | Administrative Procedure Act |
| EDF | Environmental Defense Fund |
| EPA | U.S. Environmental Protection Agency |
| FFDCA | Federal Food Drug and Cosmetic Act |
| FIFRA | Federal Insecticide, Fungicide, and Rodenticide Act |
| FQPA | Food Quality Protection Act |
| IRED | Interim Reregistration Eligibility Decision |
| RED | Reregistration Eligibility Decision |

## JURISDICTIONAL STATEMENT

Plaintiff-Appellants United Farm Workers, Sea Mar Community Health Center, Pineros y Campesinos Unidos del Noroeste, Beyond Pesticides, Frente Indigena de Organizaciones Binacionales, and Arnulfo Lopez (collectively "the Farmworkers") appeal from a district court order dismissing their complaint for lack of subject matter jurisdiction. The Farmworkers filed a timely notice of appeal on June 17, 2008. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether section 16(a) of the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136n(a), gave the district court subject matter jurisdiction over the Farmworkers' claims.

## INTRODUCTION

The Farmworkers filed a complaint in district court to challenge EPA's decision to schedule gradual phaseout of a pesticide called azinphos-methyl, or "AZM," pursuant to its authority under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). The Farmworkers

1

argued that EPA acted arbitrarily and capriciously by refusing to set a more aggressive phaseout schedule.

The district court dismissed the complaint for lack of jurisdiction. The court explained that, under FIFRA, a plaintiff who wants to challenge a decision that EPA made after a "public hearing" has to file a petition for review in a court of appeals, not a civil complaint in a district court. And under this Court's case law, EPA conducted a "public hearing" within the meaning of FIFRA by soliciting and reviewing written comments and creating an administrative record that could be reviewed by a court of appeals. The Farmworkers appeal the district court's judgment.

## STATEMENT OF FACTS

### A.    The Federal Insecticide, Fungicide, And Rodenticide Act

FIFRA is the federal law that governs regulation of pesticide use in the United States. The statute generally prohibits distributing or selling any pesticide that has not been "registered" by EPA. 7 U.S.C. §§ 136a(a), 136j(a). EPA can register a pesticide if it finds, among other things, that the pesticide "will perform its intended function without

2

unreasonable adverse effects on the environment" and "when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment." *Id.* § 136a(c)(5)(C), (D). FIFRA prohibits anyone from using a registered pesticide in a way that is inconsistent with its EPA-approved labeling. *Id.* § 136j(a)(2)(G).

Registration of a pesticide generally remains effective until EPA cancels or suspends it. But FIFRA also requires EPA to periodically review registered pesticides. In 1988, Congress amended FIFRA to require a multi-phase reregistration process for all pesticides that were originally registered before November 1, 1984, and later amended that process again in 1996. 7 U.S.C. § 136a-1. After the review process, EPA issues a "reregistration eligibility decision" (RED) in which it determines whether the pesticide meets FIFRA's no "unreasonable adverse effects" standard. *Id.* § 136a(c)(5)(C).[1] If EPA concludes that

---

[1]     While EPA provides for extensive public participation in the FIFRA registration process, that process does not result in the issuance of a "rule" within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 551(4). Instead, the licensing proceedings that EPA conducts during registration and reregistration actions culminate in an "order" as that term is used in the APA, *id.* § 551(6).

3

the pesticide will have unreasonable adverse effects, the agency declares the pesticide "ineligible" for registration and can start the process of cancelling or suspending the existing registration. *Id.* § 136a-1(g)(2)(C), (D). Because certain elements of the review process can be time-consuming in cases where a pesticide shares common chemical properties with other pesticides, EPA has chosen to issue interim REDs (IREDs) pending completion of the final REDs.[2]

Sections 16(a) and 16(b) of FIFRA, 7 U.S.C. § 136n(a,b), determine where challenges to government action under the statute must be brought. They state, in turn:

> (a) <u>District court review</u>. Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the

---

[2]    Under FIFRA, EPA must reassess food residue "tolerances" during the reregistration process. EPA issues those tolerances pursuant to section 408 of the Federal Food, Drug, and Cosmetic Act (FFDCA), 7 U.S.C. § 136a-1(g)(2)(E). In determining tolerances, the FFDCA requires EPA to consider cumulative exposure to pesticides that share common chemical properties. 21 U.S.C. § 346a(b). The difference between an IRED and an RED is that EPA issues the latter only after it completes the time-consuming process of a cumulative exposure assessment.

4

Administrator by law are judicially reviewable by the
district courts of the United States.

(b) <u>Review by court of appeals</u>.  In the case of actual
controversy as to the validity of any order issued by the
Administrator following a public hearing, any person who
will be adversely affected by such order and who had been a
party to the proceedings may obtain judicial review by filing
in the United States court of appeals for the circuit wherein
such person resides or has a place of business, within 60
days after the entry of such order, a petition praying that
the order be set aside in whole or in part. . . . Upon the filing
of such petition the court shall have exclusive jurisdiction to
affirm or set aside the order complained of in whole or in
part. The court shall consider all evidence of record. The
order of the Administrator shall be sustained if it is
supported by substantial evidence when considered on the
record as a whole. . . .

## B.   EPA's Interim Reregistration Eligibility Decision For AZM

This case concerns the pesticide azinphos-methyl, commonly

called AZM.  The United States Department of Agriculture (which

administered FIFRA before Congress created EPA) initially registered

AZM back in 1959.  ER 20.

In 2001, EPA issued its IRED for AZM.  ER 35.  EPA concluded

that because of environmental and safety concerns, it could only

reregister AZM for certain uses, and that it would require new labeling

statements and mitigation measures to protect human health and the

5

environment even for those uses. ER 43. EPA divided AZM uses into three groups. The first group included thirty-five specific uses including alfalfa, broccoli, cabbage, grape, and melon cultivation. EPA concluded that using AZM on these crops provided few benefits and that alternative pesticides were available. *Id.* It accordingly sought cancellation for all these uses. *Id.* For the second group, which among other uses included peaches and cotton, EPA determined that AZM use had to be phased out over a four-year period, which has since expired. *Id.*

The third group of AZM uses included the ones at issue here: brussels sprouts and nursery stock, almonds, walnuts, pistachios, apples, blueberries, cherries, pears and parsley.[3] For this group of uses, EPA viewed its reregistration decision as a close case. Using AZM on

---

[3]    The original IRED divided AZM uses between the three groups in a somewhat different manner. *Compare* SER 619 *with* ER 43-44. This is because after EPA issued the IRED, it entered into a memorandum of agreement with the AZM registrants following its determination that certain IRED modifications were appropriate. In that memorandum, the AZM registrants agreed not to contest EPA's cancellation of certain AZM uses, and EPA agreed to modify the use groupings in the IRED in certain ways. The memorandum is described at *http://www.epa.gov/pesticides/reregistration/nrdc-report4.htm.*

these crops posed substantial risks, but yielded significant benefits as well.  Notably, growers of these crops did not have good alternatives to AZM, and would suffer severely if they were forced to switch to alternative pesticides right away; EPA estimated that apple growers alone would suffer annual losses of up to $84 million nationwide if forced to stop using AZM immediately.  *See* SER 91.  As a result, EPA determined that the benefits outweighed the risks for these ten uses, and reregistered AZM for them, limited to a four-year period ending in 2005. ˙EPA told AZM registrants that if they wanted to continue selling or distributing the pesticide for these ten uses after 2005, they would have to submit renewal applications in 2004 that included additional safety and benefits data.  EPA expected that more information about the risks and benefits of using AZM would be available after that time period, and there also would likely be better alternative pesticides to consider by then.  *See* SER 620.

## C.    EPA's Renewal Of The AZM Registrations

By July of 2004, the AZM registrants submitted renewal applications to extend the time-limited registrations of AZM, *see* SER

7

620, and EPA began the process of reviewing them. In December of
2005, EPA published the ecological and grower impact assessments
that it would use when reviewing these renewal applications. *See, e.g.,*
SER 93 ("2005 Grower Impact Assessment of AZM on Sweet Cherries").
After soliciting and receiving public comment on those assessments, it
issued a proposed decision on June 9, 2006, SER 358, and again sought
public comment. EPA issued its final decision on November 16, 2006,
in a document entitled "Final Decisions for the Remaining Uses of
Azinphos-methyl." SER 619-649. This decision document is the one
that the Farmworkers challenged in their current action.

EPA's final decision was that all the remaining uses of AZM must
be phased out over time. For five crops (brussels sprouts, nursery
stock, pistachios, walnuts and almonds), EPA determined that AZM use
should end by 2007 or, in some cases, by 2009. SER 619. For the other
five remaining crops (apples, pears, blueberries, cherries and parsley),
EPA concluded that AZM still had significant benefits when compared
to newer alternatives, and that an immediate or near-term cancellation
of these uses would impose substantial costs on growers. EPA based

8

this determination, in part, on a conclusion that some of the newer

alternatives to AZM might not yet be practical because international

residue tolerances had not been fully approved.

At the same time, EPA found again that using AZM posed

significant risks, and accordingly concluded that the remaining AZM

uses (that is, for apples, pears, blueberries, cherries and parsley) should

be phased out over a six-year period ending in 2012. SER 619, 628-649.

The final decision called for certain mitigation measures to reduce the

impact of using AZM during the phaseout period; those measures

included worker education programs, no-spray zones around streams

and buildings, and a program that would mandate gradual application

rate reduction over the six-year period. SER 626-627, 632.

The six-year phaseout period EPA specified in its final November

decision was longer than the four-year period the agency had originally

proposed in June 2006. However, the longer phaseout schedule offered

one major advantage: AZM registrants agreed not to challenge it. EPA

concluded that because a consensus approach would avoid the need for

formal cancellation proceedings and protracted litigation, important

9

aspects of the six-year phaseout plan would actually go into place
sooner than if the agency tried to enact its original four-year phaseout
plan in the face of opposition from registrants.

**D.    The Farmworkers' Lawsuit**

The Farmworkers initiated their lawsuit back in January 2004,
when they challenged the IRED for AZM by filing a complaint in
district court. SER 1. The Farmworkers claimed that EPA had acted
arbitrarily and capriciously in issuing the IRED. After EPA explained
that it would be conducting renewed risk-benefit analyses before
deciding whether to grant the AZM registrants' July 2004 renewal
applications, the Farmworkers entered into a settlement agreement
that stayed the district court proceedings until the agency completed its
reevaluation.

The Farmworkers renewed their efforts to obtain a judicial
remedy after EPA issued its final decision in November 2006. They
filed a third amended complaint on April 27, 2007, the first count of
which alleged that EPA's six-year extension was arbitrary, capricious,
and contrary to FIFRA. ER 30. The Farmworkers moved for summary

10

judgment on that claim. EPA and various Intervenor pesticide
manufacturers cross-moved as well. While EPA addressed the
Farmworkers' claims on the merits, the Intervenors argued that the
claims were not properly before the district court, and that the
Farmworkers should instead have filed them in a Court of Appeals.[4]

Intervenors raised two alternative arguments to support their
jurisdictional challenge. They claimed first that the Farmworkers'
complaint really alleged that EPA had failed to take an action required
by FIFRA, and therefore fell under 7 U.S.C. § 136a-1(m), which states
that "[a]ny failure of the Administrator to take any action" required by
FIFRA's reregistration provisions can be challenged by filing a petition

---

[4]     The Farmworkers correctly point out that trial counsel for EPA at
one point responded to a question from the district court by stating that
she agreed with the Farmworkers' jurisdictional position. That
statement obviously cannot establish jurisdiction where none exists.
And in any event, counsel was not aware of EPA's earlier
representations in *Northwest Food Processors*. In that matter, EPA
argued before the district court that for purposes of applying section
16(b), "the issue is whether the record relied upon by the agency is
adequate for judicial review." SER 653 (EPA's Supplemental
Memorandum in Support of Motion to Dismiss, *Northwest Food
Processors v. Thomas* (D. Or. No. 88-641, June 16, 1988)). The
undersigned counsel is still in the process of obtaining the appellate
briefs filed before this Court in *Northwest Food Processors*.

11

for review in a Court of Appeals. The district court disagreed with this argument, noting that the plaintiffs did not allege that EPA had failed to perform a risk-benefit analysis, only that the agency had reached the wrong result. ER 12-13.

Intervenors also argued that the Farmworkers were challenging an order that EPA issued after a "public hearing" within the meaning of FIFRA Section 16(b), 7 U.S.C. § 136n(b), and that they should therefore have filed a petition for review in a Court of Appeals, rather than a district court complaint. Here, the district court agreed.

## E.    The District Court's Dismissal Order

The district court recognized that this Court "laid out the test for whether or not a decision followed a 'public hearing'" in *Northwest Food Processors Association v. Reilly,* 886 F.2d 1075 (9th Cir. 1989). ER 13. *Northwest Food Processors* held that the "public hearing" requirement of section 136n(b) "is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review." 886 F.2d at 1077 (citing *EDF v. Costle,* 631 F.3d 922,

12

926-932 (D.C. Cir. 1980)). The district court noted that EPA had

provided written notice and solicited comment on its proposed action,

and created "a lengthy administrative record consisting of [its]

determinations, public comments, and other supporting

documentation." ER 14. Moreover, the Plaintiffs' record-review

challenge could be resolved "without the need for further fact finding."

*Id.* (quoting *Costle,* 631 F.2d at 931). Accordingly, the court concluded

that "proper jurisdiction lies in the court of appeals." *Id.* (citing

*National Grain Sorghum Producers Ass'n v. EPA,* 1996 WL 250327 at

*6-8 (D.C. Cir. 1996)).

On May 16, 2008, the district court granted summary judgment

against the Farmworkers. ER 16. This appeal followed.

## STANDARD OF REVIEW

This Court conducts *de novo* review of an order dismissing a

complaint for lack of subject matter jurisdiction. *Mangano v. United

States,* 529 F.3d 1243, 1245 n.2 (9th Cir. 2008).

13

## SUMMARY OF ARGUMENT

The district court was right to dismiss the Farmworkers'
complaint for lack of subject matter jurisdiction. The Farmworkers are
challenging a pesticide regulatory decision that EPA made after
conducting a "public hearing." FIFRA therefore required them to
petition for review directly in a court of appeals. Instead, the
Farmworkers mistakenly filed a complaint in district court.

The Farmworkers argue that EPA did not conduct the sort of
"public hearing" that they might have preferred; while the agency
solicited and reviewed public comment, it did not take live testimony or
allow oral argument. But almost twenty years ago, in *Northwest Food
Processors Association v. Reilly*, this Court held that for purposes of
determining where FIFRA jurisdiction lies, EPA conducts a "public
hearing" whenever it allows people to present their positions in written
submissions and creates a record that is amenable to judicial review.
Here, EPA did both of those things.

The Farmworkers all but acknowledge that *Northwest Food
Processors* controls this case. Their brief essentially argues that the

14

case and the authorities this Court relied upon in its opinion were wrongly decided as a matter of policy, and that this Court should either overrule it or conjure a distinction to avoid applying it here. But the Farmworkers exaggerate problems caused by giving appellate courts original jurisdiction over certain FIFRA cases; many federal statutes assign initial jurisdiction to the courts of appeals in record-review cases, and the courts handle them as a matter of routine. And, in any event, this panel has no authority to overrule *Northwest Food Processors*.

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT HAVE JURISDICTION.

The district court properly recognized that this Court's decision in *Northwest Food Processors* controls this case. *Northwest Food Processors* holds that a plaintiff who wants to challenge a pesticide registration decision that EPA makes after soliciting written input and compiling an administrative record must file a petition for review pursuant to FIFRA Section 16(b), 7 U.S.C. § 136n(b), not a district court complaint pursuant to Section 16(a), 7 U.S.C. § 136n(a).

15

A.    *Northwest Food Processors* And *EDF v. Costle* Have Already
Conclusively Interpreted Section 16(b).

*Northwest Food Processors* considered a challenge by various
commercial food processing companies to EPA's decision to cancel the
registration of an herbicide called dinoseb.  In 1986, EPA became
concerned that dinoseb posed serious human health risks.  The agency
accordingly ordered an emergency suspension of the use or sale of
dinoseb, and notified the public that it would begin formal proceedings
to cancel the herbicide's FIFRA registration.  *See Love v. Thomas*, 858
F.2d 1347, 1351 (9th Cir. 1988).

Under FIFRA, EPA's notice would effectively cancel any dinoseb
registration unless the party holding the registration asked for an
administrative hearing.  Only two pesticide manufacturers did so.  *See
Northwest Food Processors*, 886 F.2d at 1076-1077.  While the
cancellation proceedings were still under way, these two companies
settled with EPA, agreeing to voluntarily cancel their registrations in
return for certain concessions, including the permission to use existing
stocks of dinoseb.  An administrative law judge approved the
settlement, and the EPA Administrator affirmed it.

16

A coalition of food processing companies filed suit to challenge the settlement. In order to avoid jurisdictional problems, they filed both a complaint in district court *and* a petition for review in this Court. *Id.* at 1077. Eventually, the district court ruled in EPA's favor, and the food processors appealed. After consolidating the food processors' appeal with their petition for review, *id.*, this Court issued an opinion upholding the terms of EPA's cancellation decision. In that opinion, the Court first examined the proper source of its jurisdiction. The food processors argued that EPA had not held a "public hearing" within the meaning of FIFRA's section 16(b), 7 U.S.C. § 136n(b), so that this Court lacked jurisdiction. This Court rejected that argument by construing the phrase "public hearing" as follows:

> We conclude that 136n(b)'s public hearing requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review. *Costle*, 631 F.2d at 926-32; *see also Humane Soc'y of the United States v. EPA*, 790 F.2d 106, 110-12 (D.C. Cir. 1986). In the present case, the Administrator considered the ALJ's decision, together with various parties' written exceptions to the decision, objections to the settlement, and responses in support of the decision and settlement. The proceedings were conducted pursuant to notice. The Administrator prepared and filed a

17

comprehensive Final Order approving the settlement. The administrative record is adequate to permit judicial review. The proceedings qualified as a "public hearing" and we have jurisdiction. *Costle*, 631 F.2d at 932.

886 F.2d at 1077-1078 (citations modified). As this passage acknowledges, *Northwest Food Processors* adopted a reading of Section 16(b) that the D.C. Circuit set out in *EDF v. Costle*, 631 F.2d 922, 926-32 (D.C. Cir. 1980), and reaffirmed in *Humane Society v. EPA,* 790 F.2d 106, 110-12 (D.C. Cir. 1986).

Like *Northwest Food Processors*, *Costle* involved an EPA decision to limit the uses of a pesticide—a mite-killing chemical called chlorobenzilate—through a cancellation proceeding. When EPA notified the public of its proposed action, various groups submitted objections and asked the agency to hold hearings. An ALJ declined to hold a hearing and dismissed the objections on legal grounds, and the EPA Administrator affirmed. The groups then petitioned for review in the D.C. Circuit, alleging jurisdiction under Section 16(b) of FIFRA. An intervenor contended, however, that the proceedings before the ALJ and the Administrator did not count as a "public hearing," and that jurisdiction properly lay in district court under Section 16(a).

18

The D.C. Circuit rejected the intervenor's arguments and held
that it had jurisdiction under Section 16(b). Recognizing that FIFRA's
text offered neither "an explicit or conclusive contextual definition of
'public hearing,'" the court turned to the legislative history for
guidance. *Id.* at 928. It explained that before Congress enacted what is
now Section 16(b) in 1972, FIFRA provided only for judicial review in
the courts of appeals. What motivated the legislature to create an
avenue for review in district court was its concern that direct appellate
review "be based on an administrative decision with an adequate
record." *Id.* at 931. Accordingly, a committee report describing the
intended effect of Section 16(b) stated that the phrase "any order issued
by the Administrator following a public hearing," was meant to
encompass not just formal legal proceedings, but any matter that had
"already been administratively heard and decided" by EPA. S. Rep.
No. 92-838, 92d Cong., Sess. pt. II at 50-51 (1972), *reprinted in* 1972
USCCAN 3993, 4070. District court review was appropriate only where
EPA had "refused to hold a hearing" at all, so that there was "no

19

record" that a court of appeals could review. *Id.* pt. I at 28, 1972 USCCAN at 4019.

Later history confirmed for the D.C. Circuit that appellate jurisdiction turned on "the availability of a reviewable record," 631 F.2d at 931, and that the public hearing referred to in Section 16(b) "need not necessarily be adjudicatory in nature," *id.* (quoting H.R. Rep. 94-668, 94th Cong., 1st Sess. 6 (1975), *reprinted in* 1975 USCCAN 1359, 1381); *see also* 631 F.2d at 931 (discussing rejection of proposed 16(b) amendments in 1977). Finally, the D.C. Circuit observed that Congress' intent in enacting Section 16(b) was "in accord with sound judicial policy." 631 F.2d at 931. In particular, it stated that where judicial review focuses on an agency's administrative record, "requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense." *Id.* at 931 (quoting *Investment Co. Inst. v. Board of Governors*, 551 F.2d 1270, 1276 (D.C. Cir. 1977)).

20

**B.    EPA Gave The Farmworkers An Opportunity To Present Their Positions In Written Submissions.**

In applying *Costle*, *Northwest Food Processors* set out a simple two-step test to determine whether EPA has conducted a "public hearing." EPA must (1) afford parties "an opportunity to present their positions by written briefs," and (2) compile "a sufficient record . . . to allow judicial review." 886 F.2d at 1077. EPA did both of those things during the licensing proceedings for AZM.

With respect to the first part of the test, the district court correctly found that EPA solicited comments twice before it issued its AZM registration renewal decision. ER 10. First, on December 7, 2005, EPA took comment on its draft grower impact and ecological risk assessments. 70 Fed. Reg. 72,827 (Dec. 7, 2005). And second, EPA sought comment on its proposed decision on June 9, 2006. 71 Fed. Reg. 33,448. On both occasions, the plaintiffs filed written comments. *See, e.g.*, SER 110, 116, 582, 122, 385, 582, 597, 599, 608, 618. Moreover, EPA accepted some of the suggestions contained in these comments—notably, by adopting "no spray" buffer zones around inhabited buildings. SER 625-626.

21

The Farmworkers do not dispute that they had a chance to present their positions to EPA. Instead, they contend that *Northwest Food Processors* misread FIFRA, and that when Congress used the phrase "public hearing," in Section 16(b), it had in mind "at least quasi-adjudicatory proceedings before EPA." Br. 20.

As an initial matter, this flatly contradicts the legislative history of Section 16(b); a committee report on the Federal Pesticide Act of 1978 specifically stated that "[t]he public hearing need not be adjudicatory in character." *Staff of S. Comm. On Agriculture, Nutrition, and Forestry, 95th Cong., 2d Sess., Federal Pesticide Act of 1978* at 164 (Comm. Print 1979). Moreover, in arguing that "an opportunity to comment, without more, cannot qualify as a public hearing," Br. 20, the Farmworkers ask this Court to revisit *Northwest Food Processors* and redefine the meaning of the term "public hearing" by reference to the requirements of FIFRA section 6(d), 7 U.S.C. § 136d(d). *See* Br. 21, 23. This argument only rehashes a claim raised and rejected in *Costle*; there, the D.C. Circuit stated that the fact that Section 6(d) of FIFRA "establishes certain types of hearing proceedings

22

and procedures does not definitively prove that these are the only 'public hearings' able to serve as predicates of appellate court review." 631 F.2d at 927; *see also id.* at 928 ("it is ... not surprising that different sections of the same statute might use the word in different ways").

The Farmworkers' attack contradicts *Humane Society* even more squarely. There the D.C. Circuit held that EPA conducted a "public hearing" within the meaning of FIFRA Section 16(b) when it invited parties "to submit written comments." *Humane Society*, 790 F.2d at 111-112. The Farmworkers erroneously suggest that the petitioners in *Humane Society* had participated in an "extensive proceeding" before an administrative law judge, Br. 28 (quoting 790 F.2d 106, 111-112 & n.49), that included "live hearings" and "testifying witnesses." Br. 29. But the proceeding that the D.C. Circuit described this way in *Humane Society* was not the one it was reviewing. *See* 790 F.2d at 109. Instead, it was a proceeding whose record EPA had incorporated into the record for the narrower decision that the *Humane Society* petitioners challenged. In describing the decision that *was* at issue, the D.C. Circuit said only that "interested parties were invited to submit written

23

comments." 790 F.2d at 111-112. It discussed the volume of the submissions in the earlier proceeding purely to illustrate the adequacy of the record for review. *Id.* at 112 (describing the record as "wholly adequate for appellate review").

*Northwest Food Processors* cited both *Costle* and *Humane Society* approvingly in setting out its definitive interpretation of Section 16(b). Since the D.C. Circuit rejected the Farmworkers' arguments in those opinions, this Court should reject them as well.

## C. The Record That EPA Compiled During Its AZM Licensing Proceedings Is More Than Adequate To Allow Direct Review In The Court Of Appeals.

With respect to the second part of the *Northwest Food Processors* test, there can be little doubt that EPA compiled a "sufficient record" to allow judicial review. EPA's notice-and-comment proceedings for AZM reregistration generated almost 700 documents, including EPA risk evaluations and impact assessments, comments from interested parties, supporting scientific studies, and, of course, the final decisions that the Farmworkers wish to challenge. Together, those documents stack up to thousands of pages; the agency's index alone is over fifty

pages long. SER 33-88. This record would have been more than
adequate to allow a court of appeals to review EPA's decisions without
further fact-finding—just as in *Castle*, "few, if any, further insights
could [be] gained through further proceedings," 631 F.2d at 932.

The Farmworkers do not attempt to argue that the record that
EPA compiled in making its AZM decisions is insufficient to allow
review.[5] They contend only that the *Northwest Food Processors* court
was wrong to include this inquiry in its jurisdictional test. According to
the Farmworkers, "the length of an administrative record cannot be the
touchstone for determining FIFRA jurisdiction without essentially
rewriting the statutory command." Br. 29; *see also* Br. 20 ("the length
of an administrative record cannot be the touchstone for jurisdictional
assignment"). But that argument directly contradicts *Castle*, where the
D.C. Circuit said that as a matter of judicial policy, "it is the

---

[5]    The Farmworkers do note that their original complaint contained
claims "challenging EPA's use of non-public data in the AZM IRED and
denying the public the right to comment on that data." Br. 22. They
suggest that a court of appeals might not have been able to grant them
full relief on these claims. Whatever the merit of that argument, the
Third Amended Complaint does not challenge the IRED at all, and
makes no similar allegations about the November 16, 2006, final
decision.

availability of a record for review and not the holding of a quasi-judicial

hearing which is now the jurisdictional touchstone." 631 F.2d at 931

(citation omitted). Similarly, Farmworkers argue that "the existence of

a lengthy record does not mean that there has been an order following

a public hearing," Br. 29, but that contradicts *Northwest Food*

*Processors*, which says that the "public hearing" is satisfied, in part,

when "a sufficient record is produced to allow judicial review." 886

F.2d at 1077.

The Farmworkers continue their attack on *Northwest Food*

*Processors* by arguing that "setting the length of the administrative

record as [a] factor to determine jurisdiction is an unworkable

standard," because "plaintiffs would be forced to guess whether their

particular record was adequate." Br. 30. But they point out the

solution to this problem themselves: a litigant who is not sure whether

to file his claim in a district or appellate court can avoid dismissal by

doing both. Other FIFRA litigants have not hesitated to do so. *See,*

*e.g., Northwest Food Processors*, 886 F.2d at 1077 (challengers

"simultaneously filed a complaint in district court and a petition for

review in this court"); *AMVAC Chemical Corp. v. EPA*, 653 F.2d 1260,

1264 (1980) (affected party that was "uncertain as to intent of

Congress" filed both "petitions for review . . . as well as a complaint").

Such caution is part and parcel of the practice of law. In any event, the

Farmworkers' proposed interpretation of Section 16(b) would hardly

create a jurisdictional regime that is more "clear and simple" than the

one created by *Northwest Food Processors*. Br. 31. Among other

things, it would divide the governing law of the D.C. Circuit and the

Ninth Circuit, so that jurisdiction would depend on which circuit the

claim was filed in.

## D.    The Farmworkers Exaggerate The Difficulties Posed By Section 16(b) Jurisdiction.

Finally, the Farmworkers claim that *Northwest Food Processors*,

*Costle*, and *Humane Society* were wrongly decided as a matter of

judicial policy. Br. 31-34. They say that by reading Section 16(b)

broadly, those cases force the Courts of Appeals to stoop to "distilling

the important issues" and "sorting through hundreds or thousands of

pages of administrative record." Br. 32. But these tasks are properly

the job of the parties, not the Court. *See, e.g.*, Circuit Rule 17-2

27

(threatening sanctions against parties for including "irrelevant

materials" in the excerpts of record). And while Farmworkers worry

that direct review might force Courts of Appeals to take judicial notice

of various facts and make rulings about the proper scope of the

administrative record, Br. 33, this Court is quite familiar with such

tasks. *See, e.g., Western Radio Services Co. v. Qwest Corp.*, 530 F.3d

1186, 1192 n.4 (9th Cir. 2008) (taking judicial notice)*; Davis v. EPA*,

348 F.3d 772, 778 n.4 (9th Cir. 2003) (correcting administrative record).

Countless statutes provide for direct review of administrative action in

the Courts of Appeals; the Farmworkers' arguments ignore the fact

that such review is a matter of routine.

Separately, Farmworkers suggest that this Court's broad reading

of Section 16(b) in *Northwest Food Processors* unjustly applies the 60-

day filing requirement of that section. Br. 24, 34. They say that a 60-

day deadline might be appropriate for parties to an adjudication, but

not for citizens who seek judicial review of administrative decisions.

According to Farmworkers, such "[n]on-parties may not quickly have

notice of the final agency decision; they will not be familiar with [the]

28

administrative docket for the decision; and they will not have had the chance to distill the legal issues for judicial review." Br. 24. But the sixty-day time period for seeking review of a FIFRA is hardly anomalous. *See, e.g.*, 42 U.S.C. § 7607(b) (establishing 60-day period for seeking review of Clean Air Act rulemaking).

### E.    The Farmworkers Are Wrong To Suggest That *Costle* Supports Their Jurisdictional Argument.

The Farmworkers' last set of arguments about Section 16(b) use various statements from the merits discussion in *EDF v. Costle* to support their jurisdictional claims. Br. 35-36. The district court correctly dismissed these arguments. ER 16.

Recall that the petitioners in *Costle*—Environmental Defense Fund (EDF) and Florida Citrus Mutual—were challenging EPA's denial of their respective requests for administrative hearings during proceedings to cancel the registration of chlorobenzilate. *See* above at pp. 18-19. (EDF believed that the terms of EPA's cancellation were too lenient; Florida Citrus Mutual thought the opposite. *Costle*, 631 F.2d at 925.) After concluding that Section 16(b) gave it jurisdiction over both claims, the D.C. Circuit went on to discuss the merits of each.

29

*Id.* at 932-937. The court concluded that EDF was not entitled to a hearing because FIFRA affords "no hearing right" to persons who oppose a pesticide cancellation decision on the ground that it has "permissive" portions that are too lenient. *Id.* at 935. In explaining this merits conclusion, the D.C. Circuit made three statements that the Farmworkers use here to support their jurisdictional arguments.

The first statement comes from an analogy the *Costle* court made to support its merits holding. The D.C. Circuit said that if EPA had already issued a pesticide registration that included "permissive" provisions identical to the ones EDF wanted to challenge, and then rejected a later request by EDF to start *new* proceedings to revisit those permissive provisions, "EDF's only remedy would be in the district court." *Id.* at 935. Of course, that is not the situation now before the Court; here, the Farmworkers are not challenging EPA's rejection of a request to begin cancellation proceedings. Instead they are challenging the *substantive result* of a decision EPA made on the AZM registrants' applications to continue their time-limited registrations.

30

The second statement comes from a discussion in *Costle*
concerning the general pattern under FIFRA whereby EPA "decisions
regulating more strictly may be challenged in administrative hearings
[whereas] those regulating less strictly may not." *Id.* at 937.  In that
discussion, the D.C. Circuit stated that "persons seeking more stringent
regulation may sue in the district court without first enduring an
administrative hearing." *Id.*  Here, however, the court was referring to
persons who seek more stringent regulation *through a petition for a
cancellation proceeding that is then denied*, not persons who seek more
stringent regulation by challenging the results of a completed
registration renewal proceeding.

The third quote that the Farmworkers rely upon actually
undercuts their argument.  The D.C. Circuit noted that the cancellation
notice at issue in *Costle* left EDF "better off" than it had been before,
because the provisions of the notice that restricted certain uses were
favorable to EDF, and "the decision to retain registration for other uses
[was] still subject to district court review." *Id.* at 937.  What the D.C.
Circuit meant by that last statement was that EDF was free to *petition*

31

*EPA again* for cancellation of the remaining registered uses; if EPA refused, EDF could challenge "the refusal of the Administrator to cancel . . . a registration" under Section 16(a). The Farmworkers could conceivably do the same here; what they cannot do is file a district court complaint to challenge a FIFRA order issued after notice-and-comment proceedings.

* * *

The Farmworkers appear to have made a fatal mistake in filing their claim against EPA. It does not matter that they could have avoided it: jurisdiction "is not a question of equity." *Breed v. Hughes Aircraft Co.*, 253 F.3d 1173, 1179 (9th Cir. 2001). None of the Farmworkers' arguments can override the rules that federal courts must follow their precedents and abide by statutory limits on their jurisdiction.

32

# CONCLUSION

This Court should affirm the decision below.

Respectfully submitted,

RONALD J. TENPAS
*Assistant Attorney General*

SAMBHAV N. SANKAR
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 23795 (L'Enfant Station)
Washington, DC 20026
(202) 514-5442

September 12, 2008
1-17260

33

# STATEMENT OF RELATED CASES

Defendant-Appellee is not aware of any related cases.

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(a)(7) AND CIRCUIT RULE 32-1
## FOR CASE NO. 08-35528

I certify that pursuant to Federal Rule of Appellate Procedure

32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached answering brief is

proportionately spaced, has a typeface of 14 points or more and

contains 6,121 words.

SAMBHAV N. SANKAR
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 23795 (L'Enfant Station)
Washington, DC 20026
(202) 514-5442

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing brief upon the following counsel on September 12, 2008 by overnight delivery:

Kristen L. Boyles
Patti A. Goldman
Joshua Osborne-Klein
Earthjustice
705 Second Ave.
Seattle, WA 98104-1711

Michael Meuter
California Rural Legal Assistance
3 Williams Road
Salinas, CA 93905-0000

Jeffrey A. Beaver
James L. Magee
Graham & Dunn, PC
2801 Alaskan Way
Seattle, WA 98121

Beth S. Ginsberg
Stoel Rives, LLP
Suite 3600
600 University Street
Seattle, WA 98101

Shelley Davis
Virginia Ruiz
Farmworker Justice
1126 16th St. NW
Washington, DC 20036

Eric Andreas
David B. Weinberg
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006-0000

Bethami Auerbach
Lynn L. Bergeson,
Bergeson & Campbell
1203 19th St. NW, Ste. 300
Washington, DC 20036-2401

SAMBHAV N. SANKAR
U.S. Department of Justice
Environment & Natural Res. Div.
P.O. Box 23795 (L'Enfant Station)
Washington, DC 20026
(202) 514-5442